THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | Case No.: 2:22-cv-00743-TL |
| | (CONSOLIDATED CASE) |
| | **AMAZON.COM, INC'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT AND STRIKE CERTAIN ALLEGATIONS** |
| | NOTE ON MOTION CALENDAR: FEBRUARY 3, 2023 |
| | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    I.       THE AMAZON PRIME MEMBERSHIP ...................................................................2

    II.      GROCERY DELIVERY FROM WHOLE FOODS MARKET ...........................3

    III.    PLAINTIFF'S ALLEGATIONS ................................................................................5

ARGUMENT ............................................................................................................................6

    I.       MOTION TO DISMISS UNDER RULE 12(B)(6) ..................................................6

          A.    Washington Law Governs And All California Claims Must Be Dismissed. ........................................................................................................6

              1.    Plaintiff Is Bound By Amazon's COUs. ........................................7

              2.    The COUs Require Application Of Washington Law. ....................8

              3.    The COUs' Choice-Of-Law Clause Encompasses This Dispute. ......................................................................................9

          B.    Plaintiff States No Claim For Misrepresentation Or Unfair Conduct. ....................................................................................................9

              1.    Plaintiff Fails To Plead The Fraud-Based Claims With Specificity As Required By Rule 9(b). ..................................10

              2.    Plaintiff Pleads No Misrepresentation, Omission, Or Unfairness. ...........................................................................12

              3.    Plaintiff Fails To Adequately Allege Reliance, Causation, And Injury. ...................................................................17

          C.    Plaintiff's Contract And Quasi-Contract Claims Fail. ...............................18

              1.    Plaintiff Cannot State A Breach Of Contract Claim. ...................18

              2.    Plaintiff's Good Faith And Fair Dealing Claim Fails. ..................20

              3.    Plaintiff's Contract With Amazon Precludes The Quasi-Contractual Remedy Of "Unjust Enrichment." ..............................21

          D.    The Declaratory Relief "Claim" Is Not An Independent Claim. ...............21

          E.    Amendment Would Be Futile. .................................................................21

II.    MOTION TO STRIKE UNDER RULE 12(F) ................................................22

    A.    The Court Should Strike Certain Class Allegations From The
        CAC. ..........................................................................................22

    B.    Allegations Regarding Package Delivery Delays And The Optional
        Tip Should Be Stricken. ..........................................................24

CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                                                                 **PAGE(S)**

*Alexander v. Wells Fargo Bank, N.A.*,
   No. C15-459 (RAJ), 2015 WL 5123922 (W.D. Wash. Sept. 1, 2015) ...................................21

*Alpert v. Nationstar Mortg., LLC*,
   No. C15-1164 RAJ, 2019 WL 1200541 (W.D. Wash. Mar. 14, 2019) ..................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................6

*Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*,
   115 Wn. 2d 506, 799 P.2d 250 (1990)............................................................................16

*Austin v. Amazon.com, Inc.*,
   No. C09-1679JLR, 2010 WL 1875811 (W.D. Wash. May 10, 2010) ...................................24

*Badgett v. Sec. State Bank*,
   116 Wn.2d 563, 807 P.2d 356 (1991).........................................................................20, 21

*Bardy v. Cardiac Sci. Corp.*,
   No. C13-0778JLR, 2014 WL 294526 (W.D. Wash. Jan. 27, 2014) .....................................20

*Baxter v. Intelius, Inc.*,
   No. SACV 09-1031 AG (MLGx), 2010 WL 3791487 (C.D. Cal. Sept. 16,
   2010) ...........................................................................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................6

*Bisson v. Bank of Am., N.A.*,
   919 F. Supp. 2d 1130 (W.D. Wash. 2013)........................................................................21

*Brazil v. Dell Inc.*,
   585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...........................................................................22

*Brown v. Starbucks Corp.*,
   No. 18cv2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) .........................14, 15

*Call v. Olsen*,
   No. 13-5241 RJB, 2013 WL 3805651 (W.D. Wash. July 18, 2013)....................................22

*Capitol Pros, Inc. v. Vadata, Inc.*,
   No. C17-1410-JCC, 2018 WL 883870 (W.D. Wash. Feb. 14, 2018).....................................19

*Carideo v. Dell, Inc.*,
   520 F. Supp. 2d 1241 (W.D. Wash. 2007)..........................................................................8

**TABLE OF AUTHORITIES**
(CONTINUED)

CASES                                                                      PAGE(S)

*Carideo v. Dell, Inc.*,
 706 F. Supp. 2d 1122 (W.D. Wash. 2010)................................................................9

*Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*,
 135 Wn. App. 760, 145 P.3d 1253 (2006)..............................................................19

*Cashatt v. Ford Motor Co.*,
 No. 3:19-cv-05886-RBL, 2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)...................22, 23

*Charbonnet v. Omni Hotels & Resorts*,
 No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020).............14, 15, 17

*Cole v. Keystone RV Co.*,
 No. C18-5182 TSZ, 2021 WL 3111452 (W.D. Wash. July 22, 2021)...................................12

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012)................................................................................16

*Dunson v. Cordis Corp.*,
 No. 16-cv-03076-SI, 2016 WL 3913666 (N.D. Cal. July 20, 2016).......................................10

*Ebner v. Fresh, Inc.*,
 838 F.3d 958 (9th Cir. 2016).................................................................................12

*Ekin v. Amazon Servs., LLC*,
 84 F. Supp. 3d 1172 (W.D. Wash. 2014).................................................................7, 8

*Elliott Bay Seafoods v. Port of Seattle*,
 124 Wn. App. 5, 98 P.3d 491 (2004).....................................................................18, 19

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011)................................................................................22

*Erwin v. Cotter Health Ctrs.*,
 161 Wn.2d 676, 167 P.3d 1112 (2007)......................................................................8

*Fabozzi v. StubHub, Inc.*,
 No. C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012).....................................15

*Ferrie v. Woodford Rsch., LLC*,
 No. 3:19-cv-05798-RBL, 2020 WL 3971343 (W.D. Wash. July 14, 2020).........................10

*Fid. Mortg. Corp. v. Seattle Times Co.*,
 213 F.R.D. 573 (W.D. Wash. 2003).......................................................................10

# TABLE OF AUTHORITIES
### (CONTINUED)

**CASES**                                                                 **PAGE(S)**

*Ford v. Hotwire, Inc.*,
   No. 07-CV-1312 H (NLS), 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007)............................13

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................................................13, 15

*Garner v. Amazon.com, Inc.*,
   No. C21-0750RSL, 2022 WL 1443680 (W.D. Wash. May 6, 2022) ........................................7

*Gierke v. Allstate Prop. & Cas. Ins. Co.*,
   No. C19-0071JLR, 2019 WL 4849494 (W.D. Wash. Oct. 1, 2019).........................................9

*Glacier Nw., Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174*,
   198 Wn. 2d 768, 500 P.3d 119 (2021)....................................................................................12

*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*,
   105 Wn. 2d 778, 719 P.2d 531 (1986)....................................................................................17

*Harbers v. Eddie Bauer, LLC*,
   No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ......................................8

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
   58 F. Supp. 3d 1166 (W.D. Wash. 2014), *aff'd sub nom. Hard2Find
   Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017)............18, 19, 20, 22

*Harju v. Johnson & Johnson*,
   No. 3:20-cv-06258-BHS-JRC, 2021 WL 5182057 (W.D. Wash. July 12,
   2021) ......................................................................................................................................16

*Hernandez v. Johnson & Johnson*,
   No. 4:20-cv-05136-SMJ, 2021 WL 320612 (E.D. Wash. Jan. 8, 2021)...........................10, 11

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ..................................................................................16

*Hoefs v. Sig Sauer Inc.*,
   No. 3:20-cv-05173-RBL, 2020 WL 3488155 (W.D. Wash. June 26, 2020).........................12

*Hummel v. Nw. Tr. Servs., Inc.*,
   180 F. Supp. 3d 798 (W.D. Wash. 2016).................................................................................21

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) ...................................................................................................9

# TABLE OF AUTHORITIES
### (CONTINUED)

CASES                                                                  PAGE(S)

*Ins. Auto Auctions, Inc. v. Indian Harbor Ins. Co.*,
  No. C09-1522RAJ, 2010 WL 11688494 (W.D. Wash. Sept. 16, 2010)...................................8

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................10, 11, 12

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ......................................................................................6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003) ....................................................................................20

*Meidan Koti, LLC v. Stenersen*,
  No. 55815-7-II, 2022 WL 1763699 (Wash. Ct. App. June 1, 2022) ................................16, 17

*Minnick v. Clearwire US, LLC*,
  683 F. Supp. 2d 1179 (W.D. Wash. 2010)..................................................................21

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*,
  78 Wn. App. 707, 899 P.2d 6 (1995)........................................................................18

*Orshan v. Apple Inc.*,
  No. 5:14-cv-05659-EJD, 2018 WL 1510202 (N.D. Cal. Mar. 27, 2018)..............................12

*Porras v. StubHub, Inc.*,
  No. C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sep. 4, 2012)...............................13, 16

*Punian v. Gillette Co.*,
  No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)..............................16

*Rasmussen v. Apple Inc.*,
  27 F. Supp. 3d 1027 (2014) .......................................................................................23

*Rex - Real Estate Exch., Inc. v. Zillow Inc.*,
  No. C21-312 TSZ, 2021 WL 3930694 (W.D. Wash. Sept. 2, 2021)...................................11

*Rodriguez v. Loudeye Corp.*,
  144 Wn. App. 709, 189 P.3d 168 (2008)....................................................................22

*Rollolazo v. BMW of N. Am., LLC*,
  No. CV 16-00966 BRO, 2017 WL 6888501 (C.D. Cal. May 2, 2017) ................................21

*Ross v. Kirner*,
  162 Wn. 2d 493, 172 P.3d 701 (2007).......................................................................13

# TABLE OF AUTHORITIES
### (Continued)

**CASES**                                         **PAGE(S)**

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (2009) .................................................22, 24

*Schaub v. JPMorgan Chase Bank NA*,
No. 78439-1-I, 2019 WL 2751168 (July 1, 2019) .................18

*Schnall v. AT & T Wireless Servs., Inc.*,
171 Wn.2d 260, 259 P.3d 129 (2011) ........................................8

*Seattlehaunts, LLC v. Thomas Fam. Farm, LLC*,
No. C19-1937 JLR, 2020 WL 5500373 (W.D. Wash. Sept. 11, 2020) .................10

*Seegert v. Rexall Sundown, Inc.*,
No. 17cv1243-JAH (JLB), 2017 WL 5973414 (S.D. Cal. Dec. 1, 2017).............23

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983) .................................................22

*Smale v. Cellco Partnership*,
547 F. Supp. 2d 1181 (W.D. Wash. 2008)..............................13

*Stampfes v. Action Appraisers*,
88 Wn. App. 1063 (1997) ......................................................17

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................22

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .................................................13

*Talyancich v. Microsoft Corp.*,
No. C12-1128-JCC, 2012 WL 12941690 (W.D. Wash. Nov. 2, 2012)............19

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)..........................................................22

*U.S. Bank Nat'l Ass'n v. Tait*,
No. C16-767-JCC, 2016 WL 5141990 (W.D. Wash. Sept. 21, 2016).............20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................24

*Water & Sanitation Health, Inc. v. Rainforest All., Inc.*,
No. C15-75RAJ, 2015 WL 12657110 (W.D. Wash. Dec. 29, 2015) ...........10

MTN TO DISMISS AND TO STRIKE      - vii -      **FENWICK & WEST LLP**
CASE NO.: 2:22-CV-00743-TL                     1191 SECOND AVENUE, 10TH FLOOR
                                                     SEATTLE, WASHINGTON 98101

# TABLE OF AUTHORITIES
### (CONTINUED)

CASES                                                                 PAGE(S)

*Weimin Chen v. Sierra Trading Post, Inc.*,
  No. 2:18-cv-1581-RAJ, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ................................7

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ...................................................................................9

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) .......................................................................................7, 9

*Workhouse Media, Inc. v. Ventresca*,
  No. 75373-8-I, 2017 WL 959534 (Wash. Ct. App. Mar. 13, 2017) .........................................8

STATUTES AND RULES

Cal. Bus. & Prof. Code § 17200 ........................................................................................9, 12

Cal. Bus. & Prof. Code § 17500 ........................................................................................9, 12

Cal. Civ. Code § 1770 ...............................................................................................................9

Cal. Civ. Code § 17700 ............................................................................................................12

Fed. R. Civ. P. 8 .........................................................................................................................6

Fed. R. Civ. P. 9 .............................................................................................................2, 10, 11, 12

Fed. R. Civ. P. 12 .............................................................................................................2, 22, 23, 24

RCW § 19.86.020 ................................................................................................................9, 12

RCW § 19.86.920 ......................................................................................................................9

**INTRODUCTION**

Plaintiff Dena Griffith is a member of Amazon's popular Prime subscription service, which provides members a host of valuable benefits, including fast shipping, discounts on products, and free digital content like music and movies. When Plaintiff signed up for Prime, one of the benefits was free grocery deliveries from Whole Foods Market ("WFM") (an Amazon subsidiary). In September 2021, Amazon notified all Prime members that, starting in October 2021, Whole Foods deliveries would include a delivery service fee. Despite having a month to cancel her membership prior to this fee becoming effective, Plaintiff remained (and ostensibly still remains) a Prime member. Now she sues Amazon "for misleading consumers concerning the amounts they must pay for grocery deliveries from Whole Foods Market and for breaching its contracts with its Amazon Prime members." *See* Consolidated Amended Complaint ("CAC") at 1.

The central and fatal flaw across Plaintiff's claims is that *Amazon never promised Prime members free WFM deliveries*. The Amazon Prime Terms—*i.e.*, the operative contract Plaintiff is suing to enforce—say nothing at all about free WFM delivery. What the Prime Terms *do* say is that "from time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." Amazon exercised that discretion to remove the free WFM delivery benefit, but only after it notified Prime members the change was coming. And since the change, Amazon has made clear on its website that WFM deliveries are subject to a fee; in fact, the call-to-action button that a customer must click *in order to schedule a WFM delivery* looks like this:



In short, it is simply not true that Amazon hides or obfuscates the fact that WFM grocery deliveries are now subject to a fee for Prime members. As set forth below, Amazon makes clear, in multiple ways and in multiple places, that a service fee applies.

Plaintiff asserts eleven claims against Amazon and all fail as a matter of law. <u>First</u>, Plaintiff's California-law claims (Counts Two, Three, and Four) stall at the threshold because Amazon's terms mandate that Washington law governs. <u>Second</u>, Plaintiff's fraud-based claims

(Counts One through Four, Six, Seven, and Eight) fail because they are not pled with specificity, as Rule 9(b) requires.  Further, even if Plaintiff had satisfied Rule 9(b), these claims fail in any event because she fails to identify any actionable misrepresentation by Amazon, let alone one on which she relied in a way that caused her harm.  In the CAC, Plaintiff also omits key steps in the WFM checkout process (including the call-to-action button above) that place any reasonable consumer on notice that a $9.95 fee applies.  <u>Third</u>, Plaintiff's contract-based claims (Counts Nine and Ten) fail because the Prime Terms expressly authorize Amazon to change Prime benefits, and any reasonable Prime member knows that benefits might change.  Fourth, Plaintiff's unjust enrichment claim (Count Five) is legally precluded by the existence of a valid contract, and her declaratory relief claim (Count Eleven) is a remedy, not a cause of action.

As demonstrated further below, the CAC should be dismissed in its entirety because none of Plaintiff's claims are legally viable.  But if the Court does not dismiss the lawsuit, at a minimum, pursuant to Rule 12(f), the Court should strike Plaintiff's second proposed class because it includes members who suffered no injury and is redundant of Plaintiff's first proposed class.  The Court also should strike allegations related to package delivery delays and a purported $5 tip added "by default" to WFM deliveries.  Plaintiff does not allege that she experienced any delivery delays or that she was ever charged for a tip; she cannot advance claims for harms she never suffered.

**FACTUAL BACKGROUND**

**I.      THE AMAZON PRIME MEMBERSHIP**

Amazon offers a paid membership subscription service called Amazon Prime; customers can subscribe on a monthly or annual basis.  CAC ¶¶ 7, 8.  Prime members enjoy a wide range of benefits, which vary over time and depend on availability, but can include (among other things) music and video streaming and free two-day, one-day, or same-day shipping for package deliveries.  *Id.* ¶ 7; *see id.*, Ex. 1 at 2.

To purchase a Prime subscription, a customer must agree to the Amazon Prime Terms & Conditions ("Prime Terms").  CAC ¶ 8; *id.*, Ex. 1 at 1 (the Prime Terms "govern [the parties'] respective rights and obligations").  Additionally, a Prime member's "use of the Amazon.com website and Prime membership are also governed by the agreements listed and linked to" in the

Prime Terms, such as Amazon's Conditions of Use ("COUs"), "all of which (as changed over time) are incorporated into these Terms." *Id.*, Ex. 1 at 1 (linking to the COUs).  By "sign[ing] up for a Prime membership," the customer "accepts these terms, conditions, limitations and requirements." *Id.*  A Prime member also agrees to the COUs by, among other things, "visit[ing] or shop[ing] at Amazon.com" and "us[ing] Amazon products or services." *See* Declaration of Brian Buckley ("Buckley Decl.") in support of Amazon's Request for Judicial Notice (filed concurrently with this Motion), Ex. A (COUs) at 1.[1]

Nowhere do the Prime Terms guarantee any specific Prime benefit.  To the contrary, the Prime Terms expressly and unambiguously provide Amazon the right to add or remove Prime benefits at any time in its sole discretion.  Under the bolded heading "**Other Limitations**" in the Prime Terms, Amazon explains that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." *Id.* at 2.  Amazon reiterates in the bolded "**Fees and Renewal**" section that "[f]rom time to time, [Amazon] may offer different membership terms, and the fees for such membership may vary." *Id.*  And under the bolded heading "**Agreement Changes,**" Amazon again states that it "may in our discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you. … YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR MEMBERSHIP." *Id.* (capitalization in original).  A Prime member may terminate her membership at any time.  CAC, Ex. 1 at 1.

## II.   GROCERY DELIVERY FROM WHOLE FOODS MARKET

WFM is a supermarket chain.  CAC ¶ 10.  Amazon acquired WFM in 2017. *Id.*  For some time before October 2021, one Prime benefit was free grocery delivery from WFM (subject to a minimum order amount) for customers in certain regions. *Id.* ¶¶ 9, 13.  On September 24, 2021, Amazon announced "Changes to [] Prime Grocery Benefits for Whole Foods Market Grocery Delivery."  Buckley Decl., Ex. B.  In that email announcement to Prime members, Amazon explained that, "[s]tarting October 25, 2021, delivery orders from [WFM] in your area will include

---

[1]  As addressed in Amazon's Request for Judicial notice, the Court can and should consider these documents on a motion to dismiss without converting this motion to one for summary judgment.

1   a $9.95 service fee" to help "cover operating costs so we can continue to offer the same competitive

2   everyday prices in-store and online at [WFM]."  *Id.*; *see also* CAC ¶ 14.  As announced, since

3   October 25, 2021, Amazon has charged a service fee for WFM deliveries.  CAC ¶ 13.

4       A Prime member can place a WFM order by going to the WFM section of amazon.com.

5   CAC ¶ 16.  The first page of the WFM section (the "Landing Page") shows different grocery items,

6   along with the advertised prices.  *Id.*  Clicking on an item takes a customer to the item-specific

7   page. *Id.* ¶ 17.  To add a grocery item to the cart, the customer must click the yellow "Add to Cart"

8   button on the upper right-hand side of the webpage.  *Id.*  As Plaintiff acknowledges, Amazon

9   discloses "$9.95 for 2-hour delivery" above the "Add to Cart" button.  *Id.*  In other words, Amazon

10  draws the customer's attention to the fee *each and every time* she adds an item to her cart.

11      To check out, the customer must then navigate to her shopping cart.  Buckley Decl., Ex. E.

12  On the left, the shopping cart webpage shows the grocery items in the customer's cart; on the right,

13  above the yellow "Check out Whole Foods Cart" button, Amazon again discloses that the customer

14  can "Get 2-hour delivery for $9.95."  *Id.*  After the customer clicks "Check out Whole Foods Cart,"

15  a series of webpages ask the customer for their preferences (*e.g.*, item substitution) and other

16  information.  *See* CAC ¶ 18.  To continue checking out, a customer must choose between

17  "Delivery" or "Pickup" on the "Schedule your order" webpage:



26  Excerpt of Buckley Decl., Ex. F.  As shown in the screenshot above, if a customer chooses

27  "Delivery," she must select her preferred delivery window.  *Id.*  Next to each available delivery

28  window is a button with a grey outline box showing the service fee (*i.e.*, "$9.95").  *Id.*  The

customer must click on one of the "$9.95" buttons to proceed.  *Id.*  The customer can review the WFM order on the final page before she places the order.  As the CAC acknowledges, Amazon yet again discloses the fee on this page.  CAC ¶ 18.  On the right, the webpage shows a yellow "Place your order" button; immediately below that button, Amazon states: "By placing your order, you agree to Amazon's privacy notice and conditions of use."  *Id.* (hyperlinking to COUs); *see also* Buckley Decl., Ex. A (COU) (unless otherwise noted, all colors are in the original text).  Just below that, the "Order Summary" section shows the cost, fees, taxes, and order total, including a specific line item for the "Service Fee" hyperlinked to a pop-up explanation of the fee.  CAC ¶ 18.

## III.   PLAINTIFF'S ALLEGATIONS

Plaintiff Dena Griffith filed the CAC on October 25, 2022.  Plaintiff seeks to represent two nationwide classes, and a California subclass, of Amazon Prime members.  CAC ¶¶ 33-34.  The CAC alleges that Amazon's statements in online advertisements that Prime members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery" are "false" and "misleading" because Amazon charges a "hidden" $9.95 service fee.  *Id.* ¶¶ 13-14.  The CAC also accuses Amazon of falsely promising "FREE 2-hour grocery delivery" because "many Amazon Prime Members report not receiving their deliveries during the promised delivery period."  *Id.* ¶ 13.  To support this allegation, the CAC relies on an article titled, "*Amazon Prime Customers experiencing delays in free 2-day shipping in U.S.*"  *Id.* ¶ 13, n.4.  The CAC also alleges that Amazon engages in "bait-and-switch advertising" and "drip pricing" because it does not disclose on the Landing Page "the $9.95 service fee along with the advertised price."  *Id.* ¶¶ 15-19.  The CAC alleges further that Amazon includes an optional $5 tip that is "added by default" "above the total price of the delivery that is unlikely to be noticed by a reasonable consumer."  *Id.* ¶ 18.

Plaintiff claims to be a Prime member who "read and relied on Amazon's online advertisements that Prime members will receive 'FREE Delivery' and 'FREE 2-Hour Grocery Delivery.'"  CAC ¶ 24.  The CAC says no more about these "online advertisements," such as when (or if) Plaintiff saw them or where.  Tellingly, she does not allege that the advertisements appeared after Amazon's September 2021 announcement that WFM deliveries would include a delivery service fee.  Plaintiff alleges that, on January 22, 2022, she "made an online order for a Whole

Foods grocery delivery from the Amazon website" and "was charged a $9.95 service fee." *Id.* ¶ 25. The CAC says nothing about Plaintiff's personal experience on amazon.com. Notably, Plaintiff does not allege that Amazon failed to deliver *her* WFM grocery order within her selected two-hour delivery window, nor that *her* grocery order included a $5 tip.

## ARGUMENT

The CAC asserts eleven claims against Amazon, for violation of the Washington Consumer Protection Act ("WCPA"); violations of California's Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL"); common law claims for unjust enrichment, negligent misrepresentation, concealment/non-disclosure, fraud, breach of contract, and breach of the duty of good faith and fair dealing; and for declaratory relief. *Id.* ¶¶ 47-134. As addressed below, each of those claims fails on its face as a matter of law.

## I.   MOTION TO DISMISS UNDER RULE 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should dismiss under Rule 12(b)(6) where, under the applicable law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A proper complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id.* at 555 (citation omitted); *see* Fed. R. Civ. P. 8(a). Legal conclusions are insufficient and must be supported by factual allegations, *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).

### A.   Washington Law Governs And All California Claims Must Be Dismissed.

Amazon's COUs require the application of Washington law and foreclose Plaintiff's California state law claims under the CLRA, UCL, and FAL. The COUs include an "Applicable Law" clause, providing that Washington law governs "any dispute of any sort that might arise between you and Amazon." Buckley Decl., Ex. A at 4. As explained below, Plaintiff is bound by the COUs through her Prime membership and use of amazon.com. Thus, the Court should enforce

1    the parties' explicit contractual choice of Washington law and dismiss the California law claims

2    with prejudice.  *See Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2022 WL 1443680, at *4

3    (W.D. Wash. May 6, 2022) (dismissing non-Washington law wiretapping claims and enforcing

4    Amazon's Washington choice-of-law provision in its COUs).

5                      **1.      Plaintiff Is Bound By Amazon's COUs.**

6            As an Amazon Prime member, Plaintiff must agree to the Prime Terms and, by express

7    incorporation, Amazon's COUs as well.  CAC, Ex. 1 at 1.  "By using the Amazon Services," such

8    as "visit[ing] or shop[ing] at Amazon.com" or "us[ing] Amazon products or services," Plaintiff

9    also agreed to the COUs.  Buckley Decl., Ex. A at 1.  For example, Plaintiff accepted the COUs

10   when she placed the January 22, 2022 WFM delivery order at issue here.  As the CAC shows, a

11   customer must click a "Place your order" button to place their WFM delivery order.  CAC ¶ 18.

12   Immediately below that button, Amazon explains that, "By placing your order, you agree to

13   Amazon's privacy notice and conditions of use."  *Id.*  The reference to the COUs is in contrasting

14   blue font, the same color that indicates hyperlinks throughout the checkout process.  *See id.* ¶¶ 16-

15   17.  Clicking on the "conditions of use" hyperlink takes the customer to the COUs, which, under

16   the all-caps, bolded heading "**APPLICABLE LAW**," state: "By using any Amazon Service, you

17   agree that applicable federal law, and the laws of the state of Washington, without regard to

18   principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that

19   might arise between you and Amazon."  Buckley Decl., Ex. A at 4.

20           Washington courts routinely enforce similar online agreements where customers are

21   informed that by clicking a call-to-action button they are assenting to linked terms.  *See, e.g.,*

22   *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-cv-1581-RAJ, 2019 WL 3564659, at *3 (W.D.

23   Wash. Aug. 6, 2019) (holding that plaintiff validly assented to the linked terms by clicking a "Place

24   my order" button near a notice that doing so constituted agreement to the terms).[2]  In *Ekin v.*

25   *Amazon Servs., LLC*, the court described customers' acceptance of Amazon's COUs through the

26   _____

27   [2]  Similarly, the Ninth Circuit has found valid assent to online agreements when a hyperlink to the terms is near a call-to-action button, accompanied by notice that clicking the button constitutes assent.  *See, e.g., Wiseley v. Amazon.com,*

28   *Inc.*, 709 F. App'x 862, 863-64 (9th Cir. 2017) (enforcing Amazon's COUs where Amazon's webpages put the consumer on notice that "clicking the corresponding action button constituted agreement to the hyperlinked COUs").

purchase process—whereby customers are alerted that "by placing your order, you agree to Amazon.com's *privacy notice* and *conditions of use*"—as a "completely enforceable" "clickwrap" agreement. 84 F. Supp. 3d 1172, 1173, 1175 n.5 (W.D. Wash. 2014) (emphasis in original).[3]  The Court should find the same here.

## 2. The COUs Require Application Of Washington Law.

Washington courts "interpret contract provisions to render them enforceable whenever possible." *Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn.2d 260, 266, 259 P.3d 129 (2011). The presumption is in favor of "letting the parties choose the law to govern the validity of the contract and the rights created thereby." *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 700, 167 P.3d 1112 (2007).  Thus, "to effectively void a choice of law provision, a court must find that the chosen state has no substantial relationship to the parties or that the application of the chosen law would be contrary to a fundamental policy" of the non-chosen state. *Schnall*, 171 Wn.2d at 267; *see also Erwin*, 161 Wn.2d at 694 (applying Section 187 of the Restatement (Second) Conflict of Laws and upholding the parties' contractual choice of Washington law).

Neither circumstance exists here.  Washington plainly has a substantial relationship to the parties.  When a party is domiciled in the state of the contractually chosen law, there is both a substantial relationship to the parties and a reasonable basis for the choosing that state's law. *See Carideo v. Dell, Inc.*, 520 F. Supp. 2d 1241, 1245 (W.D. Wash. 2007); *Workhouse Media, Inc. v. Ventresca*, No. 75373-8-I, 2017 WL 959534, at *4 (Wash. Ct. App. Mar. 13, 2017).  Amazon is headquartered in Washington (CAC ¶ 5) and therefore reasonably specifies the law of its home-state to uniformly and consistently govern its transactions with a nationwide customer-base.

Nor can Plaintiff show that Washington law is "contrary to" any fundamental policy expressed by California, because nothing in the WCPA contradicts the fundamental policies of California's CLRA, FAL, or UCL. *See* Restatement § 187(b).  "[M]erely showing that the laws of two states differ does not establish that one state's laws violate the other state's public policy." *Ins. Auto Auctions, Inc. v. Indian Harbor Ins. Co.*, No. C09-1522RAJ, 2010 WL 11688494, at *6

---

[3]  It is irrelevant whether Plaintiff read the Prime Terms or the COUs. *See Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at *7 (W.D. Wash. Nov. 19, 2019) (under Washington law, finding mutual assent to Eddie Bauer's terms presented at checkout and rejecting the argument that the consumer failed to read them).  Plaintiff is bound by the COUs, including the "APPLICABLE LAW," whether she chose to read those terms or not.

1   (W.D. Wash. Sept. 16, 2010); *see also Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056

2   (N.D. Cal. 2018) ("[d]ifferences in the particulars of the consumer statutes are not enough … and

3   do not represent a fundamentally different policy").  Each state's consumer protection statute that

4   Plaintiff invokes prohibits unfair or deceptive conduct.  *Compare* RCW § 19.86.020; Cal. Bus. &

5   Prof. Code § 17200; Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code § 1770.  The WCPA and

6   California's UCL also share the same fundamental underpinnings from the Federal Trade

7   Commission Act.  *See* RCW § 19.86.920; *In re Firearm Cases*, 126 Cal. App. 4th 959, 980 (2005).

8   Indeed, in *Wiseley*, the Ninth Circuit enforced the Washington choice-of-law provision in

9   Amazon's COUs in a consumer class action asserting California law claims for false and deceptive

10  advertising.  709 F. App'x at 863.  In doing so, the Ninth Circuit noted that "Washington's and

11  California's consumer protection laws … appear to be substantially similar." *Id.*

### 3.    The COUs' Choice-Of-Law Clause Encompasses This Dispute.

13          Under Washington law, the scope of a choice-of-law clause turns on "the actual words

14  used" by the parties in their contract, which encompasses tort or statutory claims if the clause is

15  drafted broadly.  *See Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1127 (W.D. Wash. 2010); *see*

16  *also Gierke v. Allstate Prop. & Cas. Ins. Co.*, No. C19-0071JLR, 2019 WL 4849494, at *1 (W.D.

17  Wash. Oct. 1, 2019) (clause governing "any and all claims or disputes in any way related to this

18  policy" included tort and statutory claims).  Here, the governing law clause applies Washington

19  law to "***any dispute of any sort*** that might arise between you and Amazon." Buckley Decl., Ex. A

20  at 4 (emphasis added).  As such, Washington law applies and Plaintiff's California claims should

21  be dismissed with prejudice.

### B.    Plaintiff States No Claim For Misrepresentation Or Unfair Conduct.

23          Plaintiff's CAC boils down to one allegation: Amazon allegedly misrepresented and hid

24  the $9.95 service fee for WFM grocery deliveries.  *See, e.g.*, CAC ¶¶ 14, 26.  Plaintiff then spins

25  this core allegation into several statutory and common law claims that all sound in fraud, for

26  alleged violations of the WCPA, CLRA, FAL, and UCL, and for negligent misrepresentation,

27  concealment, and fraud (collectively, the "Fraud-based Claims").  As set forth below, these claims

28  fail on multiple, independent grounds.

### 1.   Plaintiff Fails To Plead The Fraud-Based Claims With Specificity As Required By Rule 9(b).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. 9(b).  To satisfy Rule 9(b), a fraud claim must include "the who, what, when, where, and how" of the misconduct.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  A cause of action need not be labeled as "fraud"; Rule 9(b) applies to all claims that are "grounded in fraud" or that "sound in fraud."  *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003).

Plaintiff's FAL, negligent misrepresentation, concealment, and fraud claims are subject to Rule 9(b).  *See* CAC ¶¶ 69-75, 98-119.  Courts in the Ninth Circuit have held that "false advertising claims, whether under state unfair competition laws or otherwise, sound in fraud."  *Water & Sanitation Health, Inc. v. Rainforest All., Inc.*, No. C15-75RAJ, 2015 WL 12657110, at *3 (W.D. Wash. Dec. 29, 2015).  Similarly, claims for fraud, concealment, and negligent misrepresentation are subject to Rule 9(b)'s pleading standard.  *See, e.g.*, *Dunson v. Cordis Corp.*, No. 16-cv-03076-SI, 2016 WL 3913666, at *7 (N.D. Cal. July 20, 2016) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *Seattlehaunts, LLC v. Thomas Fam. Farm, LLC*, No. C19-1937 JLR, 2020 WL 5500373, at *5 (W.D. Wash. Sept. 11, 2020); *Ferrie v. Woodford Rsch., LLC*, No. 3:19-cv-05798-RBL, 2020 WL 3971343, at *11 (W.D. Wash. July 14, 2020).

Plaintiff's WCPA, CLRA, and UCL claims are also subject to Rule 9(b) because they "sound in fraud."  *See* CAC ¶¶ 47-68, 76-89.  While fraud is not a necessary element of these claims, a plaintiff may still allege "a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim," such that "the pleading … as a whole" must be stated with particularity.  *Kearns*, 567 F.3d at 1126; *see also Hernandez v. Johnson & Johnson*, No. 4:20-cv-05136-SMJ, 2021 WL 320612, at *5 (E.D. Wash. Jan. 8, 2021).  Plaintiff's WCPA, CLRA, and UCL claims all hinge on the same alleged "unified course of fraudulent conduct": that Amazon "actively concealed material facts" about the WFM deliver service fee and intentionally led consumers to believe that grocery deliveries from WFM are free.  *See* CAC ¶¶ 49, 62, 80-87.  The

CAC is replete with accusations that Amazon engaged in "fraudulent" conduct by "bait[ing] and defraud[ing]" consumers; made statements that are "false, misleading, and likely to deceive a reasonable consumer"; and charged a "hidden," "deceptive," "buried," and "unlawful" service fee for WFM deliveries. *See, e.g.*, *id.* ¶¶ 13, 26, 28, 49, 66, 87-88, 118.  Courts have applied Rule 9(b) to substantially similar allegations. *See, e.g.*, *Rex - Real Estate Exch., Inc. v. Zillow Inc.*, No. C21-312 TSZ, 2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021) (Rule 9(b) applies to WCPA claim where complaint alleged that defendant's actions were "*deliberately calculated* to confuse and/or *deceive*") (emphasis in original); *Hernandez*, 2021 WL 320612, at *5 (WCPA claim "grounded in fraud" where the complaint repeats the words "fraud" or "fraudulent" and includes "allegations which allege fraud by implication").  Plaintiff's vague and conclusory allegations cannot satisfy Rule 9(b).  The CAC includes screenshots of purported "advertisements from Amazon's website," but taken at unknown times and stripped of any surrounding context, such as the Amazon service described or the webpage on which the advertisements appeared. *See* CAC ¶¶ 9, 11.  The CAC compounds that vagueness by conflating several different Amazon services: WFM grocery delivery, Amazon Fresh grocery delivery, and package shipping (one-day and two-day). *See, e.g.*, *id.* ¶ 9 (where screenshot shows "2-Hour Grocery Delivery" in the context of grocery delivery from *Amazon Fresh* and also WFM); *id.* (where screenshot shows "FREE One-Day Delivery" along with the image of a *brown box package*, not groceries); *id.* ¶ 13 n.4 (alleged "delays" refers to "2-day *shipping* in U.S." for *package* delivery, not groceries) (emphasis added).

Plaintiff does not say which of these ads she saw, if any, and only vaguely alleges that she saw "Amazon's online advertisements" that Prime members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery." *Id.* ¶ 24.  But the CAC does not say *when* Plaintiff purportedly saw these two statements (before or after October 2021, when free WFM delivery was no longer a Prime benefit); *where* she saw them (on amazon.com or elsewhere); *how* she came across them (through email communication or otherwise); or *what* Amazon service the statements described, whether WFM delivery (the subject of this lawsuit), *package* delivery (irrelevant), *Amazon Fresh* grocery delivery (also irrelevant), or another Amazon service entirely (again irrelevant).  Plaintiff's allegations plainly do not satisfy Rule 9(b)'s requirements. *See Kearns*, 567 F.3d at 1126 (UCL

and CLRA claims dismissed; no allegations on "the particular circumstances surrounding such representations," such as "when [Plaintiff] was exposed to them or which ones he found material"); *see also Hoefs v. Sig Sauer Inc.*, No. 3:20-cv-05173-RBL, 2020 WL 3488155, at *4 (W.D. Wash. June 26, 2020) (fraud and WCPA claims dismissed; plaintiff "does not state when [defendant] misrepresented the qualities of its [product] or how [plaintiff] came into contact with the communications"); *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2018 WL 1510202, at *2 (N.D. Cal. Mar. 27, 2018) (allegations for the CLRA claim must provide "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations" to satisfy Rule 9(b)).

The CAC also includes purported screenshots of the checkout process from the "Whole Foods delivery section on Amazon's website." *See* CAC ¶¶ 16-18. Setting aside that these screenshots omit key and relevant steps in the checkout process (*see* Buckley Decl., Exs. E-F), there is no allegation that Plaintiff ever saw the same or similar screens when *she* placed a WFM delivery order. *See* CAC ¶¶ 24-26. Indeed, the CAC conspicuously says *nothing* about Plaintiff's *own experience* on Amazon's website. Nor does it explain how Amazon allegedly caused *Plaintiff* to not know "the true amount being charged" for *her* WFM delivery, or at what point Plaintiff realized that she "was charged a $9.95 service fee." *Id.* In short, Plaintiff's threadbare allegations fail to "give [Amazon] notice of the particular misconduct." *Kearns*, 567 F.3d at 1124.

### 2.    Plaintiff Pleads No Misrepresentation, Omission, Or Unfairness.

Even if Rule 9(b) did not apply to bar Plaintiff's Fraud-based Claims, the CAC still fails for lack of any actionable misrepresentation, omission, or unfairness.

A deceptive misrepresentation is an element of Plaintiff's WCPA, CLRA, FAL, UCL, negligent misrepresentation, and fraud claims. *See* RCW § 19.86.020; Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code § 17700; Cal. Civ. Code § 17200; *Glacier Nw., Inc. v. Int'l Brotherhood of Teamsters Local Union No. 174*, 198 Wn. 2d 768, 800 n.13-14, 500 P.3d 119 (2021). Under the WCPA, CLRA, FAL, and UCL, a misrepresentation is actionable only if it is likely to deceive a "reasonable consumer." *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016); *Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021).

Similarly, a plaintiff who asserts a negligent misrepresentation or fraud claim "must not have been negligent" or unreasonable "in relying on the representation." *Ross v. Kirner*, 162 Wn. 2d 493, 500, 172 P.3d 701 (2007); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 761-62 (9th Cir. 2007).

No reasonable consumer is likely to be deceived when a defendant discloses, and puts consumers on notice of, the challenged conduct. *See, e.g.*, *Porras v. StubHub, Inc.*, No. C 12-1225 MMC, 2012 WL 3835073, at *6 (N.D. Cal. Sep. 4, 2012) (dismissing UCL, FAL, CLRA, fraud, and negligent misrepresentation claims; no reasonable consumer is likely to be deceived given defendant's "express acknowledgment that the tickets might be invalid, available for purchasers to review on [defendant's] website"); *Ford v. Hotwire, Inc.*, No. 07-CV-1312 H (NLS), 2007 WL 6235779, at *4 (S.D. Cal. Nov. 19, 2007) (dismissing FAL, CLRA, and UCL claims; no reasonable consumer is likely to be deceived where defendant discloses that "its quoted rate does not include certain charges" and the amount and nature of the fee at issue "is readily available public information disclosed on the hotel's own website"). For example, in *Smale v. Cellco Partnership*, plaintiffs alleged that Verizon violated the WCPA by charging its customers an "Effect of City Tax" fee. 547 F. Supp. 2d 1181, 1183 (W.D. Wash. 2008). The court held that Verizon's conduct was neither unfair nor deceptive because the contract at issue unambiguously disclosed that Verizon generally "reserves the right to assess additional fees." *Id.* at 1185-88.

Plaintiff identifies only two statements at issue: "FREE Delivery" and "FREE 2-Hour Grocery Delivery." *See, e.g.*, CAC ¶¶ 9, 12-13, 24. As an initial matter, these statements must be read "in the context of the entire document," but Plaintiff fails to plead that context. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995). Regardless, no reasonable consumer is likely to be deceived by these statements because Amazon discloses that it could (and does) charge a fee for WFM grocery deliveries, as well as the nature and amount of the fee. Amazon's Prime Terms also state that "Amazon may choose in its sole discretion to add or remove Prime membership benefits." *Id.*, Ex. 1 at 2. As a Prime member, Plaintiff indisputably agreed to and is bound by these terms. *See id.* ¶ 121. And free WFM grocery delivery is obviously a "Prime membership benefit"—that is the whole premise of this lawsuit—which Amazon may choose to "add or remove."

But Amazon went further with its disclosures regarding the Prime WFM delivery benefit. As confirmed by sources cited in the CAC, in September 2021, Amazon gave Prime members one month's advance notice that Amazon would charge a $9.95 service fee for WFM delivery orders starting in late October 2021.  *See* CAC ¶¶ 13-14; Buckley Decl., Ex. B, Ex. C at 1, Ex. D at 1. In the same communication, Amazon explained that the service fee "helps to cover operating costs" to ensure "competitive everyday prices in-stores and online" at WFM.  Buckley Decl., Ex. B; *see* CAC ¶ 14.  The CAC does not, and could not, allege that Amazon advertised "FREE Delivery" or "FREE 2-Hour Grocery Delivery" for WFM deliveries *after* Amazon widely disclosed and implemented the service fee in October 2021.

Plaintiff's omission theory fares no better because there is nothing deceptive or "hidden" about Amazon's checkout process.  The CAC accuses Amazon of "bait-and-switch advertising" and "drip pricing" because the Landing Page of "the Whole Foods delivery section on Amazon's website" does not disclose the $9.95 fee "alongside the advertised price of the items." CAC ¶¶ 15-16, 19; *see also id.* ¶¶ 49, 104-113.  But there is no "bait-and-switch problem" where "there is no deceptive act to be dispelled."  *Brown v. Starbucks Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) (citation omitted).  In *Brown*, the court dismissed plaintiff's FAL, CLRA, and UCL claims because "nothing on the packaging suggests the [product] contain only natural ingredients," and the complaint "fail[ed] to plausibly allege that a reasonable consumer would simply assume the absence of an artificial ingredients disclosure on the [product's] front packaging means the product contains only natural ingredients."  *Id.*  And there is no so-called "drip pricing" where the challenged fee is clearly disclosed *before* a consumer completes the transaction.  *See Charbonnet v. Omni Hotels & Resorts*, No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020).  In *Charbonnet*, the court rejected plaintiff's drip pricing theory, that defendant failed to "disclos[e] the destination charge until Plaintiff was ready to buy."  *Id.* at *5 (dismissing FAL, CLRA, and UCL claims).  There, the total price, including the challenged fee, was disclosed to the consumer before she booked her reservation at the hotel, and "[t]he allegations and screenshots provided by Plaintiff demonstrate that the [challenged] fee was plainly disclosed on the same page as the daily rate."  *Id.*

The reasoning in *Brown* and *Charbonnet* controls here.  As in *Brown*, the Landing Page does not suggest that WFM deliveries are free (*see* CAC ¶ 17), and no reasonable consumer would assume that WFM deliveries are free simply because the service fee is not mentioned next to the product price.  *See Brown*, 2019 WL 996399, at *4.  In fact, it would not be feasible (and would possibly be misleading) to include the delivery fee "alongside the advertised price of the items" on the Landing Page; as the CAC concedes, the delivery service fee is *not* universally applicable to all items because, "[i]f a customer instead choses to pick up the items in-store, then that customer will not be charged the service fee."  CAC ¶ 14.  That is precisely why Amazon discloses the applicable fee (if any) later in the checkout process.

As in *Charbonnet*, the screenshots and allegations in the CAC show that Amazon *repeatedly* discloses the $9.95 service fee *before* a customer places her WFM delivery order.  *See* CAC ¶ 17 (on the item page, Amazon discloses "$9.95 for 2-hour delivery" above the "Add to Cart" button); ¶ 18 (on the checkout page, Amazon shows a line item for the $9.95 fee in the WFM order total).  Plaintiff complains that information about the fee is shown "in smaller font and in a different color than the advertised price of the grocery item."  *Id.* ¶ 17.  But formatting quibbles cannot negate Amazon's clear and repeated disclosures.  Where "[n]one of the qualifying language is hidden or unreadably small," *as it is not here*, and "[t]he qualifying language appears immediately next to the representations it qualifies," *as it does here*, "no reasonable reader could ignore it."  *Freeman*, 68 F.3d at 289.  The CAC brushes over the "series of webpages asking for payment and delivery information," but these omitted pages also disclose the fee.  For instance, on the "Schedule your order" page, a customer must select her desired delivery time, and every available delivery window requires a customer *to affirmatively click on a "$9.95" button*.  Buckley Decl., Ex. F.  Plaintiff's claims fail as a matter of law because Amazon's disclosures are sufficient to put reasonable consumers on notice of the delivery service fee.  *See Fabozzi v. StubHub, Inc.*, No. C-11-4385 EMC, 2012 WL 506330, at *6 (N.D. Cal. Feb. 15, 2012) (dismissing UCL claim because screenshots of defendant's website show it "effectively discloses the information Plaintiff alleges it conceals"); *Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG (MLGx), 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010) (dismissing UCL and FAL claims where "[t]he disclosures

combined with affirmative steps for acceptance are sufficient that, as a matter of law, the webpage is not deceptive"); *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn. 2d 506, 525, 799 P.2d 250 (1990) ("[F]raudulent concealment does not extend to those situations where the defect is apparent."); *Meidan Koti, LLC v. Stenersen*, No. 55815-7-II, 2022 WL 1763699 (Wash. Ct. App. June 1, 2022).[4]

The unlawfulness prong of Plaintiff's UCL claim "borrows" from her FAL and CLRA claims and, as such, also fails. CAC ¶ 81; *see Porras*, WL 3835073, at *4. Plaintiff also fails to separately plead "unfairness."[5] The CAC relies on bare legal conclusions but alleges no *facts* showing that Amazon's alleged conduct is somehow "unfair" under the UCL or the WCPA. *See, e.g.*, CAC ¶¶ 50, 82-84. Consequently, the unfairness prong of Plaintiff's claim "overlaps entirely with [her] claims" for deceptive or fraudulent conduct and fails for the same reasons. *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016).

In all events, the CAC identifies no "unfair" conduct to support a UCL or WCPA claim. Courts apply two definitions of unfairness under the UCL: (1) a practice may be unfair where it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and (2) a practice may be unfair where the claim is "tethered to some specific constitutional, statutory, or regulatory provisions." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026-27 (N.D. Cal. 2016); *see Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-70 (9th Cir. 2012) (no "unfair" practice under the UCL where defendant clearly disclosed the fee at issue). Plaintiff's UCL claim fails either test. Plaintiff cannot show that Amazon's practices with respect to the WFM delivery service fee are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" because disclosures regarding the fee are "in fact, readily available to consumers on [Amazon's website]." *Hodsdon*, 162 F.

---

[4] Plaintiff's concealment claim (Count VII) should also be dismissed for the independent reason that Plaintiff failed to allege "facts amounting to either a 'quasi-fiduciary relationship' or a 'confidential relationship'" between Amazon and Plaintiff. *See Harju v. Johnson & Johnson*, No. 3:20-cv-06258-BHS-JRC, 2021 WL 5182057, at *11 (W.D. Wash. July 12, 2021) (dismissing fraudulent concealment claim absent "allegations of some form of special relationship that justifies imposing a duty to disclose").

[5] A practice can be unfair per se under the WCPA if it "violates a statute that declares the conduct at issue to be unfair or deceptive." *Alpert v. Nationstar Mortg., LLC*, No. C15-1164 RAJ, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (citation omitted). But here, Plaintiff identifies no such statute; the CAC only pleads a combined "unfair or deceptive act or practice," and does not allege that Amazon's conduct is unfair per se. *See* CAC ¶¶ 48-54.

Supp. 3d at 1027.  And Plaintiff cannot show that Amazon's conduct violates any public policy because the CAC fails to "tether the harm [Plaintiff] claims to any 'specific constitutional, statutory, or regulatory provision." *Id.* at 1028.[6]  It is simply not "unfair" to disclose a service fee, obtain assent to that fee, and then charge that fee to deliver groceries to someone's home.

### 3.    Plaintiff Fails To Adequately Allege Reliance, Causation, And Injury.

Plaintiff's CLRA, FAL, UCL, negligent misrepresentation, concealment, and fraud claims require her to show injury caused by her reliance on Amazon's alleged misrepresentations.  *See Charbonnet*, 2020 WL 7385828, at *4; *Stampfes v. Action Appraisers*, 88 Wn. App. 1063, *3 (1997) ("Recovery in negligent misrepresentation claims … is restricted to persons who actually and justifiably rely on the information."); *Meidan*, 2022 WL 1763699, at *5 ("If justifiable reliance is not satisfied and if the defect is not concealed, then a claim for fraud, fraudulent concealment, or negligent misrepresentation must fail.").  Plaintiff alleges no such reliance.  To the contrary, the CAC, and the public sources it relies on, show that Amazon gave Prime members one month's advance notice about the $9.95 service fee before it was implemented in October 2021.  *See* CAC ¶¶ 13-14; Buckley Decl., Exs. B-D.  The CAC also acknowledges that Amazon's checkout process discloses "the $9.95 service fee" and shows the amount of the delivery fee "above the total price of the delivery" before a customer places a WFM delivery order.  CAC ¶¶ 17-18.  Based on those undisputed facts, Plaintiff cannot show reliance—*i.e.*, "that she would have behaved any differently"—or economic harm—*i.e.*, "that she paid more than she otherwise would have paid"— because "the allegedly 'omitted' [] fee was disclosed in the total price and she accepted it." *Charbonnet*, 2020 WL 7385828, at *5; *see also Meidan*, 2022 WL 1763699, at *6 (fraud, fraudulent concealment, and negligent misrepresentation claims fail for lack of reasonable reliance on seller's representations, where home buyer knew of alleged hidden defects before closing). This alone requires dismissal of these claims.

Likewise, Plaintiff's WCPA should be dismissed because she cannot show "a causal link between the alleged acts and the plaintiff's injury." *Hangman Ridge Training Stables v. Safeco*

---

[6]  Plaintiff alleges that Amazon's conduct violated public policy by virtue of alleged violations of the FAL.  *See* CAC ¶ 83.  But, as explained above, Plaintiff's FAL claim fails based on the lack of any actionable misrepresentation, as do her other Fraud-Based Claims.

*Title Ins. Co.*, 105 Wn. 2d 778, 794, 719 P.2d 531 (1986).  Amazon repeatedly disclosed the $9.95 service fee, including through the September 2021 announcement and during the WFM checkout process.  *See* CAC ¶¶ 13-14; Buckley Decl., Exs. B-F.  Thus, Plaintiff's own actions—*i.e.*, placing her WFM delivery order with knowledge, or at least unreasonable ignorance, of the service fee— "broke the chain of causation and caused [her] loss."  *Schaub v. JPMorgan Chase Bank NA*, No. 78439-1-I, 2019 WL 2751168, at *6 (July 1, 2019) (WCPA claim dismissed for lack of causation because plaintiff's own conduct caused the harm).

### C.   Plaintiff's Contract And Quasi-Contract Claims Fail.

#### 1.   Plaintiff Cannot State A Breach Of Contract Claim.

Plaintiff claims that Amazon breached the "Amazon prime membership contract" (CAC ¶¶ 121-122), *i.e.*, the Prime Terms (*id.* ¶ 8).  To prevail on a breach of contract claim under Washington law, a plaintiff must show that "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant."  *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).  As a threshold matter, Plaintiff's contract claim fails because she never identifies what contractual provision Amazon allegedly breached.  At most, the CAC vaguely alleges that Amazon breached the Prime Terms when it "rescinded free Whole Foods Market delivery," and by "failing to deliver the Whole Foods Market grocery deliveries within the promised 2-hour time period."  CAC ¶ 122.  But the Prime Terms do not guarantee members free WFM delivery or two-hour grocery delivery.  *See* CAC, Ex. 1.  Plaintiff's breach of contract claim should be dismissed for this reason alone.  *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1171 (W.D. Wash. 2014) (dismissing contract claim where plaintiff "fails to identify which section of the [contract] is at issue and allegedly breached"), *aff'd sub nom. Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406 (9th Cir. 2017); *Elliott Bay Seafoods v. Port of Seattle*, 124 Wn. App. 5, 7, 98 P.3d 491 (2004).

Trying to plead around this defect, the CAC claims that "Amazon's *representations* that it offers 'FREE Delivery' and 'FREE 2-hour grocery delivery' from Whole Foods Market are terms that were somehow integrated into the Amazon prime membership contract."  CAC ¶ 121 (emphasis added).  But "[n]o extracontractual promise can be implied" if there is no language in

the contract to that effect. *Elliott Bay Seafoods*, 124 Wn. App. at 7. Here, the Prime Terms do not contain *any* language promising free two-hour WFM delivery. Moreover, the contract unambiguously allows Amazon to add or remove benefits—the very conduct that Plaintiff challenges. *See, e.g.*, CAC, Ex. 1 at 2 ("From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits" and "may in our discretion change these Terms … or any aspect of Prime membership, without notice to you."). Thus, Plaintiff's breach of contract claim fails as a matter of law. *See Hard 2 Find Accessories*, 58 F. Supp. 3d at 1171 (dismissing breach of contract claim alleging that Amazon unlawfully withheld payments from the plaintiff because the "plain language" of the contract unambiguously allowed Amazon to delay remitting payments); *Talyancich v. Microsoft Corp.*, No. C12-1128-JCC, 2012 WL 12941690, at *4 (W.D. Wash. Nov. 2, 2012) (dismissing breach of contract claim because "Microsoft's conduct was expressly authorized by the Xbox LIVE Terms of Use," which was "the contract governing the parties' relationship").

The CAC then contends that the $9.95 service fee constitutes a "unilateral modification of the contract" "without consideration to Plaintiff and the Class Members." CAC ¶¶ 123-24. This is also wrong. In changing the Prime benefits, Amazon acted consistently with, and did not modify, the Prime Terms. CAC, Ex. 1 at 2. In any event, under Washington law, "a terminable-at-will contract may be unilaterally modified." *Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 768, 145 P.3d 1253 (2006). Where a party "receive[s] notice of unilateral modification" and has the choice to continue or terminate the agreement, "[f]oregoing the right to terminate constitutes sufficient consideration in the context of unilateral modification." *Capitol Pros, Inc. v. Vadata, Inc.*, No. C17-1410-JCC, 2018 WL 883870, at *3 (W.D. Wash. Feb. 14, 2018) (dismissing contract claim because the terminable-at-will agreement was unilaterally modified). Plaintiff does not dispute that the Prime Terms constitute a terminable-at-will contract. *See* CAC, Ex. 1 at 1, 3. Amazon also gave Prime members one month's advance notice of changes to the WFM delivery benefit. *See* CAC ¶¶ 13-14; Buckley Decl., Ex. B. Plaintiff chose not to cancel her Prime membership, which was sufficient consideration for the modified benefits.

1    Finally, Plaintiff's claim that Amazon failed to honor its two-hour delivery promise fails

2    for the independent reason that Plaintiff alleges no injury on that basis.  As noted in the Factual

3    Background above, the CAC never alleges that Amazon failed to deliver *Plaintiff's* WFM order

4    within two hours.  Absent that allegation, Plaintiff has failed to show harm and has no standing to

5    assert this particular theory.  *See Bardy v. Cardiac Sci. Corp.*, No. C13-0778JLR, 2014 WL

6    294526, *5 (W.D. Wash. Jan. 27, 2014) (dismissing theory of breach of contract claim where

7    plaintiff failed to allege damages, "an essential element of a breach of contract claim"); *see also*

8    *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("named

9    representatives must allege and show that they personally have been injured, not that injury has

10   been suffered by other, unidentified members of the class to which they belong and which they

11   purport to represent.") (quotation omitted).

### 2.    Plaintiff's Good Faith And Fair Dealing Claim Fails.

13   "[U]nder Washington law, '[t]here is in every contract an implied duty of good faith and

14   fair dealing' that 'obligates the parties to cooperate with each other so that each may obtain the

15   full benefit of performance.'"  *Hard 2 Find Accessories*, 58 F. Supp. 3d at 1173 (citations omitted).

16   But "[t]he implied covenant of good faith and fair dealing cannot add or contradict express contract

17   terms."  *Id.* at 1173-74.  The duty of good faith "arises only in connection with terms agreed to by

18   the parties."  *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).  There is no

19   "free-floating duty of good faith unattached to the underlying legal document."  *Id.* at 570.  "If

20   there is no contractual duty, there is nothing that must be performed in good faith."  *U.S. Bank*

21   *Nat'l Ass'n v. Tait*, No. C16-767-JCC, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016).

22   Plaintiff claims that Amazon breached the implied covenant "[b]y failing to perform under

23   the contract by continuing to provide Plaintiff with free Whole Foods Market delivery with a

24   minimum $35 purchase during the duration of Plaintiff's annual contract."  CAC ¶ 128.  But the

25   Prime Terms do not obligate Amazon to provide that benefit.  In fact, the Prime Terms allow

26   Amazon to "add or remove Prime membership benefits," such as free WFM grocery delivery, in

27   "its sole discretion."  *See* CAC, Ex. 1 at 2; *id.* ¶ 128.  Plaintiff's theory would engraft on the

28

1    contract a term that it does not contain, and that the express terms of the contract contradict;
2    Washington law will not permit that.  *See Badgett*, 116 Wn.2d at 570.

### 3.    Plaintiff's Contract With Amazon Precludes The Quasi-Contractual Remedy Of "Unjust Enrichment."

5    Plaintiff's unjust enrichment claim is not viable.  Under Washington law, "a plaintiff who
6    is a party to a valid express contract is bound by the provisions of that contract and may not bring
7    a claim for unjust enrichment for issues arising under the contract's subject matter." *Minnick v.*
8    *Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) (internal quotation omitted);
9    *see also Rollolazo v. BMW of N. Am., LLC*, No. CV 16-00966 BRO (SSx), 2017 WL 6888501,
10   *12 (C.D. Cal. May 2, 2017).  The CAC itself is premised on a valid contract between the parties,
11   *i.e.*, the Prime Terms.  *See* CAC ¶¶ 8, 51, 121, Ex. 1.  As part of her Prime membership, and
12   separately by placing a WFM delivery order on amazon.com, Plaintiff also agreed to Amazon's
13   COUs.  *See id.*, Ex. 1 at 1 ("[Y]our use of the Amazon.com website and Prime membership are
14   also governed by the agreements listed and linked to below," which include the COUs.); *id.* ¶ 18
15   ("By placing your order, you agree to Amazon's … conditions of use.").  Thus, because the parties
16   have entered into valid contracts, Plaintiff's unjust enrichment claim must be dismissed.

### D.    The Declaratory Relief "Claim" Is Not An Independent Claim.

18   Plaintiff's declaratory relief "claim" should be dismissed because it is a legal remedy, not
19   a cause of action.  *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash. 2016)
20   ("It is well established that the Declaratory Judgment Act does not create an independent cause of
21   action.") (internal quotation and citation omitted); *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d
22   1130, 1139 (W.D. Wash. 2013).  Regardless, Plaintiff's request for declaratory relief should be
23   rejected because her other claims fail as a matter of law, as discussed above.  *Alexander v. Wells*
24   *Fargo Bank, N.A.*, No. C15-459 (RAJ), 2015 WL 5123922, at *7 (W.D. Wash. Sept. 1, 2015)
25   (dismissing plaintiff's request for declaratory relief because all other claims were dismissed).

### E.    Amendment Would Be Futile.

27   Plaintiff will presumably seek leave to amend the CAC.  The Court should deny that request
28   because amendment would be futile "given the documentary evidence," such as the Prime Terms

and the COUs, and given the "invalidity of Plaintiff's primary legal arguments." *See Hard 2 Find Accessories*, 58 F. Supp. 3d at 1177. "Futility alone can justify the denial of a motion for leave to amend" where, as here, a plaintiff cannot meet the standard to prove a claim. *Call v. Olsen*, No. 13-5241 RJB, 2013 WL 3805651, at *6 (W.D. Wash. July 18, 2013); *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 729, 189 P.3d 168 (2008).

## II.    MOTION TO STRIKE UNDER RULE 12(F)

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion is meant to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Additionally, "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 900-91 (2009) (striking class definition because it includes "individuals who suffered no damages" and "lack[] Article III standing" "to bring these claims"). *See generally TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("the district court must consider how best to define the class(es) to ensure that all class members have standing to seek the requested relief"). Courts should "strike class allegations [when] the plaintiff [can]not make a *prima facie* showing of Rule 23's prerequisites." *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886-RBL, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020); *see also Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking allegations of proposed classes that "cannot, as alleged, be presently ascertained"); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010) (striking class allegations; the proposed class includes persons "who have not suffered any damages at all" and "is not ascertainable").

### A.    The Court Should Strike Certain Class Allegations From The CAC.

Plaintiff proposes two nationwide classes, the second of which is defined as: "All U.S. Citizens who were Amazon Prime members from June 7, 2018 until the date notice is disseminated

to the class, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff" (the "Second Proposed Nationwide Class").  CAC ¶ 33(2).  By contrast, the CAC more narrowly defines the first proposed nationwide class as those Prime members who "were charged a service fee in connection with an online delivery from Whole Foods Market."  *Id.* ¶ 33(1).  The proposed Second Proposed Nationwide Class should be stricken from the CAC because it is redundant and cannot be certified.  Fed. R. Civ. P. 12(f).

In *Cashatt*, the court struck plaintiffs' proposed class definition as "overbroad" and "not ascertainable" because "it includes individuals who sustained no injury and therefore lack standing to sue."  2020 WL 1987077, at *4-5.  Specifically, the proposed class of persons who "drove a 2011-2018 Ford Explorer" is overbroad because the complaint "does not allege, and common sense does not suggest, that every single officer driving a 2011-2018 Ford Explorer has been injured" by the alleged design defect that caused carbon monoxide to leak into the passenger compartment of the vehicles.  *Id.*

Similarly, the Second Proposed Nationwide Class is impermissibly overbroad and definitionally deficient because it includes *all Amazon Prime members in the U.S.* for a span of *more than four years*.  The CAC does not allege, and it defies common sense to suggest, that every one of those Prime members placed WFM delivery orders and were charged a service fee.  Many absent class members would fail to satisfy even Plaintiff's own formulation of injury, either because they never ordered WFM grocery delivery or because they were not charged any delivery fee.  *See, e.g., id.* ¶ 50, ("Plaintiff was injured in exactly the same way as thousands of others who paid a service fee for grocery deliveries from Whole Foods Market"); ¶ 66 (alleging injury caused by "paying more for grocery deliveries than was represented").  These absent class members have no injury, no standing, and no viable claims, thus "making the class definition not ascertainable."  *Cashatt*, 2020 WL 1987077, at *5; *see also Seegert v. Rexall Sundown, Inc.*, No. 17cv1243-JAH (JLB), 2017 WL 5973414, at *5 (S.D. Cal. Dec. 1, 2017) (striking class definition because "Plaintiff fails to prove that all members of her class definition have been injured and/or have standing"); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045-46 (2014) (striking class definition

1   as overbroad, as it includes "individuals who have not experienced any issue or defect with their

2   27-inch iMac"); *Sanders*, 672 F. Supp. 2d at 900.

3   It is also apparent from the face of the CAC that Plaintiff cannot establish typicality.  The

4   CAC alleges that Plaintiff was "charged a $9.95 service fee" for a January 2022 WFM delivery

5   order.  CAC ¶ 25.  Plaintiff's claims thus cannot be typical of the Second Proposed Nationwide

6   Class members, which would include Prime customers who do not satisfy Plaintiff's definition of

7   injury because they were *not* charged any service fee or never placed any WFM delivery orders at

8   all.  For the same reason, the Second Proposed Nationwide Class fails to satisfy commonality.  *See*

9   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff

10  to demonstrate that the class members have suffered the same injury") (quotations omitted).  The

11  Second Proposed Nationwide Class allegations should be stricken.

12      **B.    Allegations Regarding Package Delivery Delays And The Optional Tip**
13          **Should Be Stricken.**

14  The CAC asserts no claim for *package* delivery (as opposed to WFM deliveries) and no

15  claim for the optional $5 tip for grocery deliveries.  Plaintiff does not allege that she experienced

16  "delays in free 2-day shipping," or even that she ordered package delivery.  Nor does she allege

17  that she paid any tip for her WFM delivery.  As a result, allegations that "Amazon Prime Members

18  report not receiving their deliveries during the promised delivery period" (CAC ¶ 13, n.4), and

19  "Amazon also includes a $5 tip that is shown in small text above the total price of the delivery that

20  is unlikely to be noticed by a reasonable consumer" (*id.* ¶ 18), should be stricken as "immaterial"

21  and "impertinent." Fed. R. Civ. P. 12(f); *see Austin v. Amazon.com, Inc.*, No. C09-1679JLR, 2010

22  WL 1875811, at *4 (W.D. Wash. May 10, 2010) (striking meal break allegations because the

23  complaint alleged uncompensated wages but makes no claim for meal breaks).

24                                  **CONCLUSION**

25  For the above reasons, the Court should grant this motion in full and dismiss Plaintiff's

26  CAC in its entirety.  Absent a complete dismissal, the Court should strike Plaintiff's second

27  proposed class definition and allegations about package delivery delays and the $5 "default" tip.

28

Dated:  December 16, 2022        Respectfully submitted,

FENWICK & WEST LLP


By: */s/ Brian D. Buckley*
    Brian D. Buckley, WSBA No. 26423
    Y. Monica Chan, WSBA No. 58900
    1191 Second Avenue, 10th Floor
    Seattle, WA 98101
    Tel.:     206.389.4510
    Email:   bbuckley@fenwick.com
           mchan@fenwick.com

    Jedediah Wakefield (admitted *pro hac vice*)
    555 California Street
    San Francisco, CA 94104
    Tel.:     415.875.2300
    Email:   jwakefield@fenwick.com

    *Attorneys for Defendant*
    AMAZON.COM, INC.

MTN TO DISMISS AND TO STRIKE    - 1 -    FENWICK & WEST LLP
CASE NO.: 2:22-CV-00743-TL    1191 SECOND AVENUE, 10TH FLOOR
    SEATTLE, WASHINGTON  98101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON SERVICE FEE
LITIGATION

Case No.: 2:22-cv-00743-TL

(CONSOLIDATED CASE)

**CERTIFICATE OF CONFERENCE**

15   Pursuant to Section II(I) of the Honorable Judge Lin's April 26, 2022 Standing Order for

16   All Civil Cases, I hereby certify that, on November 11, 2022 and November 16, 2022, as counsel

17   for the moving party, I conferred with opposing counsel in a good-faith effort to resolve the issues

18   raised in this motion.  The parties were unable to resolve the issues raised in the motion.

19   I declare under penalty of perjury that the foregoing is true and correct.

20

21   Executed on: December 16, 2022       */s/ Brian D. Buckley*
                                         Brian D. Buckley, WSBA No. 26423

22

23

24

25

26

27

28