UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | CASE NO. 2:22-cv-00743-TL |
| | (CONSOLIDATED CASE) |
| | ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE CERTAIN ALLEGATIONS |

This is a proposed class action for damages for breach of contract and unfair and deceptive advertising for the cost of online grocery delivery services. This matter is before the Court on Defendant Amazon.com, Inc.'s Motion to Dismiss Amended Consolidated Complaint and Strike Certain Allegations (Dkt. No. 51). Having reviewed Plaintiff Dena Griffith's response (Dkt. No. 60), Defendant's reply (Dkt. No. 62), the Parties' supplemental briefing (Dkt. Nos. 70–71), and the relevant record, and finding oral argument unnecessary, *see* Local Civil Rule 7(b)(4), the Court GRANTS the motion with leave to amend certain claims and allegations.

I.   BACKGROUND

Defendant, "the world's largest online marketplace," is a Delaware corporation headquartered in Seattle, Washington. Dkt. No. 47 (Consolidated Amended Complaint, or "CAC") ¶ 5. Plaintiff is a California citizen who resides in Riverside County, California. *Id.* ¶ 6.

A.   **Defendant's Grocery Delivery Services**

Defendant offers a service called Prime, which is a paid subscription service that gives users access to additional services otherwise unavailable or available at a premium to other customers. *Id.* ¶ 7. One of the advertised benefits of Prime is that members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from Whole Foods Market, a supermarket chain owned by Defendant, with a minimum $35 purchase. *Id.* ¶¶ 9–12, 121. The free-delivery benefit is only available in select U.S. cities. *Id.* ¶ 9. These advertisements are made on Defendant's website and in television and print advertisements. *Id.* ¶¶ 9, 11 (including photos of "representative examples" from website).

On May 11, 2018, Defendant raised the cost of a Prime membership from $99 to $119 for new members who joined after that date. *Id.* ¶ 20. On June 16, 2018, this cost increase went into effect for preexisting members. *Id.*

In approximately October 2021, Defendant began charging its customers—including Prime members—a $9.95 "service fee" for all grocery deliveries from Whole Foods Market.[1] *Id.* ¶ 13. Following this change, the cost of a Prime membership was not reduced, nor did Defendant

---

[1] *See* Moira Ritter, *Amazon slaps a $9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN (Oct. 28, 2021, 5:47 PM EDT), https://perma.cc/S5MB-E62J; Jay Greene, *Prime members bristle at Whole Foods' $9.95 delivery surcharge: 'It's just rude'*, Wash. Post (Sep. 28, 2021, 6:00 AM EDT), https://perma.cc/43Y5-Z2MV; Dkt. Nos. 53-3, 53-4 (printouts of articles). Defendant requests that the Court take judicial notice of these articles. *See* Dkt. No. 52 at 4, 6. Plaintiff does not object because she concedes that the articles are referenced in the CAC. *See* Dkt. No. 61 at 2. Accordingly, the Court takes judicial notice of the articles. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (describing the "incorporation by reference" doctrine).

ORDER ON MOTION TO DISMISS
AND MOTION TO STRIKE
CERTAIN ALLEGATIONS - 2

1   provide a partial refund. *Id.* ¶ 23. Moreover, Prime members with an annual membership (who

2   had used a Prime benefit outside the first three days of membership) could not cancel their

3   membership in response to the termination of the free delivery program until their next annual

4   renewal date. *Id.*

5          The delivery service fee is not disclosed on the first page of the Whole Foods delivery

6   section of Defendant's website, where various grocery items are displayed alongside the price of

7   those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page

8   "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The text is in

9   "small font" and "is unlikely to be noticed by a reasonable consumer." *Id.* The text is also in a

10  smaller font and different color than the advertised price of the grocery item. *Id.* When a

11  customer then clicks on the "add to cart" icon, there is a series of webpages asking for payment

12  and delivery information before the customer arrives at the final "place your order" page. *Id.* ¶ 18

13  (including photo). On the "place your order" page, the service fee is shown above the total price

14  of delivery "in small text . . . that is unlikely to be noticed by a reasonable consumer."[2] *Id.*

15  **B.     Plaintiff's Experience**

16         Plaintiff is a Prime member who read and relied on Defendant's online advertisements

17  that Prime members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery." *Id.*

18  ¶ 24. On January 22, 2022, Plaintiff made an online order for a Whole Foods grocery delivery

19  from Defendant's website and was charged a $9.95 service fee. *Id.* ¶ 25. Plaintiff purchased

20  grocery items from Defendant in reliance on Defendant's advertisements and without knowledge

21  of the true amount being charged. *Id.* ¶ 26. Plaintiff would not have placed her online grocery

22

23  [2] Plaintiff also alleges that (1) many Prime members report not receiving deliveries during the promised delivery period (Dkt. No. 47 ¶ 13); and (2) Defendant includes a $5 tip that is shown on the "place your order" page in the same kind of text as the service fee (*id.* ¶ 18). Defendant moves to strike these allegations. *See* Dkt. No. 51 at 33; *see*

24  *also infra* Section III.B.

order and would not have paid as much as she did for the order in the absence of Defendant's

representations. *Id.* ¶ 29. Plaintiff intends to, seeks to, and will purchase Whole Foods grocery

deliveries from Defendant's website again "when she can do so with the assurance that the

advertising of free delivery is lawful." *Id.* ¶ 31.

**C.    Procedural History**

Plaintiff brings this class action against Defendant for allegedly "misleading consumers

concerning the amounts they must pay for grocery deliveries from Whole Foods Market and for

breaching its contracts with its Amazon Prime members." *Id.* at 2. Plaintiff asserts Washington

and California statutory consumer protection claims, as well as tort and contract claims. *Id.*

¶¶ 47–134.

Further, Plaintiff proposes two nationwide classes and a California class. *Id.* ¶¶ 33–34.

One nationwide class includes all U.S. citizens who were Prime members that were charged a

service fee in connection with an online delivery from Whole Foods Market from August 1,

2021, until the date notice is disseminated to the class; the other class includes all U.S. citizens

who were Prime members from June 7, 2018, until the date of notice to the class. *Id.* ¶ 33. The

California class includes all California residents who were Prime members that were charged

with the Whole Foods delivery service fee from August 1, 2021, to the date of notice to the class.

*Id.* ¶ 34.

This matter is a consolidation of two preexisting cases. *See* Dkt. No. 45 (order to

consolidate). Defendant now moves to dismiss the CAC and to strike certain allegations therein.

*See* Dkt. Nos. 51, 62. Plaintiff opposes. *See* Dkt. No. 60.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(6)

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

A defendant may also seek dismissal when a plaintiff fails to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under FRCP 9(b) "the functional equivalent" of a motion to dismiss under FRCP 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under FRCP 9(b), a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106)).

**B.      Motion to Strike Under Rule 12(f)**

Finally, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In deciding a Rule 12(f) motion to strike, a court should not resolve disputed and substantial factual or legal issues. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010) ("We . . . hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Id.* at 973 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *E.g.*, *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and internal quotation marks omitted). This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4279176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

### III.      DISCUSSION

**A.      Motion to Dismiss**

Defendant makes several arguments: (1) Washington law controls all disputes and thus claims under California law should be dismissed (Dkt. No. 51 at 15–18); (2) Plaintiff has not properly alleged a series of statutory and common law claims "that all sound in fraud" (*id.* at 18–

27); (3) Plaintiff has not properly alleged contract and quasi-contract claims (*id.* at 27–30); and

(4) Plaintiff's claim for declaratory relief is not an independent cause of action (*id.* at 30).

Defendant further argues that amendment of these claims would be futile. *Id.* at 30–31. Plaintiff

opposes on all grounds. *See* Dkt. No. 60 at 14–30.

### 1.    Choice of Law

As an initial matter, Plaintiff does not appear to dispute that she is bound by Defendant's

Conditions of Use ("COU").[3] *See* Dkt. No. 51 at 16–17; Dkt. No. 60 at 14–16 (voicing no

opposition). Among the COU is a choice-of-law provision titled "Applicable Law," which states:

> By using any Amazon Service, you agree that applicable federal law,
> and the laws of the state of Washington, without regard to principles
> of conflict of laws, will govern these Conditions of Use and any
> dispute of any sort that might arise between you and Amazon.

Dkt. No. 53-1 at 5. Instead, the Parties dispute whether the choice-of-law provision controls here.

Defendant argues that the provision should control and that all California law claims (Causes

Two, Three, and Four) should be dismissed. *See* Dkt. No. 51 at 17–18. Plaintiff argues that

because her claims "arise in tort," the Court should instead conduct a choice-of-law analysis. *See*

Dkt. No. 60 at 14. Plaintiff further argues that such analysis is premature when discovery has not

yet been taken. *See id.* at 15. In reply, Defendant argues that "[c]hoice of law is a purely legal

question routinely decided on the pleadings." Dkt. No. 62 at 7. Defendants also assert that no

discovery is needed. *Id.* at 9.

---

[3] *See* Dkt. No. 53-1 (COU). Defendant requests that the Court take judicial notice of the COU. *See* Dkt. No. 52 at 3–4. Plaintiff does not object because she concedes that the COU are referenced in the CAC. *See* Dkt. No. 61 at 2. Accordingly, the Court takes judicial notice of the COU. *See Knievel*, 393 F.3d at 1076.

Defendant's remaining requests for judicial notice (*see* Dkt. Nos. 52, 63), are disputed by Plaintiff (*see* Dkt. No. 61). Regardless, the remaining requests are moot, as they are unnecessary to resolution of the motion.

### a.   *The Choice-of-Law Provision Encompasses Claims Arising in Tort*

A court must first "select the correct choice-of-law rule, a pure legal question, and then apply that rule to the facts of this case, a mixed question of law and fact." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citation omitted). Washington courts "interpret contract provisions to render them enforceable whenever possible," including choice-of-law provisions. *Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 131 (Wash. 2011). Washington courts also interpret contracts according to the objective manifestation of the agreement. *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 932 (9th Cir. 2010) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (en banc)). Therefore, under Washington law, "[t]o determine whether the parties intended the choice-of-law clause to cover [ ] tort . . . claims, the court must focus on the objective manifestations of their agreement—*i.e.*, 'the actual words used'—rather than on the unexpressed subjective intent of the parties." *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1127 (W.D. Wash. 2010) (quoting *Hearst Commc'ns, Inc.*, 115 P.3d at 267); *accord Mountain Hi, LLC v. Linde Gas & Equip. Inc.*, No. C22-1432, 2022 WL 17486328, at *3 (W.D. Wash. Dec. 7, 2022); *Wash. Land Dev., LLC v. Lloyds TSB Bank, PLC*, No. C14-179, 2014 WL 3563292, at *5 (W.D. Wash. July 18, 2014).

Looking to the actual words of the contract, the Court finds that the choice-of-law provision in the COU encompasses claims that arise in tort. The provision is framed in extraordinarily broad terms: Plaintiff has agreed that Washington law "will govern these

Conditions of Use **and any dispute of any sort that might arise between you and Amazon**."[4]

Dkt. No. 53-1 at 5 (emphasis added). This language ("any dispute of any sort") is much broader

than the language in *Lloyds* ("transaction"), which the Court understood to encompass "the

course of the contract's implementation," including a consumer protection claim arising out of

the contract's language and implementation. 2014 WL 3563292, at *5. It is much broader than

the language in *Mountain Hi* ("[t]his Agreement"), which the Court understood as too narrow to

cover "extracontractual claims" like a consumer protection claim. 2022 WL 17486328, at *3.

And it is broader than the language in *Carideo* ("[t]his agreement and any sales thereunder"),

which the Court ruled did not cover tort and statutory consumer protection claims. 706 F. Supp.

2d at 1127–28. Here, the COU's broad language is properly understood to encompass any claims

that Plaintiff asserts "arise in tort."

### b.   *The Choice-of-Law Provision Is Effective*

"In a diversity case, federal courts apply the conflict-of-laws analysis of the state in

which they sit." *Brutscher v. GEICO Gen. Ins. Co.*, No. C14-1094, 2014 WL 7340724, at *1

(W.D. Wash. Dec. 22, 2014) (citing *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir.

2014)). Plaintiff suggests that "[b]ecause Plaintiff's claims arise in tort, the Court should conduct

a choice of law analysis based on Washington's 'most significant relationship' test." Dkt. No. 60

at 14. But "[w]hen parties dispute choice of law, there must be an actual conflict between the

laws or interests of Washington and the laws or interests of another state before Washington

courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112,

---

[4] Both Parties rely in part on *Garner v. Amazon.com, Inc.*, which involved the same language from Defendant's COU. 603 F. Supp. 3d 985 (W.D. Wash. 2022). But in that case, Plaintiff agreed that Washington law "likely governs" the tort claims asserted there, and Plaintiff made no showing that there was an actual conflict between Washington and California laws. *Id.* at 994–95. "Thus, the *Garner* court was not required to conduct a choice-of-law analysis." *Mountain Hi*, 2022 WL 17486328, at *3 n.6.

1120 (Wash. 2007) (quoting *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997)); *see also ACD Distrib. LLC v. Wizards of the Coast LLC*, 2021 WL 4027805, at *1 (9th Cir. Sep. 3, 2021) (conducting choice-of-law analysis under Washington law where existence of an "actual conflict" was not disputed); *Garner*, 603 F. Supp. 3d at 995 ("Absent a showing that the result for a particular issue would be different under the laws of the competing states, there is no 'real' conflict, and the local law of the forum is applied." (citing *Woodward v. Taylor*, 366 P.3d 432 (Wash. 2016))).

Here, Plaintiff has not even attempted to show that there is an actual conflict between Washington and California consumer protection laws. Perhaps such a showing would be difficult, as the Ninth Circuit has found that "Washington's and California's consumer protection laws . . . appear to be substantially similar." *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) (enforcing Defendant's COU and concluding that "applying Washington law is not contrary to a fundamental policy of California law"); *see also Weber v. Amazon.com, Inc.*, No. C17-8868, 2018 WL 6016975, at *6 (C.D. Cal. June 4, 2018) ("Washington law, at least in the context of consumer protection, does not conflict with California law."). Indeed, the California statutes invoked by Plaintiff appear to target the same kinds of unfair or deceptive behavior covered by the Washington Consumer Protection Act ("WCPA"). *Compare* Cal. Civ. Code §§ 1750 *et seq.* (Consumer Legal Remedies Act or "CLRA"), *and* Cal. Bus. & Prof. Code §§ 17500 *et seq.* (False Advertising Law or "FLA"), *and* Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Competition Law or "UCL"), *with* RCW 19.86.010 *et seq.* (WCPA). Without a showing of an actual conflict, the Court need not conduct a conflict-of-laws analysis, and the choice-of-law provision controls. *Cf. Erwin*, 167 P.3d at 1120 (where choice-of-law provision selected Washington law, concluding that a conflict existed with California law but enforcing provision anyway after choice-of-law analysis).

Accordingly, Plaintiff's California law claims (Causes Two, Three, and Four) are DISMISSED without leave to amend, as amendment would be futile.

### 2. Fraud-Based Claims

As an initial matter, Plaintiff does not appear to dispute that her statutory claim under the WCPA (Cause One) and her common-law claims for negligent misrepresentation (Cause Six), concealment (Cause Seven), and fraud (Cause Eight) (collectively, the "fraud-based claims") are all subject to the heightened pleading standard of Rule 9(b).[5] *See* Dkt. No. 60 at 16–19 (arguing instead that the CAC satisfies Rule 9(b)). Rather, the Parties dispute whether that standard has been satisfied (and if so, whether the CAC properly states the fraud-based claims). *Compare* Dkt. No. 51 at 18–27 *and* Dkt. No. 62 at 9–12, *with* Dkt. No. 60 at 16–23. Among other things, Defendant argues that Plaintiff does not allege *which* advertisements she viewed, *what* they said, and *when* she viewed them. *See* Dkt. No. 51 at 20–21; Dkt. No. 62 at 9–10. Plaintiff argues that the heightened pleading standard is satisfied. *See* Dkt. No. 60 at 17–18.

Here, Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading standard as to her fraud-based claims. While the CAC makes general allegations about Defendant's practices, and supplies "representative" examples of those practices, the CAC suffers from a lack of details about Plaintiff's own experience. For example, Plaintiff generally alleges that Defendant advertises certain benefits of the Prime membership program, including free delivery. *See* Dkt. No. 47 ¶ 9. But by her own allegations, Plaintiff provides only "representative" examples with a range of details and formats. *Id.* Plaintiff does not identify which *actual* advertisements she "read and relied on" or all of what they said, referring instead only to "online advertisements"

---

[5] Neither does Plaintiff appear to dispute that her CLRA (Count 2), FAL (Count 3), and UCL (Count 4) claims are allegations of fraud and subject to the Rule 9(b) standard. Dkt. No. 60 at 16–19. However, the Court is dismissing those claims. *See supra* Section III.A.1.

containing the phrases "FREE Delivery" and "FREE 2-Hour Grocery Delivery" without

providing further detail. *Id.* ¶ 24. Nor does Plaintiff allege where she saw the at-issue

advertisements. *Id.* Plaintiff neither alleges that she met the threshold amount to trigger free

delivery services nor that she did not receive her groceries during the promised delivery period.[6]

Finally, Plaintiff does not identify *when* she viewed the unidentified advertisements—a crucial

detail, given that: (1) Plaintiff alleges Defendant made false and misleading advertisements that

delivery was free at a time when delivery was, in fact, not free (*see id.* ¶¶ 26, 49, 99, 105, 115);

and (2) Plaintiff's CAC twice cites an October 28, 2021, CNN news article reporting on a new

$9.95 delivery fee on orders for Whole Foods deliveries placed through Prime (*see id.* ¶¶ 13 n.3,

14 n.5), but Plaintiff placed the at issue order on January 22, 2022—three months after the

change (*see id.* ¶ 25).

Without more details, Plaintiff has not met the 9(b) standard, and Defendant cannot

properly answer Plaintiff's claims. *See Heck v. Amazon.com, Inc.*, No. C22-3986, 2022 WL

17419554, at *3 (N.D. Cal. Dec. 5, 2022) (holding fraud claims did not meet Rule 9(b) standard

where "Plaintiff's conclusory labels of 'who, what, where, when, and how' . . . lack the factual

support" such as "what the alleged misstatement or misstatements said," any context for the

misstatements, and "when or where Plaintiff saw them"); *Salameh v. Tarsadia Hotel*, 726 F.3d

1124, 1133 (9th Cir. 2013) (holding fraud claims did not meet Rule 9(b) standard where "they do

not identify when Defendants made the representations that Plaintiffs purport to be false");

*Kearns*, 567 F.3d at 1126 (holding fraud claims did not meet Rule 9(b) standard where no

allegation of "the particular circumstances surrounding such representations," including what

---

[6] Oddly, the representative example Plaintiff chooses to use in the CAC is for a purchase totaling $4.95 which would not qualify for the free delivery service. Dkt. No. 47 ¶¶ 17–18. Plaintiff's chosen example is even stranger given the claim that a customer would not notice the additional fees when a $4.95 purchase would result in a final charge of $19.24—a charge nearly four times the price of the single item. *See* Dkt. No. 47 ¶ 18.

advertisements "specifically stated" or "when [plaintiff] was exposed to them or which ones he found material"). These types of details are the kind that should readily be available to Plaintiff without the need for any discovery.

Accordingly, Plaintiff's fraud-based claims (Causes One, Six, Seven, and Eight) are DISMISSED with leave to amend.

### 3.    Contract and Quasi-Contract Claims

Plaintiff alleges that Defendant breached its contract with her—namely, the Prime Terms and Conditions ("T&C")—when it rescinded the Prime benefit of free Whole Foods delivery and when it failed to make Whole Foods deliveries within two hours.[7] Dkt. No. 47 ¶ 122. Plaintiff further alleges that in eliminating free delivery, Defendant breached the implied covenant of good faith and fair dealing. *Id.* ¶ 128. Finally, Plaintiff alleges that Defendant was unjustly enriched by the collection of delivery service fees. *Id.* ¶ 94.

#### a.    *Breach of Contract*

Defendant argues that Plaintiff "never identifies what contractual provision [Defendant] allegedly breached" and that the T&C do not guarantee free delivery or two-hour delivery. Dkt. No. 51 at 27. Defendant further argues that it had authority to unilaterally modify Prime benefits. *Id.* at 28. Plaintiff counters that free delivery "was a term that was integrated into the applicable contract." Dkt. No. 60 at 24. Plaintiff thus further argues that Defendant improperly modified the terms of the contract, which Defendant disputes even if free delivery is an integrated term. *Id.* at 26–27; Dkt. No. 51 at 28–29.

---

[7] Plaintiff does not dispute that she was bound by the T&C. On the contrary, Plaintiff affirmatively alleges that she "entered into a contract with [Defendant] for a Prime membership" (Dkt. No. 47 ¶ 121), and she attached a copy of the T&C to the CAC (*id.* at 32–36).

1    "Under Washington law, '[a] breach of contract is actionable only if the contract imposes

2  a duty, the duty is breached, and the breach proximately causes damage to the claimant.' "

3  *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023) (quoting *Nw. Indep. Forest*

4  *Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. 1995)). "And, of course, if an action is

5  permitted by the contract, the performance of that action is not a breach." *Id.* (citing *Myers v.*

6  *State*, 218 P.3d 241, 243 (Wash. App. 2009)); *accord Talyancich v. Microsoft Corp.*, No. C12-

7  1128, 2012 WL 12941690, at *2 (W.D. Wash. Nov. 2, 2012) ("Where the defendant's conduct is

8  expressly authorized by the terms of the contract, there is no breach.").

9    In *Marquez*—about which the Parties submitted supplemental briefing (Dkt. Nos. 70–

10  71)—the Eleventh Circuit applied Washington law to the language at issue here. The Court finds

11  the rationale in *Marquez* persuasive. There, a proposed class of Prime members brought claims

12  for breach of contract, breach of implied covenant, and unjust enrichment (as well as claims

13  under the WCPA) over the suspension of "Rapid Delivery" at the start of the COVID-19

14  pandemic. 69 F.4th at 1266. In adjudicating the breach-of-contract claim, the court assumed

15  (without deciding) the existence of a binding promise to provide the delivery benefit. *Id.* at 1269.

16  The court went on to dismiss the claim "because [defendant] had contractual authority to suspend

17  Rapid Delivery." *Id.* at 1270. The court focused on two terms of the contract,[8] including this

18  provision: "Amazon may choose . . . to add or remove Prime membership benefits." *Id.* The

19  court concluded that "[t]he contract repeatedly qualified the rights of Prime subscribers and gave

20

21

22  ───────────────

[8] The second provision was specific to a Prime benefit (*i.e.*, expedited shipping) not at issue here: "AMAZON
SERVICES . . . ARE PROVIDED BY AMAZON ON AN 'AS IS' AND 'AS AVAILABLE' BASIS." *Marquez*, 69 F.4th at 1270 (caps
23  in original). Moreover, contrary to Plaintiff's assertion (*see* Dkt. No. 71 at 2–3), the Court does not find that the
circumstances of the COVID-19 pandemic distinguish the reasoning of *Marquez* as applied to the contractual
24  language at issue here. The Eleventh Circuit discussed COVID-19 in relation to the public interest factor of a WCPA
claim. *Marquez*, 69 F.4th at 1275–76.

[Defendant] the authority to modify Prime benefits—including Rapid Delivery." *Id.* In fact, the court said, Defendant's authority to do so was "indisputable." *Id.*

Here, assuming (without deciding) that free Whole Foods delivery or two-hour delivery are terms that are integrated into the T&C,[9] the Court finds that Defendant had contractual authority to suspend these benefits. Plaintiff was bound to the T&C, which notably includes a provision similar to the one in *Marquez*: "From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." Dkt. No. 47 at 34. Other provisions in the T&C confirm this broad authority:

> • "From time to time, we may offer different membership terms, and the fees for such membership may vary." *Id.*
>
> • "We may in our discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you. . . . YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR MEMBERSHIP." *Id.* (caps in original).

Taken together, the plain terms of the T&C appear to establish Defendant's authority to suspend any benefits of Prime membership, including free delivery and two-hour delivery, and Plaintiff does not offer an alternative understanding of this contractual language. *See* Dkt. No. 60 at 26. Because Defendant's conduct is authorized by the terms of the T&C, there is no breach, and Plaintiff's claim fails. *See Talyancich*, 2012 WL 12941690, at *2 (dismissing breach-of-contract claim where contract authorized defendant's conduct); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1172 (W.D. Wash. 2014) (same).

---

[9] This proposition is not self-evident. "[P]roceeding under the assumption that this contract was partially integrated," only "extra-contractual evidence that *does not contradict terms* of the contract" would be considered. *Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309, 2015 WL 4920079, at *7 (W.D. Wash. Aug. 17, 2015) (emphasis added). But unwritten terms that guarantee certain benefits appear to conflict with the written provisions of the T&C (listed below) that establish Defendant's authority to modify those same benefits.

1

           **b.**     ***Breach of Duty of Good Faith and Fair Dealing***

2             While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that

3 duty "is not free-floating, but 'arises only in connection with terms agreed to be the parties.'"

4 *Est. of Carter v. Carden*, 455 P.3d 197, 202 (Wash. App. 2019) (quoting *Badgett v. Sec. State*

5 *Bank*, 807 P.2d 356, 360 (Wash. 1991)). "If there is no contractual duty, there is nothing that

6 must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL

7 5141990, at *7 (W.D. Wash. Sept. 21, 2016). Because Defendant's conduct was authorized by

8 the T&C, Defendant had no duty that was required to be performed in good faith. *See Goodyear*

9 *Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 633 (Wash. App. 1997) (finding where

10 contract "unambiguously permitted" party to act, "there was no room for the exercise of

11 discretion and, consequently, nothing to which to apply the covenant of good faith"); *Marquez*,

12 69 F. 4th at 1274 ("Amazon did not breach the duty of good faith and fair dealing because it was

13 non-existent in this instance.").

14             Plaintiff's reliance on *Skansgaard v. Bank of America, N.A.* is misplaced. 896 F. Supp. 2d

15 944 (W.D. Wash. 2011). There, a contract term was ambiguous, and the court denied a motion to

16 dismiss the implied duty claim because whether the defendant's interpretation of the ambiguous

17 term was reasonable was a question of fact. *Id*. at 948; *cf. Rekhter, v. State, Dep't of Soc. &*

18 *Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) ("[T]he duty of good faith and fair dealing

19 arises 'when the contract gives one party discretionary authority to determine a contract term.'"

20 (quoting *Goodyear*, 935 P.2d at 632)). Here, there is no ambiguity: the T&C authorize Defendant

21 to modify Prime benefits.

22             Plaintiff also argues in her supplemental brief that the Prime contract is "illusory." Dkt.

23 No. 71 at 5 n.2. However, "[i]n Washington, a contract is illusory only if it lacks all

24 consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to

1   *any* parts of the contract." *Marquez*, 69 F.4th at 1271 (quoting *Ekin v. Amazon Servs., LLC*, 84 F.

2   Supp. 3d 1172, 1176 (W.D. Wash. 2014) (emphases in original)). While Plaintiff's claim is

3   focused on free Whole Foods delivery, there are other Prime benefits and services that were

4   apparently not modified, such as "same, one or two-day delivery of goods and streaming music,

5   video, e-books, [and] gaming." Dkt. No. 47 ¶ 7. Cancellation of one benefit does not render the

6   contract "completely illusory." *Marquez*, 69 F.4th at 1271 (internal quotation marks omitted)

7   (finding Prime contract not illusory where Amazon stopped providing Rapid Delivery but

8   continued to provide other Prime benefits and services such as streaming access for movies,

9   television shows, and music). As currently pleaded, Plaintiff's claim fails.

10      However, Plaintiff also argues in her supplemental brief that "[Defendant] breached its

11   duty of good faith and fair dealing by abusing its discretion under the contract to terminate the

12   free delivery service without refund or recourse to consumers and by engaging in surreptitious

13   collection of an additional delivery fee." Dkt. No. 71 at 4–5. "Importantly, a violation of the duty

14   of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings,*

15   *a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also*

16   *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (holding that

17   duty of good faith and fair dealing can arise even when there is no breach of an express contract

18   term). The Court does not read Plaintiff's complaint to make this argument (*see* Dkt. No. 47

19   ¶¶ 126–130) but will give Plaintiff leave to amend and clarify this claim.

20                  **c.    *Unjust Enrichment***

21      Finally, assuming (without deciding) that Plaintiff was permitted to plead unjust

22   enrichment in the alternative and properly did so—propositions that Defendant disputes (*see* Dkt.

23   No. 51 at 30)—the "validity of the contract" is no longer "in dispute" (Dkt. No. 60 at 29)

24   because the Court finds that Defendant's modification of Prime benefits (*i.e.*, imposition of the

service fee) was authorized by the T&C. Therefore, it is no longer "plausible" (*id.*) that the

imposition of a service fee constituted improper modification of the contract. *See Scott v. Carr*,

No. C20-236, 2020 WL 6381812, at *4 (W.D. Wash. Oct. 30, 2020) ("[A] claim for unjust

enrichment may survive a motion to dismiss *so long as the validity of the contract remains in*

*dispute.*" (emphasis added)); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D.

Wash. 2010) ("Under Washington law, a plaintiff who is a party to a 'valid express contract is

bound by the provisions of that contract' and may not bring a claim for unjust enrichment for

issues arising under the contract's subject matter." (quoting *Chandler v. Wash. Toll Bridge Auth.*

137 P.2d 97, 103 (Wash. 1943))).

   Accordingly, Plaintiff's breach of contract and unjust enrichment claims (Causes Five

and Nine) are DISMISSED without leave to amend, as amendment would be futile. However,

Plaintiff's breach of implied duty claim (Cause Ten) is DISMISSED with leave to amend.

### 4. Declaratory Judgment

   Plaintiff alleges that "[a]n actual controversy now exists between the Parties regarding

their rights and liabilities, and terms under Amazon Prime's contract for deliveries," and thus

requests a "judicial declaration" on its terms. Dkt. No. 47 ¶¶ 132–33. Defendant argues that

Plaintiff's claim should be dismissed "because it is a legal remedy, not a cause of action." Dkt.

No. 51 at 30 (citing *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash.

2016)). Plaintiff agrees that declaratory relief is a remedy.[10] *See* Dkt. No. 60 at 29. If Plaintiff

---

[10] Plaintiff also argues that "Amazon incorrectly asserts that Plaintiff did not challenge the validity or conscionability of the Prime contract here." Dkt. No. 71 at 5–6. While Plaintiff did allege the contract is void in her breach of contract claim (*see* Dkt. No. 47 ¶ 125), she did not allege unconscionability anywhere except in her request for declaratory relief. *See generally* Dkt. No. 47. And to the extent that Plaintiff alleges the contract is "void or voidable" or "unconscionable" (*see* Dkt. No. 71 at 6) as part of her request for declaratory relief (Dkt. No. 47 ¶ 132), Plaintiff concedes this is a remedy, not a standalone claim, and thus her request for declaratory relief will necessarily be dismissed along with all legal claims.

choose to amend her complaint, she may include any appropriate requests for declaratory relief in her requests for a remedy.

Accordingly, Plaintiff's claim for declaratory judgment (Cause Eleven) is DISMISSED.

**B.      Motion to Strike**

Defendant makes two arguments: (1) the second proposed nationwide class should be stricken (Dkt. No. 51 at 31–33); and (2) allegations regarding package delivery delays and an optional tip should be stricken (*id.* at 33). Plaintiff opposes on both grounds. *See* Dkt. No. 60 at 30–32.

**1.      Second Nationwide Class Allegations**

In the CAC, Plaintiff proposes two nationwide classes. Dkt. No. 47 ¶ 33. In its motion, Defendant moves to strike the second one, comprised of "[a]ll U.S. citizens who were Amazon Prime members from June 7, 2018[,] until the date notice is disseminated to the class." *Id.* Defendant argues that this second nationwide class is "impermissibly overbroad and definitionally deficient" because not all class members have standing, and the class could not establish typicality or commonality. Dkt. No. 51 at 32–33. Plaintiff agrees that the class includes members "who did not pay the service fee," but nonetheless argues that these "did not receive the benefit of their bargain" because Defendant rescinded free delivery after they signed up for Prime, "regardless of whether they used the [delivery] service." Dkt. No. 60 at 31.

Here, the second nationwide class allegations will be stricken with leave to amend. While motions to strike are generally disfavored, "a court may strike class allegations if the plaintiff '[can]not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures [are] 'likely to produce persuasive information substantiating the class action allegations.'" *Cashatt v. Ford Motor Co.*, No. C19-5886, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020) (alterations in original) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).

As Plaintiff concedes, this proposed class includes Prime members who *never* paid for the Whole Foods delivery service. Dkt. No. 60 at 31. Plaintiffs argue that those who never paid the fee did not receive the benefit of their bargain because Amazon rescinded the free delivery service. *Id.* But the class definition would also include Prime members who never paid the delivery fee and had no intention of using the Whole Foods delivery service or for whom there was no Whole Foods Market in their deliverable area. *See* Dkt. No. 47 ¶ 9 (explaining that free delivery from Whole Foods was "[a]vailable in select US cities"). This subset of class members would not have Article III standing. *See, e.g.*, *Cashatt*, 2020 WL 1987077, at *5 (striking class definition on a motion to dismiss where class encompasses individuals who "sustained no injury"); *Seegert v. Rexall Sundown*, No. C17-1243, 2017 WL 5973414, at *5 (S.D. Cal. Dec. 1, 2017) (striking class definition where "Plaintiff fails to prove that all members of her class definition have been injured and/or have standing pursuant to Article III."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class definition on a motion to dismiss where class included individuals who did not purchase the product at issue, were not deceived by advertisements, and did not suffer damages).

Accordingly, the second nationwide class allegations are STRICKEN with leave to amend.

### 2.     Package Delivery and Tip Allegations

In the CAC, Plaintiff alleges that "many Amazon Prime Members report not receiving their deliveries during the promised delivery period." Dkt. No. 47 ¶ 13; *see also id.* n.4 (news article on reported delays in two-day shipping). Plaintiff also alleges that "Amazon also includes a $5 tip that is shown in small text above the total price of the delivery that is unlikely to be noticed by a reasonable consumer." *Id.* ¶ 18. Defendant argues that these allegations should be stricken because Plaintiff does not assert a claim for delays in package deliveries or the $5 tip.

Dkt. No. 51 at 33. Plaintiff responds that these allegations are "background information" and that Defendant has not shown prejudice. Dkt. No. 60 at 32.

Here, the package delivery and tip allegations will be stricken with leave to amend. While motions to strike are generally disfavored, the Court has no doubt that these allegations, as pleaded, are "immaterial" and "impertinent" to Plaintiff's claims as they appear to neither have an "essential or important relationship to the claim for relief or defense pleaded" nor "pertain" or be "necessary to the issues in the case." Fed. R. Civ. P. 12(f); *Polaris PowerLED Techs., LLC v. Nintendo Co., Ltd.*, 623 F. Supp. 3d 1132, 1135–36 (W.D. Wash. 2022); *see Austin v. Amazon.com, Inc.*, No. C09-1679, 2010 WL 1875811, at *4 (W.D. Wash. May 10, 2010) (striking allegations where the complaint "does not allege a legal theory" that would entitle plaintiff to relief on those allegations). Plaintiff makes no legal claim as to the package delivery and tip allegations, nor does Plaintiff explain why these allegations are relevant to her claims. Thus, as written and explained, the allegations serve only to summon the specter of impropriety while failing to provide any relevant "background information, historical material, 'or other matter of an evidentiary nature.'" *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) (quoting *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010)).

Moreover, Defendant is not required to make a showing of prejudice. *See Van v. LLR, Inc.*, 523 F. Supp. 3d 1077, 1081 (D. Alaska 2021) ("[T]he Ninth Circuit has never held that a showing of prejudice is required . . . ."); *see also*, *e.g.*, *Est. of Sanchez v. Cnty. of Stanislaus*, No. C18-977, 2019 WL 4201442, at *2 (E.D. Cal. Sep. 5, 2019) ("The court therefore declines to require [the moving party] to make a showing of prejudice."); *Houston Cas. Co. v. Crum & Forster Ins. Co.*, No. C16-535, 2016 WL 4494444, at *5 (E.D. Cal. Aug. 25, 2016) ("[The moving party] need not show prejudice for the Court to grant its motion to strike."). *But see Est.*

*of Sanchez*, 2019 WL 4201442, at \*2 ("District courts within the Ninth Circuit are presently split on this question.").

Accordingly, the allegations regarding package delivery and tips are STRICKEN with leave to amend.

## IV.   CONCLUSION

For the reasons above, the Court GRANTS Defendant's Motion to Dismiss Amended Consolidated Complaint and Strike Certain Allegations (Dkt. No. 51). It is hereby ORDERED:

(1)   Causes Two, Three, Four, Five, and Nine (California claims, breach of contract, and unjust enrichment) are DISMISSED without leave to amend.

(2)   Causes One, Six, Seven, and Eight (fraud-based claims) and Cause Ten (breach of implied duty) are DISMISSED with leave to amend.

(3)   Cause Eleven (declaratory relief) is DISMISSED.

(4)   Plaintiff's allegations regarding the second nationwide class, package delivery, and tips are STRICKEN with leave to amend.

Should Plaintiff choose to amend, the amended complaint must be filed **within thirty (30) days** of this Order.

Dated this 7th day of December 2023.

Tana Lin
United States District Judge