THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON SERVICE FEE
LITIGATION

Case No.: 2:22-cv-00743-TL

(CONSOLIDATED CASE)

**AMAZON.COM, INC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

NOTE ON MOTION CALENDAR:
MARCH 15, 2024

ORAL ARGUMENT REQUESTED

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1

**TABLE OF CONTENTS**

2

**Page**

3
INTRODUCTION ................................................................................................................1

4
BACKGROUND ................................................................................................................3

5
I.     AMAZON PRIME MEMBERSHIP.................................................................3

6
II.    WFM GROCERY DELIVERY ......................................................................4

7
III.   PLAINTIFF'S PREVIOUS FLAWED THEORIES ........................................6

8
IV.   PLAINTIFF'S NEW FLAWED THEORIES...................................................8

9
ARGUMENT .....................................................................................................................9

10
I.     THE COURT SHOULD DISMISS THE FACC IN ITS ENTIRETY. ...................9

11
A.    Plaintiff Still Fails To State A Viable WCPA Claim.................................9

12
1.   Plaintiff Has Not Pled Fraud With Specificity Under Rule 9(b)...........................................................................................9

13

14
2.   Plaintiff Pleads No Unfair Or Deceptive Act Or Practice. ............12

15
a.   Plaintiff's Misrepresentation Theory Fails. ......................12

16
b.   Plaintiff's "No-Refund" Theory Fails...............................13

17
c.   Plaintiff's Omission Theory Fails.....................................15

18
d.   Plaintiff's Pleads No Unfairness. .....................................17

19
3.   Plaintiff Does Not Adequately Plead Causation...........................18

20
B.    Plaintiff's Implied-Covenant Claim Still Fails. .........................................18

21
C.    Amendment Would Be Futile. .................................................................20

22
II.    THE COURT SHOULD STRIKE PLAINTIFF'S PROPOSED CLASSES.........21

23
CONCLUSION.................................................................................................................22

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Access the USA, LLC v. State of Washington*,
No. 14-2-13879-2, 2015 WL 12620039 (Wash. Super. Feb. 27, 2015) ..................................12

*Alpert v. Nationstar Mortg., LLC*,
No. C15-1164 RAJ, 2019 WL 1200541 (W.D. Wash. Mar. 14, 2019) ............................17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................9

*Badgett v. Sec. State Bank*,
116 Wn.2d 563, 807 P.2d 356 (1991) ...............................................................................18, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................9, 20

*Brown v. Starbucks Corp.*,
No. 18cv2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) ..........................15, 16

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ............................................................................................20

*Cashatt v. Ford Motor Co.*,
No. 3:19-cv-05886-RBL, 2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)....................21, 22

*Charbonnet v. Omni Hotels & Resorts*,
No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ........................16

*Chau v. Aviva Life & Annuity Co.*,
No. 3:09-CV-2305-B, 2011 WL 1990446 (N.D. Tex. May 20, 2011) ....................................12

*Cmre Fin. Servs. Inc. v. Doxo Inc.*,
No. 2:22-cv-00298-RAJ-BAT, 2022 WL 16701259 (W.D. Wash. Oct. 7,
2022) ..........................................................................................................................11

*Cole v. Keystone RV Co.*,
No. C18-5182 TSZ, 2021 WL 3111452 (W.D. Wash. July 22, 2021) .......................13, 15, 17

*Fairhaven Health, LLC v. BioOrigyn, LLC*,
No. 2:19-cv-01860-RAJ, 2020 WL 5630473 (W.D. Wash. Sept. 21, 2020)..........................20

*Fid. Mortg. Corp. v. Seattle Times Co.*,
213 F.R.D. 573 (W.D. Wash. 2003) ..................................................................................9

*Ford v. Hotwire, Inc.*,
No. 07-CV-1312 H (NLS), 2007 WL 6235779 (S.D. Cal. Nov. 19, 2007)............................14

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- ii -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...................................................................................11, 17

*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*,
  105 Wn.2d 778, 719 P.2d 531 (1986) ...............................................................................18

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
  58 F. Supp. 3d 1166 (W.D. Wash. 2014) ......................................................................19, 20

*Harris v. Las Vegas Sands L.L.C.*,
  No. CV 12-10858 DMG (FFMx), 2013 WL 5291142 (C.D. Cal. Aug. 16,
  2013) ..................................................................................................................................16

*Haywood v. Amazon.com, Inc.*,
  No. 2:22-cv-01094-JHC, 2023 WL 4585362 (W.D. Wash. July 18, 2023) ...................18

*Hernandez v. Johnson & Johnson*,
  No. 4:20-cv-05136-SMJ, 2021 WL 320612 (E.D. Wash. Jan. 8, 2021)..........................10

*Hoefs v. Sig Sauer Inc.*,
  No. 3:20-cv-05173-RBL, 2020 WL 3488155 (W.D. Wash. June 26, 2020)..................11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...........................................................................9, 10, 12

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ...........................................................................................21

*Marquez v. Amazon.com, Inc.*,
  69 F.4th 1262 (11th Cir 2023) ...........................................................................................14

*McAuliffe v. Vail Corp.*,
  69 F.4th 1130 (10th Cir. 2023) ..........................................................................................15

*Porras v. StubHub, Inc.*,
  No. C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sept. 4, 2012)...................................14

*Rex - Real Estate Exch., Inc. v. Zillow Inc.*,
  No. C21-312 TSZ, 2021 WL 3930694 (W.D. Wash. Sept. 2, 2021)......................................10

*Samuels v. Old Kent Bank*,
  No. 96 C 6667, 1997 WL 458434 (N.D. Ill. Aug. 1, 1997)...................................................15

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (2009) ...........................................................................................21, 22

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ..............................................................................................12

*Schaub v. JPMorgan Chase Bank N.A.*,
    No. 78439-1-I, 2019 WL 2751168 (July 1, 2019) ................................................................18

*Seegert v. Rexall Sundown, Inc.*,
    No. 17cv1243-JAH (JLB), 2017 WL 5973414 (S.D. Cal. Dec. 1, 2017)..............................22

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ...............................................................................................21

*Smale v. Cellco P'ship*,
    547 F. Supp. 2d 1181 (W.D. Wash. 2008)............................................................................14

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...............................................................................21

*Stokes v. DISH Network, L.L.C.*,
    838 F.3d 948 (8th Cir. 2016) ...............................................................................................19

*Vandenbosch v. City of Bellingham*,
    No. 2:18-cv-00999-RAJ, 2019 WL 1115255 (W.D. Wash. Mar. 11, 2019) ..........................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................................................22

**STATUTES**

RCW § 19.86.020 .............................................................................................................................12

Washington Consumer Protection Act................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 .................................................................................................................................7

Fed. R. Civ. P. 9(b) ................................................................................................................ *passim*

Fed. R. Civ. P. 12 ......................................................................................................................3, 9, 21

Fed. R. Civ. P. 23 ..............................................................................................................................21

AMAZON'S MTN TO DISMISS FACC                    - iv -
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

**INTRODUCTION**

Plaintiff Dena Griffith signed up for Amazon's popular Prime subscription service—which offers members a diverse bundle of valuable benefits, such as expedited shipping and digital content streaming—and enjoyed the Prime service for two years.  The crux of Plaintiff's lawsuit is that Amazon violated the Prime Terms, and consumer protection laws, by eliminating one of the many Prime benefits: free grocery delivery from Whole Foods Market ("WFM").  But Amazon never guaranteed that free WFM delivery, or any other Prime benefit for that matter, would remain available.  To the contrary, Amazon has always disclosed to members that the bundle of Prime benefits is subject to change.  As the Court found when dismissing Plaintiff's Consolidated Class Action Complaint (Dkt. 47) ("CAC"), Amazon "had contractual authority to suspend" "any benefits of Prime membership, including free delivery and two-hour delivery." Dkt. 72 ("Order") at 14-15.  The Court held that, because Amazon's "conduct is authorized by the [Prime] terms," Plaintiff's contract-based claims failed.  *Id.* at 15-16.  The Court also dismissed Plaintiff's fraud claims and fraud-based consumer-protection claims because the CAC "suffer[ed] from a lack of details about Plaintiff's own experience" and did not satisfy the heightened pleading standard under Rule 9(b).  *Id.* at 11.

Plaintiff's First Amended Consolidated Class Action Complaint (Dkt. 73) ("FACC") is her third attempt to plead viable claims against Amazon and her third failure to do so.  In the FACC, Plaintiff has abandoned her breach of contract and express fraud claims, and now only asserts claims for violation of the Washington Consumer Protection Act ("WCPA") and breach of the implied covenant of good faith and fair dealing.  But the FACC suffers from the same fatal defects as the CAC and introduces new ones.  First, ignoring the Court's instructions, Plaintiff fails to support her fraud-based WCPA claim with particularized facts about her own experience.  The Court already rejected Plaintiff's prior attempt to plead with "'representative' examples" and directed Plaintiff to "identify which *actual* advertisements she 'read and relied on' [and] all of what they said." Order at 11.  Plaintiff again fails to identify the advertisements that she actually saw.  Instead, the FACC relies on allegedly "similar" examples, which omit the context necessary to assess the accuracy of Amazon's statements.

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 1 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

1    <u>Second</u>, the WCPA claim fails for the simple fact that Plaintiff concedes that Amazon's

2    alleged misrepresentation—that Prime membership included free WFM delivery—was true when

3    the statement was made because WFM delivery *was* free at that time.  And Plaintiff cannot identify

4    any misrepresentation or omission *after* the WFM delivery fee was implemented.  As the FACC

5    itself reflects, Amazon's checkout process clearly and repeatedly identifies to customers like

6    Plaintiff that a service fee applies to WFM deliveries.  Indeed, Plaintiff ignores the fact that, to

7    schedule a WFM delivery, the customer must *affirmatively click on a button that is labeled with*

8    *the delivery fee*:

9

10

11

12

|  |  |
| --- | --- |
| 1:00 PM - 3:00 PM | $9.95 |
| 3:00 PM - 5:00 PM | $9.95 |

13   In short, no reasonable customer could possibly overlook or misunderstand that a service fee

14   applies to WFM delivery.

15        <u>Third</u>, Plaintiff's implied covenant claim fails as before because the Prime Terms give

16   Amazon the "sole discretion" to add or remove Prime benefits.  The FACC obliquely includes a

17   new theory that Amazon failed to offer "refund or recourse" to Prime members after it removed

18   the free WFM delivery benefit.  But Plaintiff does not allege that she ever sought a refund or other

19   recourse and was denied; in fact, she renewed her membership for another *year* before ultimately

20   choosing not to renew again.  In all events, the Prime Terms also expressly disclose that the Prime

21   subscription fee is "non-refundable" (except under limited circumstances inapplicable here).  Thus,

22   as the Court correctly concluded, Amazon's "conduct is authorized by the [Prime] terms," and

23   Amazon cannot be faulted (let alone legally liable) for standing on its bargained-for contractual

24   rights.  Order at 15-16.

25        Having tried and failed three times to plead viable claims, it is clear that Plaintiff's claims

26   suffer from defects that cannot be cured by further amendment and should be dismissed with

27   prejudice.  But even if the FACC is not dismissed in its entirety, the Court should strike Plaintiff's

28

proposed classes under Rule 12(f) because they include absent class members who were not exposed to Amazon's alleged misstatements, suffered no injury, and lack Article III standing.

## BACKGROUND

### I. AMAZON PRIME MEMBERSHIP

Amazon offers a popular paid membership subscription service called Amazon Prime. FACC ¶ 7. Customers can subscribe to Prime on a monthly or annual basis in exchange for a wide range of benefits, which vary over time and depend on availability. *Id.* ¶¶ 7, 8. To subscribe to Prime, a customer must agree to the Amazon Prime Terms & Conditions (the "Prime Terms"). *Id.* ¶ 8, Ex. 1 at 1 (the Prime Terms "govern [the parties'] respective rights and obligations"). The Prime Terms do not guarantee any specific Prime benefit. Rather, they expressly and unequivocally state, under the bolded heading "**Other Limitations**," that "[f]rom time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." *Id*., Ex. 1 at 2. Under the bolded heading "**Agreement Changes**," Amazon reiterates that it "may in our discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you. … YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES.  IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR MEMBERSHIP." *Id.*

The Prime Terms also clearly delineate the limited circumstances under which Amazon will refund Prime membership fees.  In the first section of the Prime Terms, under the bolded heading "**Membership Cancellation**," Amazon states:

> If you signed-up for your Prime membership directly through us, you may cancel your Prime membership any time by visiting Your Account and adjusting your membership settings. If you cancel within 3 business days of signing up for or converting from a free trial to a paid membership, we will refund your full membership fee; provided that we may charge you (or withhold from your refund) the value of Prime benefits used by you and your account during this 3-business day period. If you cancel at any other time, we will refund your full membership fee only if you and your account did not make any eligible purchases or take advantage of Prime benefits since your latest Prime membership charge.

FACC, Ex. 1 at 1. Under the bolded heading "**Fees and Renewal**," the Prime Terms again disclose

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 3 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

that "[f]rom time to time, [Amazon] may offer different membership terms, and the fees for such membership may vary," but "[t]he Prime membership fee is non-refundable except as expressly set forth in these Terms." *Id.* at 2.  In the same section, Amazon explains that "UNLESS YOU NOTIFY US BEFORE A CHARGE THAT YOU WANT TO CANCEL OR DO NOT WANT TO AUTO RENEW, YOU UNDERSTAND YOUR PRIME MEMBERSHIP WILL AUTOMATICALLY CONTINUE AND YOU AUTHORIZE US (WITHOUT NOTICE TO YOU, UNLESS REQUIRED BY APPLICABLE LAW) TO COLLECT THE THEN-APPLICABLE MEMBERSHIP FEE AND ANY TAXES, USING ANY ELIGIBLE PAYMENT METHOD WE HAVE ON RECORD FOR YOU." *Id.*

## II.    WFM GROCERY DELIVERY

In 2017, Amazon acquired Whole Foods Market, a supermarket chain.  FACC ¶ 10.  From at least 2018 to October 25, 2021, Amazon offered free grocery delivery from WFM as a Prime benefit, subject to a minimum order amount, for customers in certain regions of the United States. *Id.* ¶¶ 20-21, 9, 13.

On September 24, 2021, Amazon announced "an upcoming change to Prime grocery delivery benefits."  Declaration of Brian Buckley ("Buckley Decl.") in support of Amazon's Request for Judicial Notice (filed concurrently with this Motion), Ex. A.  In the email announcement, Amazon stated that "[s]tarting October 25, 2021, delivery orders from [WFM] in your area will include a $9.95 service fee" to help "cover operating costs so we can continue to offer the same competitive everyday prices in-store and online at [WFM]." *Id.*, *see also* FACC ¶¶ 13, 14.  That notice also stated that "[o]ne-hour grocery pickup at [WFM would] continue to be free for Prime members," along with "[t]wo-hour grocery delivery from Amazon Fresh." Buckley Decl., Ex. A, *see also* FACC ¶ 14.  The FACC and its incorporated documents confirm that media outlets covered the "new $9.95 delivery fee," reporting that, while Amazon had previously offered free WFM grocery delivery for Prime members, it "warned shoppers last month a new charge was coming."  Buckley Decl., Ex. B.  As announced, Amazon has charged a service fee for WFM deliveries since October 25, 2021.  FACC ¶ 13.  But Amazon does *not* charge the fee if the customer chooses to pick up a grocery order at a WFM store. *Id.* ¶ 14.

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL                               - 4 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

To place a WFM order, a Prime member can navigate to the WFM section of amazon.com. FACC ¶ 16.  The initial page of the WFM section (the "Landing Page") shows various items and their advertised prices.  *Id.*  Clicking on an item takes the customer to the item-specific page.  *Id.* ¶ 17.  To add the item to her cart, the customer must click a yellow "Add to Cart" button on the upper right-hand side of the webpage.  *Id.*  As reflected in the FACC and excerpted just below, above the "Add to Cart" button Amazon discloses "$9.95 for 2-hour delivery":



*Id.*  Thus, Amazon puts the customer on notice of the delivery fee *each and every time she adds an item to her cart*.

To check out, a customer must click through "a series of webpages" that again disclose the service fee for a delivery order.  FACC ¶ 18.  First, on the shopping cart page, and directly above the yellow "Check out Whole Foods Cart" button, Amazon discloses that the customer can "[g]et 2-hour delivery for $9.95."  Buckley Decl., Ex. C.  After clicking the checkout button, the customer must provide "payment and delivery information."  FACC ¶ 18.  On the "Schedule your order" webpage, the customer must choose between "Delivery" or "Pickup":

Excerpt of Buckley Decl., Ex. D.  As shown above, if a customer selects "Delivery," she must then choose a preferred delivery window.  *Id.*  Next to each available delivery window is a grey-outlined button showing the $9.95 service fee, and the customer cannot proceed with delivery unless she clicks one of the buttons.  And, again, if a customer does not wish to pay the fee, she can simply choose store pickup.  FACC ¶ 14.

On the final webpage, a customer can review her WFM order before purchasing.  FACC ¶ 18.  As the FACC shows, Amazon yet again discloses the service fee on the checkout page.  *Id.*  On the right side of the webpage, below the yellow "Place your order" button is an "Order Summary."  *Id.*  The Order Summary shows the cost, fees, taxes, and order total, including a specific line item for the "Service Fee," shown in blue and hyperlinked to a pop-up explanation of the fee.  *Id.*  The bottom of the Order Summary shows the estimated order total in bolded red text.  *Id.*  The example in the FACC shows that Amazon disclosed that the estimated total to deliver a $4.24 tub of feta cheese noticeably increased after the $9.95 service fee was included.  *Id.*  In sum, no reasonable customer could miss that WFM delivery is subject to a fee.

## III.   PLAINTIFF'S PREVIOUS FLAWED THEORIES

On June 7, 2022, Plaintiff filed her original complaint in *Griffith v. Amazon.com, Inc.*, Case No. 2:22-cv-00783 (W.D. Wash. June 7, 2022).  On September 27, 2022, the Court consolidated that action into the present action.  Dkt. 45.  On October 25, 2022, Plaintiff filed the CAC, her second attempt at a viable pleading.

The CAC asserted claims under California's consumer protection statutes and the WCPA, as well as various common law claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, and several fraud-based claims.  According to the CAC, Amazon's advertisements that Prime members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery" are "false" and "misleading" because Amazon charges a "hidden" $9.95 service fee (Plaintiff's "misrepresentation theory").  CAC ¶¶ 13-14.  The CAC also accuses Amazon of "bait-and-switch advertising" and "drip pricing" because it does not disclose on the Landing Page "the $9.95 service fee along with the advertised price" of the item (Plaintiff's "omission theory").  *Id.* ¶¶ 15-19.  The CAC alleges that Plaintiff is an Amazon Prime member who read and relied on

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 6 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

Amazon's advertisements and who was charged a $9.95 service fee when she placed a WFM delivery order on January 22, 2022. *Id.* ¶ 25.

On December 16, 2022, Amazon moved to dismiss the CAC or, in the alternative, strike certain allegations. Dkt. 51. Among other defects in the CAC, Amazon pointed out that the Prime Terms expressly give Amazon the sole discretion to add or remove Prime benefits. And while Plaintiff's claims sound in fraud, the CAC failed to satisfy Rule 9(b) (or even the threshold Rule 8 standard) because the CAC did not allege which Amazon advertisements Plaintiff saw and did not describe Plaintiff's personal experience on Amazon's website.

The Court agreed and dismissed the CAC in its entirety. Relevant here, the Court dismissed the breach of contract claim with prejudice because Plaintiff "was bound to" the Prime Terms, under which Amazon had the "authority to suspend any benefits of Prime membership, including free delivery and two-hour delivery." Order at 15. Relatedly, the Court dismissed the implied covenant claim because "there is no ambiguity: the T&C authorize Defendant to modify Prime benefits." *Id.* at 16. The Court also dismissed the WCPA and other fraud-based claims because Plaintiff did not satisfy the Rule 9(b) standard, as she did "not identify which *actual* advertisements she 'read and relied on' or all of what they said," "where she saw the at-issue advertisements," or "*when* she viewed the unidentified advertisements." *Id.* at 11-12. The Court also struck one of Plaintiff's two class definitions because it would "include Prime members who never paid the delivery fee and had no intention of using the Whole Foods delivery service or for whom there was no Whole Foods Market in their deliverable area." *Id.* at 19-20.

Having given Plaintiff a roadmap of the CAC's deficiencies and how she might attempt to cure them, the Court granted Plaintiff leave to amend her fraud-based claims under Washington law to satisfy Rule 9(b). Order at 17. The Court also allowed Plaintiff to amend her implied-covenant claim specifically to assert the theory (which Plaintiff raised first in her briefing, *not* in the CAC) that Amazon "abus[ed] its discretion under the contract to terminate the free delivery service without refund or recourse to consumers and by engaging in surreptitious collection of an additional delivery fee." *Id.*

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 7 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

## IV. PLAINTIFF'S NEW FLAWED THEORIES

On January 8, 2024, Plaintiff filed the FACC, asserting only two claims: violation of the WCPA and breach of the implied covenant. Plaintiff advances the same misrepresentation and omission theories as in the CAC. *Compare* CAC ¶¶ 7-19, 47-54, *with* FACC ¶¶ 7-19, 58-66. The FACC also challenges for the first time Amazon's alleged failure to provide any "refund," "recourse," "reduction or rebate in Prime membership fees or any way for annual members to cancel their membership" after the imposition of the service fee. FACC ¶¶ 61, 70.

The FACC alleges that, "[a]t various times in early and mid-2021, Plaintiff saw and reasonably relied on" Amazon's advertisement for Prime stating "FREE Delivery" and "FREE 2-Hour Grocery Delivery." FACC ¶ 24. Plaintiff alleges that she became a Prime member in June 2021 in part because she saw advertisements about free WFM delivery for Prime members. *Id.* ¶ 25. The FACC also alleges that Plaintiff made "Whole Foods grocery purchase[s]" in June, July, and October 2021 and was not charged a service fee, but that she was charged a $9.95 service fee for her WFM purchase in January 2022. *Id.* ¶¶ 28-31. Plaintiff does not claim that she received no notice of the fee. Instead, she claims that she "does not *recall*" seeing or receiving "a *specific, conspicuous* notice" about the implementation of the service fee. *Id.* ¶ 32 (emphasis added). Notably, the FACC does *not* contend that the fee was not disclosed during checkout, or that Plaintiff did not receive Amazon's September 2021 announcement about the service fee. *See* Buckley Decl., Exs. A-B. The FACC also does not allege that Plaintiff saw any advertisements for free *WFM* delivery after October 2021; Plaintiff claims only that, in October 2022, she saw an advertisement for "Fast, free delivery" and "2-hour [grocery] delivery on a wide selection of fresh ingredients" (with no reference to WFM). FACC ¶ 35.

Despite her new theory of a lack of "refund or recourse" for Prime members, the FACC does not allege that Plaintiff ever tried to seek any "refund or recourse" from Amazon after she paid the WFM delivery fee in January 2022. Nor did Plaintiff ever try to cancel her Prime membership—even though Prime members can cancel their memberships at any time—because she did not "g[e]t around to cancelling" before the annual renewal. FACC ¶ 32. Plaintiff admits that, even after June 2022 when her membership renewed, she did not stop placing WFM grocery

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 8 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

orders and paying the applicable delivery fees.  *Id.* ¶ 36 (alleging that Plaintiff "*largely* stopped making online purchases" from WFM (emphasis added)).  In June 2023, almost a year and a half after her January 2022 WFM purchase, Plaintiff chose not to renew her membership.  *Id.* ¶ 37.

Plaintiffs seeks to represent two nationwide classes of U.S. Amazon Prime members: (1) all members "who were charged a service fee in connection with an online delivery from Whole Foods Market from August 1, 2021 until the date notice is disseminated to the class," and (2) all members "who ordered Amazon's Whole Foods free delivery and were annual members when the $9.95 fee was introduced on October 25, 2021."  FACC ¶ 45.

As addressed below, Plaintiff's three failed tries plainly demonstrate that she cannot plead any viable claims.  Because further amendments would be futile, the FACC should be dismissed with prejudice.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THE FACC IN ITS ENTIRETY.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citation omitted). The FACC does not plead any facially plausible claim.

### A.   Plaintiff Still Fails To State A Viable WCPA Claim.

#### 1.   Plaintiff Has Not Pled Fraud With Specificity Under Rule 9(b).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. 9(b).  To satisfy Rule 9(b), a fraud claim must include "the who, what, when, where, and how" of the misconduct.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  A cause of action need not be labeled as "fraud" for Rule 9(b) to apply because it encompasses all claims that are "grounded in fraud" or that "sound in fraud."  *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003).

The Court previously applied Rule 9(b)'s heightened pleading standard to Plaintiff's fraud-based claims (Order at 11) and should do the same again because Plaintiff's WCPA claim "sounds in fraud." *See* FACC ¶¶ 58-66.  Plaintiff's WCPA claim is predicated on "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," such that "the pleading … as a whole" must be stated with particularity.  *See Kearns*, 567 F.3d at 1125; *see also Hernandez v. Johnson & Johnson*, No. 4:20-cv-05136-SMJ, 2021 WL 320612, at *5 (E.D. Wash. Jan. 8, 2021).  Indeed, Plaintiff's allegations underlying her WCPA claim remain largely the same, *i.e.*, Amazon allegedly "actively concealed material facts" about the service fee; engaged "in a bait-and-switch advertising scheme" by "intentionally" "not disclosing the $9.95 service fee"; made statements that are "false, misleading, and likely to deceive a reasonable consumer"; and charged a "hidden," "deceptive," and "buried," service fee for WFM deliveries.  *Compare* CAC ¶¶ 14-15, 26, 49, 13, *with* FACC ¶¶ 13, 15, 38, 40, 60-61.  Courts have applied Rule 9(b) to WCPA claims where, as here, defendant's alleged actions were "*deliberately calculated* to confuse and/or *deceive.*"  *See, e.g.*, *Rex - Real Estate Exch., Inc. v. Zillow Inc.*, No. C21-312 TSZ, 2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021) (emphasis in original).

Despite the addition of a few purported example advertisements, FACC still fails to satisfy the Rule 9(b) pleading standard.  The Court already rejected Plaintiff's attempt to plead with "'representative' examples" and directed Plaintiff to "identify which *actual* advertisements she 'read and relied on' [and] *all of what they said*."  Order at 11 (second emphasis added).  The FACC, however, remains largely silent as to what Plaintiff purportedly saw and relied on.  The FACC alleges that, "[a]t various times in early and mid-2021," Plaintiff saw and relied on advertisements for Prime stating "FREE Delivery" and "FREE 2-Hour Grocery Delivery," which were "substantively identical or similar to" examples in paragraphs 9 through 11 of the FACC.  FACC ¶ 24.  The FACC, however, does not say which example is the most "similar" to the advertisement Plaintiff purportedly saw.  This omission is fatal because most of Plaintiff's "examples" either describe Amazon services that are irrelevant to this lawsuit or do not mention free delivery at all.  For instance, the FACC conflates Amazon's statements about "FREE One-Day Delivery" and "Fast, free delivery" in the context of *brown-box package delivery* with free WFM delivery.  *Id.*

¶ 9 at 3-4.  Another example displays an image of a WFM store and states that "Prime members get convenient 2-hour grocery delivery" but says nothing about *free* delivery.  *Id.* ¶ 11 at 5.

The sole "example" advertisement that mentions "free two-hour delivery from Fresh and your local Whole Foods Market" (FACC ¶ 9) lacks basic information about its context.  It is axiomatic that allegedly deceptive statements must be read "in the context of the entire document," context that the FACC fails to provide.  *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *see also Cmre Fin. Servs. Inc. v. Doxo Inc.*, No. 2:22-cv-00298-RAJ-BAT, 2022 WL 16701259, at *4 (W.D. Wash. Oct. 7, 2022) ("review of the web pages in the context in which they are seen by consumers when they are using [defendant's] website is necessary to determine if the webpages are deceptive").  The FACC is silent about when and where the advertisement was posted, what disclosures accompanied it, or exactly when Plaintiff might have seen it.  Without such context, the advertisement may very well predate October 2021, and the statements therein accurate and not a "misrepresentation."  Plaintiff's thin allegations about purported deception fall short of the Court's directive and plainly do not satisfy Rule 9(b).  *See* Order at 11; *see also, e.g.*, *Hoefs v. Sig Sauer Inc.*, No. 3:20-cv-05173-RBL, 2020 WL 3488155, at *4 (W.D. Wash. June 26, 2020) (Rule 9(b) requires "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.") (citation omitted).

The FACC also "suffers from a lack of details about Plaintiff's own experience" with WFM orders on Amazon's website, again ignoring the Court's directive.  Order at 11.  The FACC cherry-picks screenshots of parts of the checkout process from the "Whole Foods delivery section on Amazon's website."  FACC ¶¶ 16-18.  Like the CAC, the FACC still misleadingly omits portions of the process that contain additional disclosures about the WFM delivery fee.  *See* Buckley Decl., Exs. C-D.  More to the point, the FACC conspicuously says nothing about how Plaintiff arrived at the WFM section of amazon.com.  It also fails to allege if Plaintiff ever saw the initial Landing Page (where, according to Plaintiff, Amazon allegedly should have disclosed the delivery fee) or if she arrived directly on an item-specific page (where Amazon discloses "$9.95 for 2-hour delivery"), *e.g.*, through a search engine.  In short, despite the Court's clear direction, Plaintiff's

vague allegations utterly fail to "give [Amazon] notice of the particular misconduct." *Kearns*, 567 F.3d at 1124.

### 2. Plaintiff Pleads No Unfair Or Deceptive Act Or Practice.

Even if Plaintiff's WCPA claim satisfied Rule 9(b), the FACC fails to plead that Amazon committed any "unfair or deceptive" acts. RCW § 19.86.020. Plaintiff asserts three WCPA theories: (1) a misrepresentation theory for statements in Amazon's advertisements; (2) a "no-refund" theory concerning Amazon's alleged "failure to provide any reduction or rebate in Prime membership fees or any way for annual members to cancel their membership in response to its imposition of the service fee"; and (3) an omission theory predicated on Amazon's online checkout process. FACC ¶¶ 60-61. None of those theories can survive dismissal.

#### a. Plaintiff's Misrepresentation Theory Fails.

Where a WCPA claim turns on an alleged misrepresentation, the statement must be "false or misleading when it was made." *Access the USA, LLC v. State of Washington*, No. 14-2-13879-2, 2015 WL 12620039, at 1 (Wash. Super. Feb. 27, 2015) (dismissing WCPA claim); *see also Chau v. Aviva Life & Annuity Co.*, No. 3:09-CV-2305-B, 2011 WL 1990446, at *9 (N.D. Tex. May 20, 2011) (dismissing WCPA claim where complaint fails to allege why the "statements were false when made"). *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) is instructive. There, the defendant made representations about its customer rewards program and later terminated the program after notice to program members. The Ninth Circuit rejected the misrepresentation-based consumer protection claims because the plaintiffs admitted that the defendant had "in fact honored the terms of the program for 15 years" and did not allege that defendant's representations about the program, which predated the termination date, "were false or deceptive when made." *Id.* at 794.

As in *Sateriale*, Plaintiff identifies no statement by Amazon that was false or deceptive when made. The FACC broadly challenges Amazon's representations that Prime members would receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery." FACC ¶¶ 13, 61. But the FACC does not identify when these alleged misrepresentations were made, and the timing is critical. If Amazon made these statements "in early and mid-2021" (when Plaintiff allegedly saw

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL
- 12 -
FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

"substantively identical or similar" advertisements, *id.* ¶ 24), the statements were categorically true and accurate when made.  Indeed, the FACC admits, and Plaintiff attests from personal experience, that Amazon offered free WFM delivery to Prime members for years.  *Id.* ¶¶ 11, 21, 28-30.  Then, *after* Amazon expressly "warned shoppers a new charge was coming," Amazon implemented the service fee in October 2021.  *Id.* ¶ 13; Buckley Decl., Ex. B.  As confirmed by Plaintiff's allegations and incorporated documents (*see* FACC ¶¶ 13-14), in September 2021 Amazon gave Prime members a month of advance notice that Amazon would charge a $9.95 service fee for WFM delivery orders starting in late October 2021.  Buckley Decl. Ex. A.  Notably, the FACC does *not* deny that Plaintiff received Amazon's email notice but alleges (conveniently) that she "does not ***recall***" seeing "a specific, conspicuous notice" of Amazon's implementation of the delivery fee.  FACC ¶ 32 (emphasis added).

Plaintiff simply does not (and could not) plausibly allege that Amazon advertised "FREE Delivery" or "FREE 2-Hour Grocery Delivery" in connection with *WFM* deliveries after Amazon widely disclosed and implemented the WFM service fee in October 2021.  The FACC includes a screenshot from Amazon's website, allegedly captured after the service fee was implemented, stating: "Fast, free delivery" and "2-hour [grocery] delivery on a wide selection of fresh ingredients."  FACC ¶ 35.  *But that screenshot does not mention WFM*.  Amazon offers other delivery services, such as Amazon Fresh (*see id.* at 3), and is free to accurately advertise its other services.  *Id.* ¶ 35.

b.   Plaintiff's "No-Refund" Theory Fails.

Plaintiff asserts the new theory that Amazon violated the WCPA by "fail[ing] to provide any reduction or rebate in Prime membership fees or any way for annual members to cancel their membership" after Amazon removed the free WFM delivery benefit.  FACC ¶ 61.  This theory also misses the mark.

Under the WCPA, deception exists only "if there is a representation, omission or practice that is likely to mislead a reasonable consumer."  *Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021).  As a matter of law, reasonable consumers are not likely to be misled where a defendant discloses, and puts consumers on notice of, the

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 13 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

conduct at issue.  *See, e.g.*, *Porras v. StubHub, Inc.*, No. C 12-1225 MMC, 2012 WL 3835073, at *6 (N.D. Cal. Sept. 4, 2012) (dismissing consumer protection claims; not unfair or deceptive where defendant's "website clearly sets forth the terms" of its guarantee and "express[ly] acknowledg[es] the tickets might be invalid"); *Ford v. Hotwire, Inc.*, No. 07-CV-1312 H (NLS), 2007 WL 6235779, at *4 (S.D. Cal. Nov. 19, 2007) (dismissing consumer protection claims; no reasonable consumer is likely to be deceived where defendant's terms of use on its website "expressly state[] that its quoted rate does not include certain charges").  In *Smale v. Cellco P'ship*, the plaintiffs alleged that Verizon violated the WCPA by charging its customers an "Effect of City Tax" fee. 547 F. Supp. 2d 1181, 1183 (W.D. Wash. 2008).  The court held that Verizon's conduct was not unfair or deceptive because Verizon's contract unambiguously disclosed that Verizon generally "reserves the right to assess additional fees."  *Id.* at 1185-88.  And in *Marquez v. Amazon.com, Inc.*, the plaintiff-subscribers challenged Amazon's suspension of enhanced shipping benefits (or "Rapid Delivery") that it previously offered to Prime members.  69 F.4th 1262 (11th Cir 2023). The Eleventh Circuit held that the plaintiffs failed to allege "unfair or deceptive" conduct because "Amazon's discretionary authority to suspend Rapid Delivery was made exceedingly clear" and the Prime Terms governing Amazon's "power to alter subscribers' memberships" "were easily accessible and straightforward" and do not "hid[e] the ball in any way."  *Id.* at 1274-75 (quoting *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1187 (E.D. Wash. 2015)).

As in *Smale* and *Marquez*, the FACC alleges nothing unfair or deceptive because Amazon fully and unequivocally disclosed the challenged conduct.  First, the Prime Terms state that "Amazon may choose in its sole discretion to add or remove Prime membership benefits."  FACC, Ex. 1 at 2.  There is no dispute that Plaintiff agreed to the Prime Terms and is bound to those Terms as a Prime member.  Order at 13 n. 7; FACC ¶ 8.  Free WFM grocery delivery was just one "Prime membership benefit," which, as the Court found, Amazon "had contractual authority to suspend." Order at 15.  Second, the Prime Terms disclose upfront that Amazon will "refund your full membership fee" only "[i]f you cancel within 3 business days" of joining Prime; "[i]f you cancel at any other time, [Amazon] will refund your full membership fee only if you and your account did not make any eligible purchases or take advantage of Prime benefits since your latest Prime

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 14 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1    membership charge"; and the Prime membership fee is otherwise "non-refundable."  FACC, Ex. 1

2    at 1-2.  The FACC does *not* allege that, contrary to the Prime Terms, Amazon failed to refund or

3    reduce the Prime membership fee.  All of Amazon's alleged conduct was disclosed and permitted

4    by the Prime Terms; thus, Amazon's "exercise of [its] express contractual right" is neither

5    deceptive nor unfair.  *Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434, at *9-12 (N.D.

6    Ill. Aug. 1, 1997) (dismissing consumer protection claim; defendant's cancellation of its rewards

7    program "at any time for any reason" was permitted by the "express terms" of the contract and

8    thus "neither fraudulent nor deceptive"); *see also McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1156

9    (10th Cir. 2023) (dismissing WCPA and other consumer protection claims; "due to the no-refund

10   clause, [ski passholders] could not have been reasonably misled or deceived into believing [the ski

11   resort] would provide refunds if it closed its resorts prior to the end of the season").

12                          c.       Plaintiff's Omission Theory Fails.

13          Plaintiff's omission theory fares no better.  The FACC claims that Amazon engaged in

14   "bait-and-switch" and "drip pricing" by "not disclosing the $9.95 service fee along with the

15   advertised price of the Whole Foods grocery items."  FACC ¶¶ 15, 61.  In fact, the WFM service

16   fee is fully and repeatedly disclosed to customers throughout the purchase and checkout process.

17          An omission-based WCPA claim fails where a defendant makes the allegedly omitted

18   "information publicly available online" and the information is "easily discoverable had [p]laintiffs

19   chosen to look for them."  *Cole*, 2021 WL 3111452, *4-5 (dismissing omission-based WCPA

20   claim).  A defendant need not "disclose the information to [plaintiffs] in their preferred method,

21   which does not itself constitute a deceptive act under the [W]CPA."  *Id.*  Moreover, there is no

22   "bait-and-switch problem" where "there is no deceptive act to be dispelled."  *Brown v. Starbucks

23   Corp.*, No. 18cv2286 JM (WVG), 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) (citation

24   omitted).  In *Brown*, the plaintiff alleged that Starbucks violated consumer protection laws because

25   it should have disclosed on the front of its packaging that the product contained artificial

26   ingredients, and not just on the back in the ingredients list.  The court disagreed, because a

27   reasonable consumer would not "simply assume the absence of an artificial ingredients disclosure

28

1  on the [product's] front packaging means the product contains only natural ingredients," and

2  "nothing on the packaging suggests the [product] contain only natural ingredients." *Id.*

3  Similarly, there is no actionable "drip pricing" where the fee is clearly disclosed *before* a

4  consumer completes the transaction. *See Charbonnet v. Omni Hotels & Resorts*, No. 20-cv-01777-

5  CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) (dismissing consumer protection claims

6  where defendant disclosed the total price, including the challenged fee, before the hotel reservation

7  booking).   For example, in *Harris v. Las Vegas Sands L.L.C.*, the plaintiff challenged the

8  defendant-resort's imposition of a resort fee that was not disclosed when consumers initially

9  browsed room options but was disclosed on the final reservation page, which set forth the grand

10  total for the transaction and stated: "Total does not include applicable daily resort fee of $20 plus

11  tax." No. CV 12-10858 DMG (FFMx), 2013 WL 5291142, at *2 (C.D. Cal. Aug. 16, 2013). The

12  court found that the resort's website was not deceptive because it "explicitly disclosed the

13  existence and amount of the resort fee," and the fee was repeatedly disclosed to consumers and not

14  "tucked away inconspicuously." *Id.* at *5.

15  These well-reasoned decisions control here. The WFM Landing Page displays the price of

16  each item and does not suggest that delivery of the item is free. FACC ¶ 16. As in *Brown*, no

17  reasonable consumer would assume that WFM delivery is free simply because the service fee is

18  not mentioned next to the initial product price. *See Brown*, 2019 WL 996399, at *4. In fact, it

19  would not be feasible (and would potentially be misleading) to do as Plaintiff suggests and display

20  "the $9.95 service fee along with the advertised price of the Whole Foods grocery items" on the

21  Landing Page. FACC ¶ 15. Plaintiff concedes that the delivery service fee is *not* universally

22  applicable to all items because, "[i]f a customer instead chooses to pick up the items in-store, then

23  that customer will not be charged the service fee." *Id.* ¶ 14. That is precisely why Amazon

24  discloses the applicable fee (if any) *later* in the checkout process, not next to the item's price.

25  As in *Charbonnet* and *Harris*, Plaintiff's WCPA claim fails because Amazon *repeatedly*

26  discloses the $9.95 service fee *before* a customer places a WFM delivery order. For instance, the

27  FACC's screenshots and allegations show that (1) on each item page, Amazon discloses "$9.95

28  for 2-hour delivery" above the "Add to Cart" button; and (2) on the checkout page, the $9.95 line

item for "Service Fee" is displayed in a prominent blue color and included as part of the WFM order total.  FACC ¶¶ 17-18.  The FACC glosses over the "series of webpages asking for payment and delivery information" (*id.* ¶ 18), but those omitted pages further disclose the fee.  For instance, a customer must select her desired delivery time on the "Schedule your order" page, and every available delivery window requires a customer *to affirmatively click on a "$9.95" button*.  Buckley Decl., Ex. D.

The FACC quibbles that the item page shows the fee "in smaller font and in a different color than the advertised price of the grocery item," but that argument, too, is unavailing.  FACC ¶ 17.  <u>First</u>, it is foreclosed by *Cole* and other well-established case law.  Amazon's disclosures are "publicly available online" and "easily discoverable had [Plaintiff] chosen to look for them"; just because Amazon does not "disclose the information to [Plaintiff] in [her] preferred method … does not itself constitute a deceptive act under the [W]CPA."  *Cole*, 2021 WL 3111452, *4-5.  Moreover, where, as here, "[n]one of the qualifying language is hidden or unreadably small," and "[t]he qualifying language appears immediately next to the representations it qualifies," "no reasonable reader could ignore it."  *Freeman*, 68 F.3d at 289.  <u>Second</u>, Plaintiff's claim that a customer would not notice the fees is facially implausible because, as the Court observed, the FACC's screenshots show a "$4.95 purchase [that] would result in a final charge of $19.24—a charge nearly four times the price of the single item."  Order at 12 n.6.  And if a consumer were to place a grocery delivery order with multiple items, she would be confronted with the "$9.95 for 2-hour delivery" disclosure each and every time she navigates to the item page.

### d.   Plaintiff's Pleads No Unfairness.

Under the WCPA, an act may be "unfair" if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits."  *Vandenbosch v. City of Bellingham*, No. 2:18-cv-00999-RAJ, 2019 WL 1115255, at *2 (W.D. Wash. Mar. 11, 2019).[1]  The unfairness prong fails because the FACC's

---

[1]  While an act or practice can be unfair per se under the WCPA if it "violates a statute that declares the conduct at issue to be unfair or deceptive," the FACC makes no such allegations.  *Alpert v. Nationstar Mortg., LLC*, No. C15-1164 RAJ, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (citation omitted).

allegations are conclusory (*see*, *e.g.*, FACC ¶¶ 50, 82-84) and offer no *facts* to show that Amazon's alleged conduct is "unfair" under the WCPA.  *Id.* (dismissing WCPA claim; "conclusory" allegations insufficient to state unfairness).  In all events, Plaintiff's alleged injury was "reasonably avoidable" because Amazon clearly and fully disclosed the terms of the Prime membership and repeatedly put consumers on notice of the upcoming service fee (both via the email notice and throughout Amazon's website).  No unfairness is alleged because, when Plaintiff learned of the WFM delivery fee, she admittedly took no steps to "avoid injury" by cancelling her Prime membership or demanding a refund.  *See Alpert*, 2019 WL 1200541, at *6 (no unfairness under WCPA where plaintiff "was free, at any time, to choose his own insurance policy" instead of defendant's and was warned before defendant force-placed a policy).

### 3.    Plaintiff Does Not Adequately Plead Causation.

Plaintiff's WCPA claim should be dismissed for the independent reason that she does not plausibly allege "a causal link between the alleged acts and the plaintiff's injury."  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 793, 719 P.2d 531 (1986).  Amazon repeatedly disclosed the $9.95 service fee, including through the September 2021 announcement and during the WFM delivery checkout process.  FACC ¶¶ 13-14; Buckley Decl., Exs. A-D.  Amazon also fully discloses the terms and conditions of a Prime membership, including that membership fees are generally "non-refundable" except under limited circumstances.  FACC, Ex. 1 at 2.  And Plaintiff does not allege that she sought a "refund or recourse" after she was charged the WFM service fee in January 2022; instead, she continued her Prime membership for 17 months and continued to place WFM orders.  FACC ¶¶ 32-34, 36.  In sum, the Court should dismiss the FACC because Plaintiff's own actions "broke the chain of causation and caused [her] loss."  *Schaub v. JPMorgan Chase Bank N.A.*, No. 78439-1-I, 2019 WL 2751168, at *6 (July 1, 2019) (dismissing WCPA claim).

### B.    Plaintiff's Implied-Covenant Claim Still Fails.

The duty of good faith "arises only in connection with terms agreed to by the parties."  *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).  There is no "free-floating duty of good faith unattached to the underlying legal document."  *Id.* at 570; *see also Haywood v.*

AMAZON'S MTN TO DISMISS FACC          - 18 -
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON  98101

1  *Amazon.com, Inc.*, No. 2:22-cv-01094-JHC, 2023 WL 4585362, at *5 (W.D. Wash. July 18, 2023)

2  (dismissing implied covenant claim because plaintiff "identifies no contractual provision that

3  Amazon allegedly breached") (collecting cases).  And it is axiomatic that "[t]he implied covenant

4  of good faith and fair dealing cannot add or contradict express contract terms." *Hard 2 Find*

5  *Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1173-74 (W.D. Wash. 2014).

6    The Court already rejected Plaintiff's flawed theory that Amazon breached its duty of good

7  faith and fair dealing "[b]y failing to perform under the contract by continuing to provide Plaintiff

8  with free Whole Foods Market delivery with a minimum $35 purchase during the duration of

9  Plaintiff's annual contract."  FACC ¶ 69.  Specifically, the Court found that the Prime Terms

10  unequivocally "establish Defendant's authority to suspend any benefits of Prime membership,

11  including free delivery and two-hour delivery," and went further to state that Amazon "had no

12  duty that was required to be performed in good faith."  Order at 15-16.  The FACC also advances

13  two "new" theories, that Amazon breached its duty by (1) "abusing its discretion under the Amazon

14  Prime contract to terminate the free delivery service without refund or recourse to consumers" and

15  (2) "engaging in surreptitious collection of an additional delivery fee."  FACC ¶ 70.  Neither theory

16  is viable.

17    The first theory—that Amazon breached the implied covenant by not providing Plaintiff a

18  refund or recourse—is plainly contradicted by the contract's express terms.  *Stokes v. DISH*

19  *Network, L.L.C.*, 838 F.3d 948 (8th Cir. 2016), is instructive.  There, subscribers sued Dish,

20  including for breach of the implied covenant, because Dish deleted channels from its programming

21  after the plaintiffs had already paid for their subscriptions.  *Id.* at 953.  Because the contract stated

22  that subscribers are "not entitled to any refund" even when programming changes, the Eighth

23  Circuit held that the implied covenant "will not contradict terms or conditions for which a party

24  has bargained."  *Id.* at 953-54.

25    Here, Plaintiff identifies nothing that obligates Amazon to offer refunds to Prime members

26  when Amazon adds or removes benefits.  To the contrary, as in *Stokes*, the Prime Terms inform

27  Prime members that "[t]he Prime membership fee is non-refundable" except under limited

28  circumstances (*e.g.*, within three days of sign-up).  FACC, Ex. 1 at 1-2.  Otherwise, as Amazon

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 19 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

also discloses, Amazon will "refund your full membership fee only if you and your account did not make any eligible purchases or take advantage of Prime benefits since your latest Prime membership charge." *Id.* at 1. Plaintiff does not allege that she was eligible for a refund under the Prime Terms and was denied that refund; instead, she effectively asks the Court to change the parties' bargain by expanding Amazon's refund obligations. But the implied covenant does not require Amazon "to accept a material change in the terms of its contract." *Badgett*, 116 Wn.2d at 569. "As a matter of law, there cannot be a breach of the duty of good faith when [Amazon] simply stands on its rights to require performance of a contract according to its terms." *Id.* at 570. Moreover, the FACC does not define what "recourse" means other than a refund of the Prime membership fee. FACC ¶¶ 53(d), 70. Nor does the FACC allege that Plaintiff contacted Amazon and received no "recourse" after she was charged a delivery fee in January 2022. *Id.* ¶ 31. In fact, Plaintiff admits she waited almost 17 months after that transaction, until June 2023, to not renew her Prime membership. *Id.* ¶ 36. Against that backdrop, Plaintiff's conclusory allegations that Prime members had no "recourse" do not rise above the "speculative level." *Twombly*, 550 U.S. at 548.

Similarly unavailing is Plaintiff's next theory: that Amazon breached the implied covenant by "surreptitiously" collecting the WFM service fee. That argument merely repackages Plaintiff's omission claim, which, as discussed above, requires an unreasonable, selective blindness to Amazon's many disclosures. And like Plaintiff's "refund or recourse" theory, the FACC fails to "connect th[is] [alleged] implied duty of good faith and fair dealing to specific terms agreed upon by the parties." *Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-cv-01860-RAJ, 2020 WL 5630473, at *10 (W.D. Wash. Sept. 21, 2020).

## C.   Amendment Would Be Futile.

The Court should dismiss the FACC with prejudice because amendment would be futile "given the documentary evidence," such as the Prime Terms, and the "invalidity of Plaintiff's primary legal arguments." *Hard 2 Find Accessories*, 58 F. Supp. 3d at 1177. Futility alone can justify the denial of leave to amend where "the complaint would not be saved by any amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010). That is true here, and

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 20 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1   there is "no need to prolong the litigation by permitting further amendment." *Lipton v.*

2   *Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

3   **II.     THE COURT SHOULD STRIKE PLAINTIFF'S PROPOSED CLASSES**

4          A court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a

5   pleading.  Fed. R. Civ. P. 12(f).  A Rule 12(f) motion is meant to "avoid the expenditure of time

6   and money that must arise from litigating spurious issues by dispensing with those issues prior to

7   trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "Where the

8   complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant

9   may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d

10  978, 990-91 (2009) (striking class definition because it includes "individuals who suffered no

11  damages" and "lack[] Article III standing" "to bring these claims").  If a plaintiff cannot "make a

12  *prima facie* showing of Rule 23's prerequisites," then the court should strike class allegations.

13  *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886-RBL, 2020 WL 1987077, at *4 (W.D. Wash. Apr.

14  27, 2020) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009);

15  *see also Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010)

16  (striking class allegations where the proposed class includes persons "who have not suffered any

17  damages at all").

18         Plaintiff proposes two classes, both of which are impermissibly "overbroad" because they

19  "include[] individuals who sustained no injury and therefore lack standing to sue." *Cashatt*, 2020

20  WL 1987077, at *4-5.  The first proposed class includes "[a]ll Amazon Prime members … who

21  were charged a service fee in connection with an online delivery from Whole Foods Market from

22  August 1, 2021" onward.  FACC ¶ 45.  That class would include customers who never saw *any*

23  advertisements for free WFM delivery as required for Plaintiff's misrepresentation theory.  The

24  FACC confirms that Amazon's advertisements for "[f]ast, free delivery" and "2-hour [grocery]

25  delivery on a wide selection of fresh ingredients" after the service fee was implemented *do not*

26  *reference WFM. Id.* ¶ 35.

27         Plaintiff's second proposed class, "[a]ll Prime members … who ordered [WFM free

28  delivery] and were annual members when the $9.95 fee was introduced" (*id.* ¶ 45), sweeps in

customers who have no standing or viable claims.  By Plaintiff's own allegations, these absent class members suffered no injury because they did not "pa[y] a service fee for grocery deliveries from [WFM]."  FACC ¶ 62.  Like the prior class definition that the Court struck, this proposed class would also "include Prime members who never paid the delivery fee and had no intention of using the Whole Foods delivery service or for whom there was no Whole Foods Market in their deliverable area."  Order at 20.  Additionally, Plaintiff's claims cannot be typical of the second proposed class because it includes Prime members who, unlike Plaintiff, were never charged the $9.95 service fee.  Plaintiff's second proposed class fails to satisfy the commonality requirement for the same reason.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury") (quotations omitted).

Plaintiff repeats the same class definition mistakes as the CAC.  As such, both class definitions should be stricken.  *Cashatt*, 2020 WL 1987077, at *5; *Seegert v. Rexall Sundown, Inc.*, No. 17cv1243-JAH (JLB), 2017 WL 5973414, at *5 (S.D. Cal. Dec. 1, 2017) (striking class definition because "Plaintiff fails to prove that all members of her class definition have been injured and/or have standing"); *Sanders*, 672 F. Supp. 2d at 990.

## CONCLUSION

For the above reasons, the Court should grant Amazon's motion in full and dismiss Plaintiff's FACC in its entirety with prejudice.  Absent a complete dismissal, the Court should strike Plaintiff's proposed class definitions and allegations.

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 22 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1  Dated:  February 5, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FENWICK & WEST LLP


By: */s/ Brian D. Buckley*
    Brian D. Buckley, WSBA No. 26423
    Y. Monica Chan, WSBA No. 58900
    401 Union Street, 5th Floor
    Seattle, WA 98101
    Tel.:    206.389.4510
    Email:   bbuckley@fenwick.com
            mchan@fenwick.com

    Jedediah Wakefield (admitted *pro hac vice*)
    555 California Street
    San Francisco, CA 94104
    Tel.:    415.875.2300
    Email:   jwakefield@fenwick.com

    *Attorneys for Defendant*
    AMAZON.COM, INC.

AMAZON'S MTN TO DISMISS FACC
AND TO STRIKE CLASS ALLEGATIONS
CASE NO.: 2:22-CV-00743-TL

- 23 -

FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WASHINGTON 98101

1

**LCR 7(E) WORD-COUNT CERTIFICATION**

2    As required by Western District of Washington Local Civil Rule 7(e), I certify that this

3  memorandum contains 8,229 words.

4    Dated:  February 5, 2024

5                    FENWICK & WEST LLP

6

7                    By: */s/ Brian D. Buckley*  
                        Brian D. Buckley, WSBA No. 26423

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | Case No.: 2:22-cv-00743-TL |
| | (CONSOLIDATED CASE) |
| | **CERTIFICATE OF CONFERENCE** |

Pursuant to Section III(G) of the Honorable Judge Lin's Standing Order for All Civil Cases, effective January 2, 2024, I hereby certify that, on January 10 and 11, 2024, counsel for the parties conferred in a good-faith effort to resolve the issues raised in this motion.  The parties were unable to resolve the issues raised in the motion.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: February 5, 2024                    */s/ Brian D. Buckley*
                                                                Brian D. Buckley, WSBA No. 26423