UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | CASE NO. 2:22-cv-00743-TL<br><br>(CONSOLIDATED CASE)<br><br>ORDER ON MOTION TO DISMISS AND TO STRIKE CLASS ALLEGATIONS AND ON REQUEST FOR JUDICIAL NOTICE |

This is a proposed class action for damages for unfair and deceptive advertising and breach of implied contractual duty for the cost of online grocery delivery services. This matter is before the Court on Defendant Amazon.com, Inc.'s Motion to Dismiss Plaintiff's First Amended Consolidated Class Action Complaint ("FAC") and to Strike Class Allegations (Dkt. No. 76) and Request for Judicial Notice in Support of Motion to Dismiss (Dkt. No. 77). Having reviewed Plaintiff Dena Griffith's responses (Dkt. Nos. 79, 80), Defendant's replies (Dkt. Nos. 86, 87) and the relevant record, and having heard oral argument (Dkt. No. 93), the Court GRANTS IN PART and

DENIES IN PART the request for judicial notice, GRANTS the motion to dismiss, and further GRANTS

Plaintiff limited leave to amend.

## I.   BACKGROUND

Defendant, "the world's largest online marketplace," is a Delaware corporation

headquartered in Seattle, Washington. Dkt. No. 73 (FAC) ¶ 5. Plaintiff is a California citizen

who resides in Riverside County, California. *Id.* ¶ 6. Plaintiff alleges that Amazon "misl[ed]

consumers concerning the amounts they must pay for grocery deliveries from Whole Foods

Market and for breaching its contracts with its Amazon Prime members." *Id.* at 2.

**A.    Defendant's Grocery Delivery Services**

Defendant offers a service called Amazon Prime, "which is a paid subscription service

that gives users access to additional services otherwise unavailable or available at a premium to

other Amazon customers." *Id.* ¶ 7. One of the advertised benefits of Prime is that members will

receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from

Whole Foods Market, a supermarket chain owned by Defendant, with a minimum $35 purchase.

*Id.* ¶¶ 9–12, 69. The free-delivery benefit is only available in select U.S. cities. *Id.* ¶ 9. These

advertisements are made on Defendant's website and in television and print advertisements. *Id.*

¶¶ 9, 11 (including photos of "representative examples" from website).

On May 11, 2018, Defendant raised the cost of an annual Prime membership from $99 to

$119 for new members who joined after that date. *Id.* ¶ 20. On June 16, 2018, this cost increase

went into effect for preexisting members. *Id.*

*//*

*//*

*//*

*//*

In approximately October 2021, Defendant began charging its customers—including Prime members—a $9.95 "service fee" for all grocery deliveries from Whole Foods Market.[1] *Id.* ¶ 13. Following this change, the cost of a Prime membership was not reduced, nor did Defendant provide a partial refund. *Id.* ¶ 23. Moreover, Prime members with an annual membership (who had used a Prime benefit after the first three days of membership) could not cancel their membership in response to the termination of the free delivery program until their next annual renewal date. *Id.*

According to Plaintiff, the delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Defendant's website, where various grocery items are displayed alongside the price of those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Defendant's website, where various grocery items are displayed alongside the price of those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The text is in "small font" and "is unlikely to be noticed by a reasonable consumer." *Id.* The text is also in a smaller font and different color than the advertised price of the grocery item. *Id.* When a customer then clicks on the "add to cart" icon, there is a series of webpages asking for payment and delivery information before the customer arrives at the final "place your order" page. *Id.* ¶ 18 (including photo); Dkt. Nos. 78-3, 78-4.[2] On the "place your order" page, the service fee is

---

[1] *See* Moira Ritter, *Amazon slaps a $9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN Bus. (Oct. 28, 2021, 5:47 PM EDT), https://perma.cc/S5MB-E62J. The Court considers this article as part of its analysis of this motion to dismiss. *See infra* § III.A.

[2] The Court considers these webpage screenshots as part of its analysis of this motion to dismiss. *See infra* § III.A.

shown above the total price of delivery "in small text . . . that is unlikely to be noticed by a reasonable consumer." *Id.*

**B.      Plaintiff's Experience**

"At various times in early and mid-2021," Plaintiff saw Defendant's online advertisements of its free delivery of Whole Foods groceries to Prime members. *Id.* ¶ 24. She saw these ads for "FREE Delivery" and "FREE 2-Hour Grocery Delivery" when visiting Defendant's platform on various occasions. *Id.* These ads were "substantively identical or similar to" the advertisements provided in the FAC. *Id.* (citing *id.* ¶¶ 9–11). In June 2021, in reliance on these ads, Plaintiff purchased a one-year Prime membership subscription. *Id.* ¶¶ 25–26. Plaintiff paid for a year's subscription and was eligible to cancel the subscription only during the first three days of its term or before receiving any Prime service. *Id.* ¶ 26. Plaintiff decided to subscribe to Prime to avail herself of free deliveries of merchandise during the COVID-19 pandemic, including free deliveries of Whole Foods groceries. *Id.* ¶ 27.

On June 5, July 6, and October 7, 2021, Plaintiff made purchases of Whole Foods groceries totaling at least $40, and she was not charged a service fee. *Id.* ¶¶ 28–30. However, on January 22, 2022, Plaintiff was charged a service fee for a similar purchase. *Id.* ¶ 31. Plaintiff did not expect this service fee based on the ads she viewed and the absence of a fee on her prior purchases. *Id.* Plaintiff "does not recall ever having received or seen a specific, conspicuous notice" of such a service fee. *Id.* ¶ 32. After discovering the service fee, Plaintiff did not make any further orders for delivery from Whole Foods. *Id.*

After Defendant ended free Whole Foods delivery and began charging a service fee, Defendant did not provide a refund or recourse to consumers who paid for a one-year Prime membership. *Id.* ¶ 34. Defendant also continued to advertise "Fast, free delivery" and "2-hour delivery on a wide selection of fresh ingredients" after the service fee was imposed. *Id.* ¶ 35.

Plaintiff saw one such ad on Defendant's website on or around October 21, 2022. *Id.* (including photo). In June 2022, Defendant automatically renewed Plaintiff's annual Prime subscription "before Plaintiff got around to cancelling her subscription." *Id.* ¶ 36. Plaintiff declined to renew her subscription in June 2023. *Id.* ¶ 37.

Plaintiff purchased grocery items from Defendant in reliance on Defendant's advertising and without knowledge of the true amount being charged. *Id.* ¶ 38. Plaintiff alleges that she thus "did not receive the benefit of her purchase," because she was charged a service fee instead of receiving free delivery. *Id.* ¶ 40. Plaintiff would not have placed her grocery order and would not have paid as much in the absence of Defendant's misrepresentations and omissions. *Id.* ¶ 41. Plaintiff was also unable to effectively compare grocery delivery prices. *Id.* Plaintiff lost money as a result of Defendant's behavior. *Id.* ¶ 42. Plaintiff intends to, seeks to, and will renew her Prime membership and purchase Whole Foods grocery deliveries from Defendant again "when she can do so with the assurance that the advertising of free delivery is lawful." *Id.* ¶ 43.

**C.    Procedural History**

Plaintiff brings this class action against Defendant for allegedly "misleading consumers concerning the amounts they must pay for grocery deliveries from Whole Foods Market and for breaching its contracts with its Amazon Prime members." *Id.* at 2. Plaintiff brings one claim for a violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010 *et seq.* (Dkt. No. 73 ¶¶ 58–66), and one claim for breach of the duty of good faith and fair dealing (*id.* ¶¶ 67–72). Plaintiff also proposes two nationwide classes. *Id.* ¶ 45. One nationwide class includes all Prime members residing in the United States who were charged a service fee in connection with an online delivery from Whole Foods Market from August 1, 2021, until the date notice is disseminated to the class. *Id.* ¶ 45(1). The other class includes all Prime members

1  residing in the United States who ordered free delivery from Whole Foods and had an annual

2  subscription when the $9.95 service fee was introduced on October 25, 2021. *Id.* ¶ 45(2).

3       This matter is a consolidation of two preexisting cases. *See* Dkt. No. 45 (order to

4  consolidate). Defendant previously moved to dismiss the Consolidated Amended Complaint and

5  strike certain allegations, which this Court granted with leave to amend certain claims and the

6  class allegations. *See* Dkt. Nos. 51, 72. Defendant now moves to dismiss the FAC. Dkt. No. 76;

7  *see also* Dkt. No. 86 (reply). Plaintiff opposes. Dkt. No. 79. On June 18, 2024, the Court held

8  oral argument on the motion. Dkt. No. 93.

9  ## II.  LEGAL STANDARD

10       A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

11  can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the

12  Court takes all well-pleaded factual allegations as true and considers whether the complaint

13  "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

14  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

15  recitals of the elements of a cause of action, supported by mere conclusory statements" are

16  insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

17  that allows the court to draw the reasonable inference that the defendant is liable for the

18  misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . .

19  12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the

20  light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

21  *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

22  *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

23       A defendant may also seek dismissal when a plaintiff fails to plead "with particularity the

24  circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v. Ciba-Geigy Corp.*

*USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under FRCP 9(b) "the functional equivalent" of a motion to dismiss under FRCP 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under FRCP 9(b), a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106)).

### III.   DISCUSSION

**A.   Request for Judicial Notice**

In support of its motion, Defendant requests that the Court consider four documents beyond the pleadings: (1) an email from Defendant to Prime customers about a Whole Foods delivery service fee (Dkt. No. 78-1); (2) a news article about the imposition of a Whole Foods delivery service fee (Dkt. No. 78-2); (3) a screenshot of the shopping cart webpage during the Whole Foods online checkout process (Dkt. No. 78-3); and (4) a screenshot of the "Schedule your order" webpage during the Whole Foods online checkout process (Dkt. No. 78-4). *See* Dkt. No. 77. Plaintiff does not object to notice of the news article, but she opposes the remainder of Defendant's requests. *See* Dkt. No. 80.

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Defendant argues that both the email and the screenshots may be considered under the "incorporation by reference" doctrine, while the screenshots may also be judicially noticed. *See* Dkt. No. 77 at 2–6.

Under incorporation by reference, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to

the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

A document may be incorporated by reference "if the plaintiff refers extensively to the document

or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. "But the mere

mention of the existence of a document is insufficient to incorporate the contents of a

document." *Coto Settlement*, 593 F.3d at 1038. In addition, "if the document merely creates a

defense to the well-pled allegations in the complaint, then that document did not necessarily

form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th

Cir. 2018). "Although the incorporation by reference doctrine is designed to prevent artful

pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a

well-pleaded claim." *Id.* at 1003.

### 1.      Defendant's Email to Prime Customers

Here, the Court finds that the email is not properly incorporated by reference. The FAC

does not even *mention* such an email, and at best, the news article only states that Defendant

"warned shoppers last month a new charge was coming."[3] *See* Moira Ritter, *Amazon slaps a*

*$9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN Bus. (Oct. 28, 2021, 5:47 PM

EDT), https://perma.cc/S5MB-E62J. Instead, the email "merely creates a defense" to Plaintiff's

allegations and does not form the basis of Plaintiff's complaint. *Khoja*, 899 F.3d at 1002.

Defendant's authorities are easily distinguishable. In *Al-Ahmed v. Twitter*, a suit by a

Twitter user for the alleged hacking of his account, the court incorporated by reference

notifications sent by Twitter to potentially affected users regarding unauthorized access to their

accounts. 603 F. Supp. 3d 857, 867 (N.D. Cal. 2022). But there, the notifications were

---

[3] There also appears to be a separate question as to whether a document can be incorporated by reference if it is
merely mentioned or otherwise relied upon by another document that is *itself* properly incorporated. However, the
Court need not address that issue, as the news article does not mention or rely on the email.

1   "referenced extensively in the Complaint" and "integral to [plaintiff's] claims," *id.*, unlike the

2   email proffered in the instant matter. Similarly, in *Walters v. Walden University, LLC*, a suit by a

3   former Walden student for alleged disability discrimination, the court incorporated by reference

4   an email sent by the school's Disability Services Office to the plaintiff. No. C15-5651, 2015 WL

5   6550754, at *2 (W.D. Wash. Oct. 28, 2015). But there, the email was referenced in the complaint

6   and the plaintiff did not dispute its authenticity. *Id.* Here, the email is not referenced anywhere,

7   and Plaintiff alleges to the contrary that she "does not recall ever having received or seen a

8   specific, conspicuous notice" regarding a Whole Foods delivery service fee. Dkt. No. 73 ¶ 32.

9        **2.**     **Screenshots of the Online Ordering Process**

10        The Court also finds that the screenshots are not properly incorporated by reference or

11   judicially noticed. As Plaintiff points out, "[Defendant] does not establish at what point of the

12   online ordering process these webpages appear" nor whether "these webpages existed during the

13   time when Plaintiff and other putative class members placed their online [delivery] orders." Dkt.

14   No. 80 at 6. Further, at oral argument, Plaintiff contested the authenticity of the webpages by

15   reiterating that Defendant did not prove that the entire sequence of webpages was operative at

16   the time of Plaintiff's orders, or on what types of electronic devices the webpages were viewed.

17   In response, counsel for Defendant stated that the screenshots were operative at the relevant time.

18   While the Court does not doubt counsel's representations as an officer of the court, Defendant

19   should have provided verifying information at the time of filing the notice request.

20        Therefore, the Court will consider the news article (Dkt. No. 78-2), but it will not

21   consider the email (Dkt. Nos. 78-1) or the screenshots (Dkt. Nos. 78-3, 78-4).

22   //

23   //

24   //

**B.     WCPA**

**1.     Pleading Standard**

Plaintiff disputes whether the heightened pleading standard of Rule 9(b) applies to her WCPA claim. *See* Dkt. No. 79 at 5–6. Defendant argues that the Rule 9(b) standard applies. *See* Dkt. No. 86 at 6. Curiously, Plaintiff did not raise this challenge in response to Defendant's first motion to dismiss, and the Court analyzed Plaintiff's claims accordingly. *See generally* Dkt. No. 60; *see also* Dkt. No. 72 at 11.

Regardless, the Court finds that the Rule 9(b) standard applies to Plaintiff's WCPA claim. Rule 9(b) applies to WCPA claims when they allege a specific intent to deceive or a "'unified fraudulent course of conduct.'" *REX – Real Est. Exch. Inc. v. Zillow Inc.*, No. C21-312, 2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021) (quoting *Vess*, 317 F.3d at 1105). On the other hand, if "the core of plaintiff's complaint is that defendant's conduct has a 'tendency' or the 'capacity to deceive' consumers," then Rule 9(b) does not apply. *Id.*

Even though fraud is not a necessary element of the claim, the Court finds that Plaintiff alleges "a unified course of fraudulent conduct," and her WCPA claim thus "sound[s] in fraud." *Id.* at 1103. Plaintiff, who is the master of her complaint, leads off her WCPA claim with the allegation that Defendant "*knowingly and intentionally* failed to disclose and actively concealed material facts and made false and misleading statements regarding its service fee." *Id.* ¶ 60 (emphasis added). Plaintiff included this allegation in her amended complaint knowing that Defendant had made the Rule 9 argument regarding her prior complaint. The gravamen of the claim goes well beyond just a "tendency" or "capacity to deceive" consumers.

This matter is thus distinguishable from cases cited by Plaintiff where courts in this District found that the Rule 9(b) standard did not apply to a WCPA claim. In *Vernon v. Qwest Communications International, Inc., et al.*, a defendant imposed an early termination fee "to

1    discourage customers from canceling [defendant's] service and increase revenues," not to

2    intentionally deceive its customers. 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009). And in

3    *Mainz Brady Group, Inc. v. Shown*, the defendant left plaintiff's employment and allegedly used

4    confidential information in a competing enterprise. No. C17-670, 2017 WL 4538968, at *2

5    (W.D. Wash. Oct. 11, 2017).

6         **2.    Theories**

7         Plaintiff appears to allege various theories of her WCPA claim: (1) false and misleading

8    advertisements of "free" Whole Foods delivery; (2) bait-and-switch advertising and drip pricing

9    during the Whole Foods online checkout process; and (3) inducement to sign up for Prime

10   subscriptions with the promise of free Whole Foods delivery while later refusing to refund or

11   permit cancellation when free delivery was terminated. *See* Dkt. No. 73 ¶¶ 60–63; Dkt. No. 79 at

12   2–3. Defendant argues that none of Plaintiff's theories are sufficient under the WCPA. *See* Dkt.

13   No. 76 at 17–23. Defendant also argues that Plaintiff does not sufficiently plead causation under

14   the statute. *See id.* at 23. Plaintiff opposes. *See* Dkt. No. 79 at 9–22.

15        The WCPA provides that "[u]nfair methods of competition and unfair or deceptive acts

16   or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW

17   19.86.020. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive

18   act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to

19   a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166

20   Wn.2d 27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*,

21   105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

22        Either an unfair or deceptive act can be a basis for a WCPA claim. *Klem v. Wash. Mut.*

23   *Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). "In order to establish a 'deceptive' act or

24   practice, the plaintiff must show that the defendant's act or practice 'had the capacity to deceive

a substantial portion of the public.'" *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023) (quoting *Panag*, 166 Wn.2d at 47); *see also Panag*, 166 Wn.2d at 50 ("Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986))).

Finally, "[i]t is possible that an act or practice is 'unfair without being deceptive.'" *Gray*, 653 F. Supp. 3d at 858 (quoting *Klem*, 176 Wn.2d at 786). "To prevail on such a theory, the plaintiff must establish that the act or practice 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers or to competition].'" *Id.* (alteration in original) (quoting *Alpert v. Nationstar Mortg. LLC*, No. C15-1164, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019)). "Whether an act is unfair or deceptive under the CPA is a question of law." *State v. LA Invest., LLC*, 2 Wn. App. 2d 524, 538, 410 P.3d 1183 (2018) (citing *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 520–22, 398 P.3d 1271 (2017)).

This Court previously dismissed Plaintiff's WCPA claim (among other claims) for failure to meet the Rule 9(b) heightened pleading standard. *See* Dkt. No. 72 at 11–12. Without addressing the substance of Plaintiff's theories, the Court observed that Plaintiff did not identify "which *actual* advertisements she 'read and relied on' or all of what they said" (*id.* at 11 (emphasis in original)), did not allege "where she saw the at-issue advertisements" (*id.* at 12), did not allege that "she met the threshold amount to trigger free delivery services nor that she did not receive her groceries during the promised delivery period" (*id.*), and did not identify "*when* she viewed the unidentified advertisements" (*id.* (emphasis in original)). Plaintiff now alleges that the advertisements she saw were "substantively identical or similar" to those included in the FAC, and that the ads included the language "FREE Delivery" and "FREE 2-Hour Grocery

Delivery." Dkt. No. 73 ¶ 24. She alleges that she saw the ads "when visiting [Defendant's] platform." *Id.* She alleges that she placed a series of orders in 2021 above $40.00 that qualified for free delivery before making an order around the same price that now included a service fee. *Id.* ¶¶ 28–31. And she alleges that she saw the ads "[a]t various times in early and mid-2021." *Id.* at 24. Plaintiff further alleges that while Amazon began imposing a delivery service fee around October 25, 2021, it did so without adequate notice (*id.* ¶ 33) while "continu[ing] to advertise 'Fast, free delivery' and '2-hour [grocery] delivery on a wide selection of fresh ingredients' well after that date. *Id.* ¶ 35. Plaintiff alleges that she saw these ads. *Id.*

The Court finds that Plaintiff has pleaded her claims with sufficient particularity, as instructed in the Court's prior Order. However, for the reasons that follow, the Court also finds that Plaintiff still does not state a claim under the WCPA.

a.   ***Misrepresentations in Advertisements***

Plaintiff alleges that Defendant "engages in unfair and deceptive practices under the WCPA by representing that Prime members will receive 'FREE Delivery' and 'FREE 2-Hour Grocery Delivery,' including deliveries from Whole Foods." Dkt. No. 79 at 2; *see* Dkt. No. 73 ¶¶ 9–13, 35, 61. Defendant argues that "Plaintiff identifies no statement by [Defendant] that was false or deceptive when made." Dkt. No. 76 at 17. Defendant also argues that Plaintiff does not allege that Defendant advertised free delivery "in connection with [Whole Foods] deliveries" after a service fee was disclosed. *Id.* at 18. In response, Plaintiff argues that she does not allege that the advertisements ever stopped and that the advertisements omitted material information— namely, Defendant's assertion of the right to terminate the service at any time. Dkt. No. 79 at 9. Plaintiff also points out that "even technically accurate information can be deceptive if the overall representation is likely to mislead a reasonable consumer." *Id.* at 10 (citing *Mandatory Poster Agency*, 199 Wn. App. at 523).

1    The Court finds the theory that the ads mislead consumers to believe that grocery

2 delivery was free (when it was not) fails. In the Court's prior Order, Plaintiff was instructed to

3 provide additional details about her experience, including "which *actual* advertisements" she

4 read and relied on and what they said. *See* Dkt. No. 72 at 11–13. However, in the FAC, Plaintiff

5 rests her claim solely on "her viewing of advertisements promising free delivery and the absence

6 of service fees on her prior purchases from Whole Foods."[4] Dkt. No. 73 ¶ 31. Plaintiff also

7 alleges that she viewed the ads in the FAC "at various times in early to mid-2021" and decided to

8 subscribe to Prime in June 2021—all *prior to* the imposition of the service fee in October 2021.

9 *See* Dkt. No. 73 ¶¶ 24, 33. Another problem is that the ads Plaintiff viewed that described free

10 grocery delivery (*i.e.*, Dkt. No. 73 ¶¶ 9, 11) specifically referenced Whole Foods and no other

11 grocery store or provider. Therefore, any ad statements that Whole Foods grocery delivery was

12 "free" were *true* at the time they were made. The fact that Plaintiff was not charged a delivery

13 fee at a time when Defendant was not charging delivery fees simply does not further her claim in

14 any way. Even after the Court's Order that she provide details about the actual advertisements

15 she read and relied on, Plaintiff does not allege that she saw an ad from Defendant *after* October

16 25, 2021, that offered free Whole Foods delivery.

17    Plaintiff also alleges that "Amazon [ ] continued to advertise 'Fast, free delivery' and '2-

18 hour [grocery] delivery on a wide selection of fresh ingredients' well after October 25, 2021."

19 Dkt. No. 73 ¶ 35. Plaintiff alleges that she viewed one such ad in October 2022. *Id.* But as to her

20 own claim, Plaintiff could not have relied on this ad, as she alleges that she discovered the

21 service fee in January 2022, did not place any delivery orders after that, and, by June 2022,

22

23

24 [4] Plaintiff conspicuously alleges "advertisements promising free delivery" without referring to Whole Foods delivery, but her claim rests not on free delivery *generally* but free delivery *specifically from* Whole Foods.

1    resolved to cancel her Prime subscription (which she could have done before June 2022 but

2    forgot to do so before it was automatically renewed that month). *Id.* ¶¶ 31–32, 36.

3         Finally, Plaintiff raises in her opposition brief the theory that the ads support the claims

4    of the class by misleading consumers to believe that free delivery was guaranteed during the

5    entirety of Prime membership. *See* Dkt. No. 79 at 9–10. Plaintiff did not allege this theory in her

6    complaint, which is focused on how the ads mislead consumers as to the existence of a service

7    fee, not as to the duration of Prime benefits. *See* Dkt. No. 73 ¶¶ 58–66; *see also Voss-Curry v.*

8    *Crown Equip. Corp.*, No. C22-1062, 2022 WL 4368047, at *2 (W.D. Wash. Sept. 21, 2022)

9    ("Plaintiff may not defeat a motion to dismiss by supplementing the complaint through [her]

10   opposition brief."). However, Plaintiff will be given an opportunity to amend her complaint, as

11   the Court cannot definitively say that amendment would be futile without the benefit of an

12   amended complaint and full briefing on this particular theory of the WCPA claim. *See Nat'l*

13   *Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("[A] district court must

14   give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that

15   amendment would be futile.").

16              **b.    *Omissions in Pricing***

17        Plaintiff alleges that Defendant "engages in bait-and-switch advertising and drip pricing

18   in violation of the WCPA by not disclosing the $9.95 service fee along with the advertised price

19   of the Whole Foods grocery items and by obscuring the service fee during the check-out

20   process." Dkt. No. 79 at 3; *see* Dkt. No. 73 ¶¶ 15–19. Defendant argues that this theory fails

21   because it "*repeatedly* discloses the $9.95 service fee *before* a customer places a [Whole Foods]

22   delivery order." Dkt. No. 76 at 21 (emphases in original); *see also* Dkt. No. 73 ¶¶ 17–18.

23   Defendant also argues that display of the service fee on the item and final order webpages is

24   sufficient. *See id.* at 21–22. In response, Plaintiff argues that her allegations are sufficient

1   because the "initial webpage does not disclose the existence of the service fee, which lures

2   customers into purchasing grocery items at a perceived low price," while Defendant "switches

3   the price by tacking on the service fee only later in the ordering process." Dkt. No. 79 at 15; *see*

4   *also id.* at 14–18.

5          The Court finds that this theory fails. Most significant, Plaintiff alleges that "[i]f a

6   customer instead chooses to pick up the items in-store, then that customer will not be charged the

7   service fee." Dkt. No. 73 ¶ 14. In other words, the service fee is *not mandatory* for all online

8   Whole Foods orders; it only applies to those customers who opt for delivery over pick-up. Thus,

9   this matter is distinguishable from *Hall v. Marriott International, Inc.*, which Plaintiff asserts is

10  "on all fours" with the instant matter. No. C19-1715, 2020 WL 4727069 (S.D. Cal. Aug. 14,

11  2020). In *Hall*, plaintiff alleged that defendant's online pricing of hotel rooms was misleading

12  because, among other ways, defendant "omits the resort fee from its initial advertised price,

13  luring customers in with an artificially low advertised rate." *Id.* at *8. But there, the resort fee

14  was "mandatory" and thus part of a hotel room's true price. *Id.* at *1; *see also Veera v. Banana*

15  *Republic, LLC*, 211 Cal. Rptr. 3d 769, 779–781 (Cal. Ct. App. 2016) (denying summary

16  judgment on consumer protection claim where store advertising obscured true price of products

17  and disclosure came at the final stage of the checkout process). Here, it cannot be said that

18  Defendant engages in a bait-and-switch or in drip pricing where products are listed at their true

19  price and the final cost of an order is solely dependent on a customer's decision to choose an

20  *optional* delivery service for those products.

21          This is particularly true where, as here, the fee for the optional service is disclosed on at

22  least two separate webpages in the checkout process, including the final order page where the fee

23  is again disclosed. *See* Dkt. No. 73 ¶ 17. Plaintiff alleges that the disclosed fee is presented in

24  "opaque text" that is "small" and "unlikely to be noticed by a reasonable consumer" (*see* Dkt.

No. 73 ¶¶ 17–18), but the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). As depicted in the FAC, on the first page after a customer selects an item to view, the fee is disclosed immediately above the drop-down menu where a customer must select a quantity of the item, the font regarding the fee is larger than the font regarding quantity, and the fee is the only information other than quantity in the "Add to Cart" box. Dkt. No. 73 ¶ 17. And on the final order page, the fee is disclosed in the "Order Summary" in the same size and font as the cost of the products and associated taxes but is blue and bolded, which makes it stand out from the other costs. Dkt. No. 73 ¶ 18. Indeed, it would be difficult not to notice the fee based on Plaintiff's chosen example, where the sole purchased item costs $4.29 but the final order total is $19.24—nearly five times the cost of the item. *Id.* Thus, it cannot be said that a reasonable consumer would fail to notice this fee if they select delivery.

"At its root, Plaintiff['s] argument is that [Defendant] did not disclose the information to [her] in [her] preferred method, which does not itself constitute a deceptive act under the CPA." *Cole v. Keystone RV Co.*, No. C18-5182, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021). Therefore, the Court DISMISSES this theory of the claim without leave to amend.

### c.   *Inducement to Subscribe and Denial of Refund*

Finally, Plaintiff alleges that Defendant "acted unfairly under the WCPA . . . by terminating the free [Whole Foods] delivery program and instituting a hidden delivery fee, without providing a refund to Prime members or opportunity to cancel their annual memberships." Dkt. No. 79 at 3; Dkt. No. 73 ¶¶ 23, 61, 63. Defendant argues that this theory fails because it "fully and unequivocally disclosed the challenged conduct," which was "permitted by the Prime Terms." Dkt. No. 76 at 19, 20. In response, Plaintiff argues that

Defendant "acted unfairly by inducing customers to sign up for annual Prime subscriptions with the promise of free Whole Foods delivery, then refusing to refund or permit members to cancel those subscriptions when it unilaterally terminated the service with little or no warning." Dkt. No. 79 at 19; *see also id.* at 18–20.

The Court finds that this theory fails. As the Court previously held, Defendant is not liable for breach of contract because the Prime Terms and Conditions ("T&C") expressly authorize the addition or removal of Prime benefits. *See* Dkt. No. 72 at 13–15; Dkt. No. 73-1 at 3. The T&C also expressly detail Defendant's refund policy for membership cancellations. *See* Dkt. No. 73-1 at 2. In other words, the termination of free Whole Foods delivery and the lack of a refund were disclosed to Plaintiff and to all Prime subscribers prior to their enrollment.[5] Thus, any surprise or harm from the modification of benefits was "reasonably avoidable" by Plaintiff, *Gray*, 653 F. Supp. 3d at 858, as she could have read the T&C and chosen not to subscribe if they were unfavorable to her. *See also Storey v. Amazon.com Servs. LLC*, No. C23-1529, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024) ("Parties to a valid contract are bound by its terms even if they choose not to read the terms, and conduct conforming with a valid contract is generally not unfair or deceptive."); *Haywood v. Amazon.com, Inc.*, No. C22-1094, 2023 WL 4585362, at *7 (W.D. Wash. July 18, 2023) ("[E]xercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice."); *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1272 (11th Cir. 2023) ("[Defendant's] discretionary authority to suspend Rapid Delivery was made exceedingly clear from the outset. The provisions that outline this discretion were easy to understand."); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008) ("[A]ny reasonable consumer reading the Agreement would

---

[5] Plaintiff does not argue that the T&C were somehow not disclosed to her or otherwise hidden from her prior to her enrollment. *See* Dkt. No. 79 at 18–20.

1   realize that Verizon reserved the right to assess surcharges . . . ."). While the WCPA is intended

2   to be flexible, *see Panag*, 166 Wn.2d at 49, it does not bend so far here.

3       Therefore, this theory of Plaintiff's WCPA claim is DISMISSED without leave to amend,

4   and the Court need not reach Defendant's alternative arguments regarding causation.

5   **C.    Breach of Implied Duty**

6       The Court previously dismissed Plaintiff's claim for breach of the implied duty of good

7   fair dealing because "Defendant's conduct was authorized by the [Prime T&C]" and thus

8   "Defendant had no duty that was required to be performed in good faith." Dkt. No. 72 at 16. The

9   Court explained that "there is no ambiguity: the T&C authorize Defendant to modify Prime

10  benefits." *Id.* Finally, the Court held that the end of free Whole Foods delivery did not render the

11  Prime contract illusory. *Id.* at 17. However, the Court granted Plaintiff leave to amend her

12  complaint to clarify an apparently new theory of the claim she raised in her briefing. *Id.*

13      Now, Plaintiff again alleges that Defendant breached the implied duty "by failing to

14  perform under the contract by continuing to provide Plaintiff with free Whole Foods Market

15  delivery with a minimum $35 purchase during the duration of Plaintiff's annual contact."

16  *Compare* Dkt. No. 73 ¶ 69, *with* Dkt. No. 47 ¶ 128. Plaintiff also newly alleges that Defendant

17  breached the implied duty in two new ways: (1) "abusing its discretion under the Amazon Prime

18  contract to terminate the free delivery service without refund or recourse to consumers" (*id.*

19  ¶ 70); and (2) "engaging in surreptitious collection of an additional delivery fee" (*id.*). Defendant

20  argues that Plaintiff's prior theory should again be dismissed, and that Plaintiff's new theories

21  should also be dismissed. *See* Dkt. No. 76 at 24–25. Plaintiff opposes. *See* Dkt. No. 79 at 22–24.

22      While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that

23  duty "is not free-floating, but 'arises only in connection with terms agreed to be the parties.'"

24  *Est. of Carter v. Carden*, 11 Wn. App. 2d 573, 583–84, 455 P.3d 197 (2019) (quoting *Badgett v.*

*Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). "If there is no contractual duty, there is nothing that must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016). "Importantly, a violation of the duty of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings, a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (holding that duty of good faith and fair dealing can arise even when there is no breach of an express contract term). "It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Smartwings*, 2022 WL 579342, at *6 (quoting *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013)).

### 1.      Failure to Perform Under the Contract

The Court agrees with Defendant that Plaintiff's prior theory must again be dismissed, as Defendant's removal of free Whole Foods delivery was plainly authorized by the contract (*see* Dkt. No. 72 at 13–15); indeed, in its opposition, Plaintiff does not defend this theory (*see generally* Dkt. No. 79). The Court now considers each of Plaintiff's new theories in turn.

### 2.      Abuse of Discretion in Removing Benefit Without Refund

The Court finds that this theory fails. As discussed above, *see supra* § III.C.3, the T&C expressly authorize Defendant's removal of the free-delivery benefit, and they expressly disclose Defendant's refund policy. *See* Dkt. No. 73-1 at 2–3. Just as this practice cannot be understood as "unfair" under the WCPA, it is not an abuse of discretion to "exercis[e] a right that a contract permits and is fully disclosed to the parties in advance." *Haywood*, 2023 WL 4585362, at *7. Moreover, while it is true that "the duty of good faith and fair dealing arises 'when the contract

gives one party discretionary authority to determine a contract term,'" *Rekhter*, 180 Wn.2d at 113 (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)), Plaintiff does not identify a relevant contract term for which Defendant has discretion to determine its meaning. *See, e.g.*, *id.* at 113–14 (holding that contract gave defendant "the discretion to set a future contract term: the quantity of hours and the types of services for which providers will be compensated"). On the contrary, this Court has already held that the T&C unambiguously authorize the modification of Prime benefits. *See* Dkt. No. 72 at 13–15. While Defendant may choose when or how to exercise this right to modify, the contractual terms granting that right and establishing a refund policy are clear and determined; neither Party has discretion to interpret them. Instead, a restriction on Defendant's right to modify Prime benefits, or an obligation to provide a refund when Prime benefits are modified, would contradict the express terms of the T&C and effectively renegotiate the original bargain. *See SAK & Assocs., Inc. v. Ferguson Constr., Inc.* 189 Wn. App. 405, 414, 357 P.3d 671 (2015) ("[C]ovenants of good faith and fair dealing do not trump express terms or unambiguous rights in a contract." (quoting *Myers v. State*, 152 Wn. App. 823, 828, 218 P.3d 241 (2009))).

### 3.   Surreptitious Collection of Service Fee

The Court finds that this theory also fails. The argument is essentially a repackaging of Plaintiff's WCPA theories, a contention that Defendant's acts "evaded the spirit of the bargain between [Defendant] and its customers" or "constituted a willful rendering of imperfect performance on the part of [Defendant]." Dkt. No. 79 at 24. But as discussed above, Plaintiff has not adequately alleged an unfair or deceptive act under the WCPA. *See supra* § III.C.3. Moreover, Defendant's removal of free Whole Foods delivery is a valid exercise of its express contractual right to modify Prime benefits. *See id*. Defendant's subsequent imposition of a service fee for that same delivery neither "evades the spirit of the bargain" nor "constitutes

willful render of imperfect performance" where Defendant had the right to remove the benefit in the first place.

Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing is DISMISSED without leave to amend. Moreover, because all claims have been dismissed, the Court need not reach Defendant's motion to strike class allegations.

## IV.   CONCLUSION

Accordingly, Defendant's motion (Dkt. No. 76) is GRANTED with leave to amend the WCPA claim consistent with this Order. Should Plaintiff choose to amend, Plaintiff is DIRECTED to file the amended complaint **within thirty (30) days** of this Order.

Dated this 18th day of July 2024.

Tana Lin
United States District Judge