1
2
3
4

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

5
6

| | |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | No. 2:22-cv-00743-TL |
| | (CONSOLIDATED CASE) |
| | NOTICE OF APPEAL |

7
8
9
10
11

Notice is hereby given that Dena Griffith, the named Plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Orders entered in this action on December 7, 2023 (Dkt. #72) and July 18, 2024 (Dkt. #94), which granted Defendant Amazon.com, Inc.'s Motions to Dismiss and to Strike Class Allegations (Dkts. #51 & 76).

DATED this 15th day of August, 2024.

SCHROETER GOLDMARK & BENDER

*s/ Adam J. Berger*
Adam J. Berger, WSBA #20714
Lindsay Halm, WSBA #37141
Carson Phillips-Spotts, WSBA #51207
401 Union Street, Suite 3400
Seattle, WA 98101
Telephone: (206) 622-8000
berger@sgb-law.com
halm@sgb-law.com
spotts@sgb-law.com

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BORDE LAW PLLC
Manish Borde, WSBA #39503
1700 7th Ave., Ste. 2100
Seattle, WA 98101
Telephone: (206) 531-2722
mborde@bordelaw.com

LAW OFFICES OF RONALD A. MARRON
Ronald A. Marron (pro hac vice)
Alexis Wood (pro hac vice)
Kas Galluci (pro hac vice)
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com

*Counsel for Plaintiff*

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

15

| | |
|---|---|
| IN RE: AMAZON SERVICE FEE LITIGATION | CASE NO. 2:22-cv-00743-TL<br><br>(CONSOLIDATED CASE)<br><br>ORDER ON MOTION TO DISMISS AND MOTION TO STRIKE CERTAIN ALLEGATIONS |

16

17    This is a proposed class action for damages for breach of contract and unfair and

18  deceptive advertising for the cost of online grocery delivery services. This matter is before the

19  Court on Defendant Amazon.com, Inc.'s Motion to Dismiss Amended Consolidated Complaint

20  and Strike Certain Allegations (Dkt. No. 51). Having reviewed Plaintiff Dena Griffith's response

21  (Dkt. No. 60), Defendant's reply (Dkt. No. 62), the Parties' supplemental briefing (Dkt. Nos. 70–

22  71), and the relevant record, and finding oral argument unnecessary, *see* Local Civil Rule

23  7(b)(4), the Court GRANTS the motion with leave to amend certain claims and allegations.

24

# I.  BACKGROUND

Defendant, "the world's largest online marketplace," is a Delaware corporation headquartered in Seattle, Washington. Dkt. No. 47 (Consolidated Amended Complaint, or "CAC") ¶ 5. Plaintiff is a California citizen who resides in Riverside County, California. *Id.* ¶ 6.

## A.  Defendant's Grocery Delivery Services

Defendant offers a service called Prime, which is a paid subscription service that gives users access to additional services otherwise unavailable or available at a premium to other customers. *Id.* ¶ 7. One of the advertised benefits of Prime is that members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from Whole Foods Market, a supermarket chain owned by Defendant, with a minimum $35 purchase. *Id.* ¶¶ 9–12, 121. The free-delivery benefit is only available in select U.S. cities. *Id.* ¶ 9. These advertisements are made on Defendant's website and in television and print advertisements. *Id.* ¶¶ 9, 11 (including photos of "representative examples" from website).

On May 11, 2018, Defendant raised the cost of a Prime membership from $99 to $119 for new members who joined after that date. *Id.* ¶ 20. On June 16, 2018, this cost increase went into effect for preexisting members. *Id.*

In approximately October 2021, Defendant began charging its customers—including Prime members—a $9.95 "service fee" for all grocery deliveries from Whole Foods Market.[1] *Id.* ¶ 13. Following this change, the cost of a Prime membership was not reduced, nor did Defendant

---

[1] *See* Moira Ritter, *Amazon slaps a $9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN (Oct. 28, 2021, 5:47 PM EDT), https://perma.cc/S5MB-E62J; Jay Greene, *Prime members bristle at Whole Foods' $9.95 delivery surcharge: 'It's just rude'*, Wash. Post (Sep. 28, 2021, 6:00 AM EDT), https://perma.cc/43Y5-Z2MV; Dkt. Nos. 53-3, 53-4 (printouts of articles). Defendant requests that the Court take judicial notice of these articles. *See* Dkt. No. 52 at 4, 6. Plaintiff does not object because she concedes that the articles are referenced in the CAC. *See* Dkt. No. 61 at 2. Accordingly, the Court takes judicial notice of the articles. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (describing the "incorporation by reference" doctrine).

provide a partial refund. *Id.* ¶ 23. Moreover, Prime members with an annual membership (who had used a Prime benefit outside the first three days of membership) could not cancel their membership in response to the termination of the free delivery program until their next annual renewal date. *Id.*

The delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Defendant's website, where various grocery items are displayed alongside the price of those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The text is in "small font" and "is unlikely to be noticed by a reasonable consumer." *Id.* The text is also in a smaller font and different color than the advertised price of the grocery item. *Id.* When a customer then clicks on the "add to cart" icon, there is a series of webpages asking for payment and delivery information before the customer arrives at the final "place your order" page. *Id.* ¶ 18 (including photo). On the "place your order" page, the service fee is shown above the total price of delivery "in small text . . . that is unlikely to be noticed by a reasonable consumer."[2] *Id.*

### B. Plaintiff's Experience

Plaintiff is a Prime member who read and relied on Defendant's online advertisements that Prime members will receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery." *Id.* ¶ 24. On January 22, 2022, Plaintiff made an online order for a Whole Foods grocery delivery from Defendant's website and was charged a $9.95 service fee. *Id.* ¶ 25. Plaintiff purchased grocery items from Defendant in reliance on Defendant's advertisements and without knowledge of the true amount being charged. *Id.* ¶ 26. Plaintiff would not have placed her online grocery

---

[2] Plaintiff also alleges that (1) many Prime members report not receiving deliveries during the promised delivery period (Dkt. No. 47 ¶ 13); and (2) Defendant includes a $5 tip that is shown on the "place your order" page in the same kind of text as the service fee (*id.* ¶ 18). Defendant moves to strike these allegations. *See* Dkt. No. 51 at 33; *see also infra* Section III.B.

order and would not have paid as much as she did for the order in the absence of Defendant's representations. *Id.* ¶ 29. Plaintiff intends to, seeks to, and will purchase Whole Foods grocery deliveries from Defendant's website again "when she can do so with the assurance that the advertising of free delivery is lawful." *Id.* ¶ 31.

**C.    Procedural History**

Plaintiff brings this class action against Defendant for allegedly "misleading consumers concerning the amounts they must pay for grocery deliveries from Whole Foods Market and for breaching its contracts with its Amazon Prime members." *Id.* at 2. Plaintiff asserts Washington and California statutory consumer protection claims, as well as tort and contract claims. *Id.* ¶¶ 47–134.

Further, Plaintiff proposes two nationwide classes and a California class. *Id.* ¶¶ 33–34. One nationwide class includes all U.S. citizens who were Prime members that were charged a service fee in connection with an online delivery from Whole Foods Market from August 1, 2021, until the date notice is disseminated to the class; the other class includes all U.S. citizens who were Prime members from June 7, 2018, until the date of notice to the class. *Id.* ¶ 33. The California class includes all California residents who were Prime members that were charged with the Whole Foods delivery service fee from August 1, 2021, to the date of notice to the class. *Id.* ¶ 34.

This matter is a consolidation of two preexisting cases. *See* Dkt. No. 45 (order to consolidate). Defendant now moves to dismiss the CAC and to strike certain allegations therein. *See* Dkt. Nos. 51, 62. Plaintiff opposes. *See* Dkt. No. 60.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(6)

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . . 12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

A defendant may also seek dismissal when a plaintiff fails to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under FRCP 9(b) "the functional equivalent" of a motion to dismiss under FRCP 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under FRCP 9(b), a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106)).

**B.      Motion to Strike Under Rule 12(f)**

Finally, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In deciding a Rule 12(f) motion to strike, a court should not resolve disputed and substantial factual or legal issues. *See Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973–75 (9th Cir. 2010) ("We . . . hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Id.* at 973 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). Rule 12(f) motions to strike are generally disfavored because the motions may be used as delay tactics and because of the strong policy favoring resolution on the merits. *E.g.*, *Chao Chen v. Geo Grp., Inc.*, 297 F. Supp. 3d 1130, 1132 (W.D. Wash. 2018) (citations and internal quotation marks omitted). This is especially true of motions to strike class action allegations, as "the shape and form of a class action evolves only through the process of discovery." *Hoffman v. Hearing Help Express, Inc.*, No. C19-5960, 2020 WL 4279176, at *2 (W.D. Wash. Mar. 27, 2020) (citations omitted); *see also Dorian v. Amazon Web Servs., Inc.*, No. C22-269, 2022 WL 3155369, at *2 n.1 (W.D. Wash. Aug. 8, 2022) (refusing to consider "premature" request to strike class allegations at the motion to dismiss stage).

### III.      DISCUSSION

**A.      Motion to Dismiss**

Defendant makes several arguments: (1) Washington law controls all disputes and thus claims under California law should be dismissed (Dkt. No. 51 at 15–18); (2) Plaintiff has not properly alleged a series of statutory and common law claims "that all sound in fraud" (*id.* at 18–

27); (3) Plaintiff has not properly alleged contract and quasi-contract claims (*id.* at 27–30); and (4) Plaintiff's claim for declaratory relief is not an independent cause of action (*id.* at 30). Defendant further argues that amendment of these claims would be futile. *Id.* at 30–31. Plaintiff opposes on all grounds. *See* Dkt. No. 60 at 14–30.

### 1.  Choice of Law

As an initial matter, Plaintiff does not appear to dispute that she is bound by Defendant's Conditions of Use ("COU").[3] *See* Dkt. No. 51 at 16–17; Dkt. No. 60 at 14–16 (voicing no opposition). Among the COU is a choice-of-law provision titled "Applicable Law," which states:

> By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

Dkt. No. 53-1 at 5. Instead, the Parties dispute whether the choice-of-law provision controls here. Defendant argues that the provision should control and that all California law claims (Causes Two, Three, and Four) should be dismissed. *See* Dkt. No. 51 at 17–18. Plaintiff argues that because her claims "arise in tort," the Court should instead conduct a choice-of-law analysis. *See* Dkt. No. 60 at 14. Plaintiff further argues that such analysis is premature when discovery has not yet been taken. *See id.* at 15. In reply, Defendant argues that "[c]hoice of law is a purely legal question routinely decided on the pleadings." Dkt. No. 62 at 7. Defendants also assert that no discovery is needed. *Id.* at 9.

---

[3] *See* Dkt. No. 53-1 (COU). Defendant requests that the Court take judicial notice of the COU. *See* Dkt. No. 52 at 3–4. Plaintiff does not object because she concedes that the COU are referenced in the CAC. *See* Dkt. No. 61 at 2. Accordingly, the Court takes judicial notice of the COU. *See Knievel*, 393 F.3d at 1076.

Defendant's remaining requests for judicial notice (*see* Dkt. Nos. 52, 63), are disputed by Plaintiff (*see* Dkt. No. 61). Regardless, the remaining requests are moot, as they are unnecessary to resolution of the motion.

a.    *The Choice-of-Law Provision Encompasses Claims Arising in Tort*

A court must first "select the correct choice-of-law rule, a pure legal question, and then apply that rule to the facts of this case, a mixed question of law and fact." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citation omitted). Washington courts "interpret contract provisions to render them enforceable whenever possible," including choice-of-law provisions. *Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 131 (Wash. 2011). Washington courts also interpret contracts according to the objective manifestation of the agreement. *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 932 (9th Cir. 2010) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (en banc)). Therefore, under Washington law, "[t]o determine whether the parties intended the choice-of-law clause to cover [ ] tort . . . claims, the court must focus on the objective manifestations of their agreement—*i.e.*, 'the actual words used'—rather than on the unexpressed subjective intent of the parties." *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1127 (W.D. Wash. 2010) (quoting *Hearst Commc'ns, Inc.*, 115 P.3d at 267); *accord Mountain Hi, LLC v. Linde Gas & Equip. Inc.*, No. C22-1432, 2022 WL 17486328, at *3 (W.D. Wash. Dec. 7, 2022); *Wash. Land Dev., LLC v. Lloyds TSB Bank, PLC*, No. C14-179, 2014 WL 3563292, at *5 (W.D. Wash. July 18, 2014).

Looking to the actual words of the contract, the Court finds that the choice-of-law provision in the COU encompasses claims that arise in tort. The provision is framed in extraordinarily broad terms: Plaintiff has agreed that Washington law "will govern these


Conditions of Use **and any dispute of any sort that might arise between you and Amazon**."[4]
Dkt. No. 53-1 at 5 (emphasis added). This language ("any dispute of any sort") is much broader
than the language in *Lloyds* ("transaction"), which the Court understood to encompass "the
course of the contract's implementation," including a consumer protection claim arising out of
the contract's language and implementation. 2014 WL 3563292, at *5. It is much broader than
the language in *Mountain Hi* ("[t]his Agreement"), which the Court understood as too narrow to
cover "extracontractual claims" like a consumer protection claim. 2022 WL 17486328, at *3.
And it is broader than the language in *Carideo* ("[t]his agreement and any sales thereunder"),
which the Court ruled did not cover tort and statutory consumer protection claims. 706 F. Supp.
2d at 1127–28. Here, the COU's broad language is properly understood to encompass any claims
that Plaintiff asserts "arise in tort."

### b. *The Choice-of-Law Provision Is Effective*

"In a diversity case, federal courts apply the conflict-of-laws analysis of the state in
which they sit." *Brutscher v. GEICO Gen. Ins. Co.*, No. C14-1094, 2014 WL 7340724, at *1
(W.D. Wash. Dec. 22, 2014) (citing *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir.
2014)). Plaintiff suggests that "[b]ecause Plaintiff's claims arise in tort, the Court should conduct
a choice of law analysis based on Washington's 'most significant relationship' test." Dkt. No. 60
at 14. But "[w]hen parties dispute choice of law, there must be an actual conflict between the
laws or interests of Washington and the laws or interests of another state before Washington
courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112,

---

[4] Both Parties rely in part on *Garner v. Amazon.com, Inc.*, which involved the same language from Defendant's COU. 603 F. Supp. 3d 985 (W.D. Wash. 2022). But in that case, Plaintiff agreed that Washington law "likely governs" the tort claims asserted there, and Plaintiff made no showing that there was an actual conflict between Washington and California laws. *Id.* at 994–95. "Thus, the *Garner* court was not required to conduct a choice-of-law analysis." *Mountain Hi*, 2022 WL 17486328, at *3 n.6.

1  1120 (Wash. 2007) (quoting *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997)); *see also ACD*

2  *Distrib. LLC v. Wizards of the Coast LLC*, 2021 WL 4027805, at *1 (9th Cir. Sep. 3, 2021)

3  (conducting choice-of-law analysis under Washington law where existence of an "actual

4  conflict" was not disputed); *Garner*, 603 F. Supp. 3d at 995 ("Absent a showing that the result

5  for a particular issue would be different under the laws of the competing states, there is no 'real'

6  conflict, and the local law of the forum is applied." (citing *Woodward v. Taylor*, 366 P.3d 432

7  (Wash. 2016))).

8        Here, Plaintiff has not even attempted to show that there is an actual conflict between

9  Washington and California consumer protection laws. Perhaps such a showing would be

10  difficult, as the Ninth Circuit has found that "Washington's and California's consumer protection

11  laws . . . appear to be substantially similar." *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863

12  (9th Cir. 2017) (enforcing Defendant's COU and concluding that "applying Washington law is

13  not contrary to a fundamental policy of California law"); *see also Weber v. Amazon.com, Inc.*,

14  No. C17-8868, 2018 WL 6016975, at *6 (C.D. Cal. June 4, 2018) ("Washington law, at least in

15  the context of consumer protection, does not conflict with California law."). Indeed, the

16  California statutes invoked by Plaintiff appear to target the same kinds of unfair or deceptive

17  behavior covered by the Washington Consumer Protection Act ("WCPA"). *Compare* Cal. Civ.

18  Code §§ 1750 *et seq.* (Consumer Legal Remedies Act or "CLRA"), *and* Cal. Bus. & Prof. Code

19  §§ 17500 *et seq.* (False Advertising Law or "FLA"), *and* Cal. Bus. & Prof. Code §§ 17200 *et*

20  *seq.* (Unfair Competition Law or "UCL"), *with* RCW 19.86.010 *et seq.* (WCPA). Without a

21  showing of an actual conflict, the Court need not conduct a conflict-of-laws analysis, and the

22  choice-of-law provision controls. *Cf. Erwin*, 167 P.3d at 1120 (where choice-of-law provision

23  selected Washington law, concluding that a conflict existed with California law but enforcing

24  provision anyway after choice-of-law analysis).

Accordingly, Plaintiff's California law claims (Causes Two, Three, and Four) are DISMISSED without leave to amend, as amendment would be futile.

### 2. Fraud-Based Claims

As an initial matter, Plaintiff does not appear to dispute that her statutory claim under the WCPA (Cause One) and her common-law claims for negligent misrepresentation (Cause Six), concealment (Cause Seven), and fraud (Cause Eight) (collectively, the "fraud-based claims") are all subject to the heightened pleading standard of Rule 9(b).[5] *See* Dkt. No. 60 at 16–19 (arguing instead that the CAC satisfies Rule 9(b)). Rather, the Parties dispute whether that standard has been satisfied (and if so, whether the CAC properly states the fraud-based claims). *Compare* Dkt. No. 51 at 18–27 *and* Dkt. No. 62 at 9–12, *with* Dkt. No. 60 at 16–23. Among other things, Defendant argues that Plaintiff does not allege *which* advertisements she viewed, *what* they said, and *when* she viewed them. *See* Dkt. No. 51 at 20–21; Dkt. No. 62 at 9–10. Plaintiff argues that the heightened pleading standard is satisfied. *See* Dkt. No. 60 at 17–18.

Here, Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading standard as to her fraud-based claims. While the CAC makes general allegations about Defendant's practices, and supplies "representative" examples of those practices, the CAC suffers from a lack of details about Plaintiff's own experience. For example, Plaintiff generally alleges that Defendant advertises certain benefits of the Prime membership program, including free delivery. *See* Dkt. No. 47 ¶ 9. But by her own allegations, Plaintiff provides only "representative" examples with a range of details and formats. *Id.* Plaintiff does not identify which *actual* advertisements she "read and relied on" or all of what they said, referring instead only to "online advertisements"

---

[5] Neither does Plaintiff appear to dispute that her CLRA (Count 2), FAL (Count 3), and UCL (Count 4) claims are allegations of fraud and subject to the Rule 9(b) standard. Dkt. No. 60 at 16–19. However, the Court is dismissing those claims. *See supra* Section III.A.1.

1    containing the phrases "FREE Delivery" and "FREE 2-Hour Grocery Delivery" without

2    providing further detail. *Id.* ¶ 24. Nor does Plaintiff allege where she saw the at-issue

3    advertisements. *Id.* Plaintiff neither alleges that she met the threshold amount to trigger free

4    delivery services nor that she did not receive her groceries during the promised delivery period.[6]

5    Finally, Plaintiff does not identify *when* she viewed the unidentified advertisements—a crucial

6    detail, given that: (1) Plaintiff alleges Defendant made false and misleading advertisements that

7    delivery was free at a time when delivery was, in fact, not free (*see id.* ¶¶ 26, 49, 99, 105, 115);

8    and (2) Plaintiff's CAC twice cites an October 28, 2021, CNN news article reporting on a new

9    $9.95 delivery fee on orders for Whole Foods deliveries placed through Prime (*see id.* ¶¶ 13 n.3,

10   14 n.5), but Plaintiff placed the at issue order on January 22, 2022—three months after the

11   change (*see id.* ¶ 25).

12   Without more details, Plaintiff has not met the 9(b) standard, and Defendant cannot

13   properly answer Plaintiff's claims. *See Heck v. Amazon.com, Inc.*, No. C22-3986, 2022 WL

14   17419554, at *3 (N.D. Cal. Dec. 5, 2022) (holding fraud claims did not meet Rule 9(b) standard

15   where "Plaintiff's conclusory labels of 'who, what, where, when, and how' . . . lack the factual

16   support" such as "what the alleged misstatement or misstatements said," any context for the

17   misstatements, and "when or where Plaintiff saw them"); *Salameh v. Tarsadia Hotel*, 726 F.3d

18   1124, 1133 (9th Cir. 2013) (holding fraud claims did not meet Rule 9(b) standard where "they do

19   not identify when Defendants made the representations that Plaintiffs purport to be false");

20   *Kearns*, 567 F.3d at 1126 (holding fraud claims did not meet Rule 9(b) standard where no

21   allegation of "the particular circumstances surrounding such representations," including what

22

23   [6] Oddly, the representative example Plaintiff chooses to use in the CAC is for a purchase totaling $4.95 which would
     not qualify for the free delivery service. Dkt. No. 47 ¶¶ 17–18. Plaintiff's chosen example is even stranger given the

24   claim that a customer would not notice the additional fees when a $4.95 purchase would result in a final charge of
     $19.24—a charge nearly four times the price of the single item. *See* Dkt. No. 47 ¶ 18.

advertisements "specifically stated" or "when [plaintiff] was exposed to them or which ones he found material"). These types of details are the kind that should readily be available to Plaintiff without the need for any discovery.

Accordingly, Plaintiff's fraud-based claims (Causes One, Six, Seven, and Eight) are DISMISSED with leave to amend.

### 3. Contract and Quasi-Contract Claims

Plaintiff alleges that Defendant breached its contract with her—namely, the Prime Terms and Conditions ("T&C")—when it rescinded the Prime benefit of free Whole Foods delivery and when it failed to make Whole Foods deliveries within two hours.[7] Dkt. No. 47 ¶ 122. Plaintiff further alleges that in eliminating free delivery, Defendant breached the implied covenant of good faith and fair dealing. *Id.* ¶ 128. Finally, Plaintiff alleges that Defendant was unjustly enriched by the collection of delivery service fees. *Id.* ¶ 94.

#### a. *Breach of Contract*

Defendant argues that Plaintiff "never identifies what contractual provision [Defendant] allegedly breached" and that the T&C do not guarantee free delivery or two-hour delivery. Dkt. No. 51 at 27. Defendant further argues that it had authority to unilaterally modify Prime benefits. *Id.* at 28. Plaintiff counters that free delivery "was a term that was integrated into the applicable contract." Dkt. No. 60 at 24. Plaintiff thus further argues that Defendant improperly modified the terms of the contract, which Defendant disputes even if free delivery is an integrated term. *Id.* at 26–27; Dkt. No. 51 at 28–29.

---

[7] Plaintiff does not dispute that she was bound by the T&C. On the contrary, Plaintiff affirmatively alleges that she "entered into a contract with [Defendant] for a Prime membership" (Dkt. No. 47 ¶ 121), and she attached a copy of the T&C to the CAC (*id.* at 32–36).

1    "Under Washington law, '[a] breach of contract is actionable only if the contract imposes

2    a duty, the duty is breached, and the breach proximately causes damage to the claimant.' "

3    *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1270 (11th Cir. 2023) (quoting *Nw. Indep. Forest*

4    *Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. 1995)). "And, of course, if an action is

5    permitted by the contract, the performance of that action is not a breach." *Id.* (citing *Myers v.*

6    *State*, 218 P.3d 241, 243 (Wash. App. 2009)); *accord Talyancich v. Microsoft Corp.*, No. C12-

7    1128, 2012 WL 12941690, at *2 (W.D. Wash. Nov. 2, 2012) ("Where the defendant's conduct is

8    expressly authorized by the terms of the contract, there is no breach.").

9    In *Marquez*—about which the Parties submitted supplemental briefing (Dkt. Nos. 70–

10   71)—the Eleventh Circuit applied Washington law to the language at issue here. The Court finds

11   the rationale in *Marquez* persuasive. There, a proposed class of Prime members brought claims

12   for breach of contract, breach of implied covenant, and unjust enrichment (as well as claims

13   under the WCPA) over the suspension of "Rapid Delivery" at the start of the COVID-19

14   pandemic. 69 F.4th at 1266. In adjudicating the breach-of-contract claim, the court assumed

15   (without deciding) the existence of a binding promise to provide the delivery benefit. *Id.* at 1269.

16   The court went on to dismiss the claim "because [defendant] had contractual authority to suspend

17   Rapid Delivery." *Id.* at 1270. The court focused on two terms of the contract,[8] including this

18   provision: "Amazon may choose . . . to add or remove Prime membership benefits." *Id.* The

19   court concluded that "[t]he contract repeatedly qualified the rights of Prime subscribers and gave

20

21

---

22   [8] The second provision was specific to a Prime benefit (*i.e.*, expedited shipping) not at issue here: "AMAZON
     SERVICES . . . ARE PROVIDED BY AMAZON ON AN 'AS IS' AND 'AS AVAILABLE' BASIS." *Marquez*, 69 F.4th at 1270 (caps

23   in original). Moreover, contrary to Plaintiff's assertion (*see* Dkt. No. 71 at 2–3), the Court does not find that the
     circumstances of the COVID-19 pandemic distinguish the reasoning of *Marquez* as applied to the contractual

24   language at issue here. The Eleventh Circuit discussed COVID-19 in relation to the public interest factor of a WCPA
     claim. *Marquez*, 69 F.4th at 1275–76.

ORDER ON MOTION TO DISMISS
AND MOTION TO STRIKE
CERTAIN ALLEGATIONS - 14

[Defendant] the authority to modify Prime benefits—including Rapid Delivery." *Id.* In fact, the court said, Defendant's authority to do so was "indisputable." *Id.*

Here, assuming (without deciding) that free Whole Foods delivery or two-hour delivery are terms that are integrated into the T&C,[9] the Court finds that Defendant had contractual authority to suspend these benefits. Plaintiff was bound to the T&C, which notably includes a provision similar to the one in *Marquez*: "From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits." Dkt. No. 47 at 34. Other provisions in the T&C confirm this broad authority:

> • "From time to time, we may offer different membership terms, and the fees for such membership may vary." *Id.*
>
> • "We may in our discretion change these Terms, Amazon.com's Conditions of Use and Privacy Notice, or any aspect of Prime membership, without notice to you. . . . YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES. IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR MEMBERSHIP." *Id.* (caps in original).

Taken together, the plain terms of the T&C appear to establish Defendant's authority to suspend any benefits of Prime membership, including free delivery and two-hour delivery, and Plaintiff does not offer an alternative understanding of this contractual language. *See* Dkt. No. 60 at 26. Because Defendant's conduct is authorized by the terms of the T&C, there is no breach, and Plaintiff's claim fails. *See Talyancich*, 2012 WL 12941690, at *2 (dismissing breach-of-contract claim where contract authorized defendant's conduct); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d 1166, 1172 (W.D. Wash. 2014) (same).

---

[9] This proposition is not self-evident. "[P]roceeding under the assumption that this contract was partially integrated," only "extra-contractual evidence that *does not contradict terms* of the contract" would be considered. *Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309, 2015 WL 4920079, at *7 (W.D. Wash. Aug. 17, 2015) (emphasis added). But unwritten terms that guarantee certain benefits appear to conflict with the written provisions of the T&C (listed below) that establish Defendant's authority to modify those same benefits.

1          **b.    *Breach of Duty of Good Faith and Fair Dealing***

2          While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that

3   duty "is not free-floating, but 'arises only in connection with terms agreed to be the parties.'"

4   *Est. of Carter v. Carden*, 455 P.3d 197, 202 (Wash. App. 2019) (quoting *Badgett v. Sec. State*

5   *Bank*, 807 P.2d 356, 360 (Wash. 1991)). "If there is no contractual duty, there is nothing that

6   must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL

7   5141990, at *7 (W.D. Wash. Sept. 21, 2016). Because Defendant's conduct was authorized by

8   the T&C, Defendant had no duty that was required to be performed in good faith. *See Goodyear*

9   *Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 633 (Wash. App. 1997) (finding where

10   contract "unambiguously permitted" party to act, "there was no room for the exercise of

11   discretion and, consequently, nothing to which to apply the covenant of good faith"); *Marquez*,

12   69 F. 4th at 1274 ("Amazon did not breach the duty of good faith and fair dealing because it was

13   non-existent in this instance.").

14          Plaintiff's reliance on *Skansgaard v. Bank of America, N.A.* is misplaced. 896 F. Supp. 2d

15   944 (W.D. Wash. 2011). There, a contract term was ambiguous, and the court denied a motion to

16   dismiss the implied duty claim because whether the defendant's interpretation of the ambiguous

17   term was reasonable was a question of fact. *Id.* at 948; *cf. Rekhter, v. State, Dep't of Soc. &*

18   *Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) ("[T]he duty of good faith and fair dealing

19   arises 'when the contract gives one party discretionary authority to determine a contract term.'"

20   (quoting *Goodyear*, 935 P.2d at 632)). Here, there is no ambiguity: the T&C authorize Defendant

21   to modify Prime benefits.

22          Plaintiff also argues in her supplemental brief that the Prime contract is "illusory." Dkt.

23   No. 71 at 5 n.2. However, "[i]n Washington, a contract is illusory only if it lacks all

24   consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to

1    *any* parts of the contract." *Marquez*, 69 F.4th at 1271 (quoting *Ekin v. Amazon Servs., LLC*, 84 F.

2    Supp. 3d 1172, 1176 (W.D. Wash. 2014) (emphases in original)). While Plaintiff's claim is

3    focused on free Whole Foods delivery, there are other Prime benefits and services that were

4    apparently not modified, such as "same, one or two-day delivery of goods and streaming music,

5    video, e-books, [and] gaming." Dkt. No. 47 ¶ 7. Cancellation of one benefit does not render the

6    contract "completely illusory." *Marquez*, 69 F.4th at 1271 (internal quotation marks omitted)

7    (finding Prime contract not illusory where Amazon stopped providing Rapid Delivery but

8    continued to provide other Prime benefits and services such as streaming access for movies,

9    television shows, and music). As currently pleaded, Plaintiff's claim fails.

10          However, Plaintiff also argues in her supplemental brief that "[Defendant] breached its

11   duty of good faith and fair dealing by abusing its discretion under the contract to terminate the

12   free delivery service without refund or recourse to consumers and by engaging in surreptitious

13   collection of an additional delivery fee." Dkt. No. 71 at 4–5. "Importantly, a violation of the duty

14   of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings,*

15   *a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also*

16   *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (holding that

17   duty of good faith and fair dealing can arise even when there is no breach of an express contract

18   term). The Court does not read Plaintiff's complaint to make this argument (*see* Dkt. No. 47

19   ¶¶ 126–130) but will give Plaintiff leave to amend and clarify this claim.

20                    **c.    *Unjust Enrichment***

21          Finally, assuming (without deciding) that Plaintiff was permitted to plead unjust

22   enrichment in the alternative and properly did so—propositions that Defendant disputes (*see* Dkt.

23   No. 51 at 30)—the "validity of the contract" is no longer "in dispute" (Dkt. No. 60 at 29)

24   because the Court finds that Defendant's modification of Prime benefits (*i.e.*, imposition of the

service fee) was authorized by the T&C. Therefore, it is no longer "plausible" (*id.*) that the

imposition of a service fee constituted improper modification of the contract. *See Scott v. Carr*,

No. C20-236, 2020 WL 6381812, at *4 (W.D. Wash. Oct. 30, 2020) ("[A] claim for unjust

enrichment may survive a motion to dismiss *so long as the validity of the contract remains in*

*dispute.*" (emphasis added)); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D.

Wash. 2010) ("Under Washington law, a plaintiff who is a party to a 'valid express contract is

bound by the provisions of that contract' and may not bring a claim for unjust enrichment for

issues arising under the contract's subject matter." (quoting *Chandler v. Wash. Toll Bridge Auth.*

137 P.2d 97, 103 (Wash. 1943))).

Accordingly, Plaintiff's breach of contract and unjust enrichment claims (Causes Five

and Nine) are DISMISSED without leave to amend, as amendment would be futile. However,

Plaintiff's breach of implied duty claim (Cause Ten) is DISMISSED with leave to amend.

### 4.    Declaratory Judgment

Plaintiff alleges that "[a]n actual controversy now exists between the Parties regarding

their rights and liabilities, and terms under Amazon Prime's contract for deliveries," and thus

requests a "judicial declaration" on its terms. Dkt. No. 47 ¶¶ 132–33. Defendant argues that

Plaintiff's claim should be dismissed "because it is a legal remedy, not a cause of action." Dkt.

No. 51 at 30 (citing *Hummel v. Nw. Tr. Servs., Inc.*, 180 F. Supp. 3d 798, 810 (W.D. Wash.

2016)). Plaintiff agrees that declaratory relief is a remedy.[10] *See* Dkt. No. 60 at 29. If Plaintiff

---

[10] Plaintiff also argues that "Amazon incorrectly asserts that Plaintiff did not challenge the validity or conscionability of the Prime contract here." Dkt. No. 71 at 5–6. While Plaintiff did allege the contract is void in her breach of contract claim (*see* Dkt. No. 47 ¶ 125), she did not allege unconscionability anywhere except in her request for declaratory relief. *See generally* Dkt. No. 47. And to the extent that Plaintiff alleges the contract is "void or voidable" or "unconscionable" (*see* Dkt. No. 71 at 6) as part of her request for declaratory relief (Dkt. No. 47 ¶ 132), Plaintiff concedes this is a remedy, not a standalone claim, and thus her request for declaratory relief will necessarily be dismissed along with all legal claims.

ORDER ON MOTION TO DISMISS
AND MOTION TO STRIKE
CERTAIN ALLEGATIONS - 18

choose to amend her complaint, she may include any appropriate requests for declaratory relief in her requests for a remedy.

Accordingly, Plaintiff's claim for declaratory judgment (Cause Eleven) is DISMISSED.

**B.    Motion to Strike**

Defendant makes two arguments: (1) the second proposed nationwide class should be stricken (Dkt. No. 51 at 31–33); and (2) allegations regarding package delivery delays and an optional tip should be stricken (*id.* at 33). Plaintiff opposes on both grounds. *See* Dkt. No. 60 at 30–32.

**1.    Second Nationwide Class Allegations**

In the CAC, Plaintiff proposes two nationwide classes. Dkt. No. 47 ¶ 33. In its motion, Defendant moves to strike the second one, comprised of "[a]ll U.S. citizens who were Amazon Prime members from June 7, 2018[,] until the date notice is disseminated to the class." *Id.* Defendant argues that this second nationwide class is "impermissibly overbroad and definitionally deficient" because not all class members have standing, and the class could not establish typicality or commonality. Dkt. No. 51 at 32–33. Plaintiff agrees that the class includes members "who did not pay the service fee," but nonetheless argues that these "did not receive the benefit of their bargain" because Defendant rescinded free delivery after they signed up for Prime, "regardless of whether they used the [delivery] service." Dkt. No. 60 at 31.

Here, the second nationwide class allegations will be stricken with leave to amend. While motions to strike are generally disfavored, "a court may strike class allegations if the plaintiff '[can]not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures [are] 'likely to produce persuasive information substantiating the class action allegations.'" *Cashatt v. Ford Motor Co.*, No. C19-5886, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020) (alterations in original) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)).

As Plaintiff concedes, this proposed class includes Prime members who *never* paid for the Whole Foods delivery service. Dkt. No. 60 at 31. Plaintiffs argue that those who never paid the fee did not receive the benefit of their bargain because Amazon rescinded the free delivery service. *Id.* But the class definition would also include Prime members who never paid the delivery fee and had no intention of using the Whole Foods delivery service or for whom there was no Whole Foods Market in their deliverable area. *See* Dkt. No. 47 ¶ 9 (explaining that free delivery from Whole Foods was "[a]vailable in select US cities"). This subset of class members would not have Article III standing. *See, e.g.*, *Cashatt*, 2020 WL 1987077, at *5 (striking class definition on a motion to dismiss where class encompasses individuals who "sustained no injury"); *Seegert v. Rexall Sundown*, No. C17-1243, 2017 WL 5973414, at *5 (S.D. Cal. Dec. 1, 2017) (striking class definition where "Plaintiff fails to prove that all members of her class definition have been injured and/or have standing pursuant to Article III."); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class definition on a motion to dismiss where class included individuals who did not purchase the product at issue, were not deceived by advertisements, and did not suffer damages).

Accordingly, the second nationwide class allegations are STRICKEN with leave to amend.

## 2. Package Delivery and Tip Allegations

In the CAC, Plaintiff alleges that "many Amazon Prime Members report not receiving their deliveries during the promised delivery period." Dkt. No. 47 ¶ 13; *see also id.* n.4 (news article on reported delays in two-day shipping). Plaintiff also alleges that "Amazon also includes a $5 tip that is shown in small text above the total price of the delivery that is unlikely to be noticed by a reasonable consumer." *Id.* ¶ 18. Defendant argues that these allegations should be stricken because Plaintiff does not assert a claim for delays in package deliveries or the $5 tip.

Dkt. No. 51 at 33. Plaintiff responds that these allegations are "background information" and that Defendant has not shown prejudice. Dkt. No. 60 at 32.

Here, the package delivery and tip allegations will be stricken with leave to amend. While motions to strike are generally disfavored, the Court has no doubt that these allegations, as pleaded, are "immaterial" and "impertinent" to Plaintiff's claims as they appear to neither have an "essential or important relationship to the claim for relief or defense pleaded" nor "pertain" or be "necessary to the issues in the case." Fed. R. Civ. P. 12(f); *Polaris PowerLED Techs., LLC v. Nintendo Co., Ltd.*, 623 F. Supp. 3d 1132, 1135–36 (W.D. Wash. 2022); *see Austin v. Amazon.com, Inc.*, No. C09-1679, 2010 WL 1875811, at *4 (W.D. Wash. May 10, 2010) (striking allegations where the complaint "does not allege a legal theory" that would entitle plaintiff to relief on those allegations). Plaintiff makes no legal claim as to the package delivery and tip allegations, nor does Plaintiff explain why these allegations are relevant to her claims. Thus, as written and explained, the allegations serve only to summon the specter of impropriety while failing to provide any relevant "background information, historical material, 'or other matter of an evidentiary nature.'" *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) (quoting *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010)).

Moreover, Defendant is not required to make a showing of prejudice. *See Van v. LLR, Inc.*, 523 F. Supp. 3d 1077, 1081 (D. Alaska 2021) ("[T]he Ninth Circuit has never held that a showing of prejudice is required . . . ."); *see also*, *e.g.*, *Est. of Sanchez v. Cnty. of Stanislaus*, No. C18-977, 2019 WL 4201442, at *2 (E.D. Cal. Sep. 5, 2019) ("The court therefore declines to require [the moving party] to make a showing of prejudice."); *Houston Cas. Co. v. Crum & Forster Ins. Co.*, No. C16-535, 2016 WL 4494444, at *5 (E.D. Cal. Aug. 25, 2016) ("[The moving party] need not show prejudice for the Court to grant its motion to strike."). *But see Est.*

*of Sanchez*, 2019 WL 4201442, at \*2 ("District courts within the Ninth Circuit are presently split on this question.").

Accordingly, the allegations regarding package delivery and tips are STRICKEN with leave to amend.

## IV.    CONCLUSION

For the reasons above, the Court GRANTS Defendant's Motion to Dismiss Amended Consolidated Complaint and Strike Certain Allegations (Dkt. No. 51). It is hereby ORDERED:

(1)    Causes Two, Three, Four, Five, and Nine (California claims, breach of contract, and unjust enrichment) are DISMISSED without leave to amend.

(2)    Causes One, Six, Seven, and Eight (fraud-based claims) and Cause Ten (breach of implied duty) are DISMISSED with leave to amend.

(3)    Cause Eleven (declaratory relief) is DISMISSED.

(4)    Plaintiff's allegations regarding the second nationwide class, package delivery, and tips are STRICKEN with leave to amend.

Should Plaintiff choose to amend, the amended complaint must be filed **within thirty (30) days** of this Order.

Dated this 7th day of December 2023.

Tana Lin
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: AMAZON SERVICE FEE
LITIGATION

CASE NO. 2:22-cv-00743-TL

(CONSOLIDATED CASE)

ORDER ON MOTION TO DISMISS
AND TO STRIKE CLASS
ALLEGATIONS AND ON REQUEST
FOR JUDICIAL NOTICE

This is a proposed class action for damages for unfair and deceptive advertising and

breach of implied contractual duty for the cost of online grocery delivery services. This matter is

before the Court on Defendant Amazon.com, Inc.'s Motion to Dismiss Plaintiff's First Amended

Consolidated Class Action Complaint ("FAC") and to Strike Class Allegations (Dkt. No. 76) and

Request for Judicial Notice in Support of Motion to Dismiss (Dkt. No. 77). Having reviewed

Plaintiff Dena Griffith's responses (Dkt. Nos. 79, 80), Defendant's replies (Dkt. Nos. 86, 87) and

the relevant record, and having heard oral argument (Dkt. No. 93), the Court GRANTS IN PART and

1   DENIES IN PART the request for judicial notice, GRANTS the motion to dismiss, and further GRANTS

2   Plaintiff limited leave to amend.

## I.   BACKGROUND

4        Defendant, "the world's largest online marketplace," is a Delaware corporation

5   headquartered in Seattle, Washington. Dkt. No. 73 (FAC) ¶ 5. Plaintiff is a California citizen

6   who resides in Riverside County, California. *Id.* ¶ 6. Plaintiff alleges that Amazon "misl[ed]

7   consumers concerning the amounts they must pay for grocery deliveries from Whole Foods

8   Market and for breaching its contracts with its Amazon Prime members." *Id.* at 2.

### A.   Defendant's Grocery Delivery Services

10       Defendant offers a service called Amazon Prime, "which is a paid subscription service

11  that gives users access to additional services otherwise unavailable or available at a premium to

12  other Amazon customers." *Id.* ¶ 7. One of the advertised benefits of Prime is that members will

13  receive "FREE Delivery" and "FREE 2-Hour Grocery Delivery," including deliveries from

14  Whole Foods Market, a supermarket chain owned by Defendant, with a minimum $35 purchase.

15  *Id.* ¶¶ 9–12, 69. The free-delivery benefit is only available in select U.S. cities. *Id.* ¶ 9. These

16  advertisements are made on Defendant's website and in television and print advertisements. *Id.*

17  ¶¶ 9, 11 (including photos of "representative examples" from website).

18       On May 11, 2018, Defendant raised the cost of an annual Prime membership from $99 to

19  $119 for new members who joined after that date. *Id.* ¶ 20. On June 16, 2018, this cost increase

20  went into effect for preexisting members. *Id.*

21  //

22  //

23  //

24  //

In approximately October 2021, Defendant began charging its customers—including Prime members—a $9.95 "service fee" for all grocery deliveries from Whole Foods Market.[1] *Id.* ¶ 13. Following this change, the cost of a Prime membership was not reduced, nor did Defendant provide a partial refund. *Id.* ¶ 23. Moreover, Prime members with an annual membership (who had used a Prime benefit after the first three days of membership) could not cancel their membership in response to the termination of the free delivery program until their next annual renewal date. *Id.*

According to Plaintiff, the delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Defendant's website, where various grocery items are displayed alongside the price of those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The delivery service fee is not disclosed on the first page of the Whole Foods delivery section of Defendant's website, where various grocery items are displayed alongside the price of those items. *Id.* ¶ 16 (including photo). When a customer clicks on a grocery item, the next page "states in opaque text '$9.95 for 2-hour delivery.'" *Id.* ¶ 17 (including photo). The text is in "small font" and "is unlikely to be noticed by a reasonable consumer." *Id.* The text is also in a smaller font and different color than the advertised price of the grocery item. *Id.* When a customer then clicks on the "add to cart" icon, there is a series of webpages asking for payment and delivery information before the customer arrives at the final "place your order" page. *Id.* ¶ 18 (including photo); Dkt. Nos. 78-3, 78-4.[2] On the "place your order" page, the service fee is

---

[1] *See* Moira Ritter, *Amazon slaps a $9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN Bus. (Oct. 28, 2021, 5:47 PM EDT), https://perma.cc/S5MB-E62J. The Court considers this article as part of its analysis of this motion to dismiss. *See infra* § III.A.

[2] The Court considers these webpage screenshots as part of its analysis of this motion to dismiss. *See infra* § III.A.

1   shown above the total price of delivery "in small text . . . that is unlikely to be noticed by a

2   reasonable consumer." *Id.*

3   **B.    Plaintiff's Experience**

4           "At various times in early and mid-2021," Plaintiff saw Defendant's online

5   advertisements of its free delivery of Whole Foods groceries to Prime members. *Id.* ¶ 24. She

6   saw these ads for "FREE Delivery" and "FREE 2-Hour Grocery Delivery" when visiting

7   Defendant's platform on various occasions. *Id.* These ads were "substantively identical or similar

8   to" the advertisements provided in the FAC. *Id.* (citing *id.* ¶¶ 9–11). In June 2021, in reliance on

9   these ads, Plaintiff purchased a one-year Prime membership subscription. *Id.* ¶¶ 25–26. Plaintiff

10  paid for a year's subscription and was eligible to cancel the subscription only during the first

11  three days of its term or before receiving any Prime service. *Id.* ¶ 26. Plaintiff decided to

12  subscribe to Prime to avail herself of free deliveries of merchandise during the COVID-19

13  pandemic, including free deliveries of Whole Foods groceries. *Id.* ¶ 27.

14          On June 5, July 6, and October 7, 2021, Plaintiff made purchases of Whole Foods

15  groceries totaling at least $40, and she was not charged a service fee. *Id.* ¶¶ 28–30. However, on

16  January 22, 2022, Plaintiff was charged a service fee for a similar purchase. *Id.* ¶ 31. Plaintiff did

17  not expect this service fee based on the ads she viewed and the absence of a fee on her prior

18  purchases. *Id.* Plaintiff "does not recall ever having received or seen a specific, conspicuous

19  notice" of such a service fee. *Id.* ¶ 32. After discovering the service fee, Plaintiff did not make

20  any further orders for delivery from Whole Foods. *Id.*

21          After Defendant ended free Whole Foods delivery and began charging a service fee,

22  Defendant did not provide a refund or recourse to consumers who paid for a one-year Prime

23  membership. *Id.* ¶ 34. Defendant also continued to advertise "Fast, free delivery" and "2-hour

24  delivery on a wide selection of fresh ingredients" after the service fee was imposed. *Id.* ¶ 35.

1    Plaintiff saw one such ad on Defendant's website on or around October 21, 2022. *Id.* (including

2    photo). In June 2022, Defendant automatically renewed Plaintiff's annual Prime subscription

3    "before Plaintiff got around to cancelling her subscription." *Id.* ¶ 36. Plaintiff declined to renew

4    her subscription in June 2023. *Id.* ¶ 37.

5            Plaintiff purchased grocery items from Defendant in reliance on Defendant's advertising

6    and without knowledge of the true amount being charged. *Id.* ¶ 38. Plaintiff alleges that she thus

7    "did not receive the benefit of her purchase," because she was charged a service fee instead of

8    receiving free delivery. *Id.* ¶ 40. Plaintiff would not have placed her grocery order and would not

9    have paid as much in the absence of Defendant's misrepresentations and omissions. *Id.* ¶ 41.

10   Plaintiff was also unable to effectively compare grocery delivery prices. *Id.* Plaintiff lost money

11   as a result of Defendant's behavior. *Id.* ¶ 42. Plaintiff intends to, seeks to, and will renew her

12   Prime membership and purchase Whole Foods grocery deliveries from Defendant again "when

13   she can do so with the assurance that the advertising of free delivery is lawful." *Id.* ¶ 43.

14   **C.     Procedural History**

15           Plaintiff brings this class action against Defendant for allegedly "misleading consumers

16   concerning the amounts they must pay for grocery deliveries from Whole Foods Market and for

17   breaching its contracts with its Amazon Prime members." *Id.* at 2. Plaintiff brings one claim for a

18   violation of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010 *et seq.* (Dkt.

19   No. 73 ¶¶ 58–66), and one claim for breach of the duty of good faith and fair dealing (*id.*

20   ¶¶ 67–72). Plaintiff also proposes two nationwide classes. *Id.* ¶ 45. One nationwide class

21   includes all Prime members residing in the United States who were charged a service fee in

22   connection with an online delivery from Whole Foods Market from August 1, 2021, until the

23   date notice is disseminated to the class. *Id.* ¶ 45(1). The other class includes all Prime members

24

residing in the United States who ordered free delivery from Whole Foods and had an annual

subscription when the $9.95 service fee was introduced on October 25, 2021. *Id.* ¶ 45(2).

This matter is a consolidation of two preexisting cases. *See* Dkt. No. 45 (order to

consolidate). Defendant previously moved to dismiss the Consolidated Amended Complaint and

strike certain allegations, which this Court granted with leave to amend certain claims and the

class allegations. *See* Dkt. Nos. 51, 72. Defendant now moves to dismiss the FAC. Dkt. No. 76;

*see also* Dkt. No. 86 (reply). Plaintiff opposes. Dkt. No. 79. On June 18, 2024, the Court held

oral argument on the motion. Dkt. No. 93.

## II. LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a FRCP 12(b)(6) motion to dismiss, the

Court takes all well-pleaded factual allegations as true and considers whether the complaint

"state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements" are

insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule . . .

12(b)(6), 'we accept as true all facts alleged in the complaint and construe them in the

light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

*States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

*Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

A defendant may also seek dismissal when a plaintiff fails to plead "with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vess v. Ciba-Geigy Corp.*

*USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (deeming a motion to dismiss under FRCP 9(b) "the functional equivalent" of a motion to dismiss under FRCP 12(b)(6) and thus treating dismissal under both rules "in the same manner"). Under FRCP 9(b), a plaintiff must normally plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106)).

### III.    DISCUSSION

### A.    Request for Judicial Notice

In support of its motion, Defendant requests that the Court consider four documents beyond the pleadings: (1) an email from Defendant to Prime customers about a Whole Foods delivery service fee (Dkt. No. 78-1); (2) a news article about the imposition of a Whole Foods delivery service fee (Dkt. No. 78-2); (3) a screenshot of the shopping cart webpage during the Whole Foods online checkout process (Dkt. No. 78-3); and (4) a screenshot of the "Schedule your order" webpage during the Whole Foods online checkout process (Dkt. No. 78-4). *See* Dkt. No. 77. Plaintiff does not object to notice of the news article, but she opposes the remainder of Defendant's requests. *See* Dkt. No. 80.

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Defendant argues that both the email and the screenshots may be considered under the "incorporation by reference" doctrine, while the screenshots may also be judicially noticed. *See* Dkt. No. 77 at 2–6.

Under incorporation by reference, a court may "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to

1    the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

2    A document may be incorporated by reference "if the plaintiff refers extensively to the document

3    or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908. "But the mere

4    mention of the existence of a document is insufficient to incorporate the contents of a

5    document." *Coto Settlement*, 593 F.3d at 1038. In addition, "if the document merely creates a

6    defense to the well-pled allegations in the complaint, then that document did not necessarily

7    form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th

8    Cir. 2018). "Although the incorporation by reference doctrine is designed to prevent artful

9    pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a

10   well-pleaded claim." *Id.* at 1003.

11       **1.       Defendant's Email to Prime Customers**

12           Here, the Court finds that the email is not properly incorporated by reference. The FAC

13   does not even *mention* such an email, and at best, the news article only states that Defendant

14   "warned shoppers last month a new charge was coming."[3] *See* Moira Ritter, *Amazon slaps a*

15   *$9.95 fee on Whole Foods deliveries. And Walmart pounces*, CNN Bus. (Oct. 28, 2021, 5:47 PM

16   EDT), https://perma.cc/S5MB-E62J. Instead, the email "merely creates a defense" to Plaintiff's

17   allegations and does not form the basis of Plaintiff's complaint. *Khoja*, 899 F.3d at 1002.

18           Defendant's authorities are easily distinguishable. In *Al-Ahmed v. Twitter*, a suit by a

19   Twitter user for the alleged hacking of his account, the court incorporated by reference

20   notifications sent by Twitter to potentially affected users regarding unauthorized access to their

21   accounts. 603 F. Supp. 3d 857, 867 (N.D. Cal. 2022). But there, the notifications were

22

23   _____
     [3] There also appears to be a separate question as to whether a document can be incorporated by reference if it is

24   merely mentioned or otherwise relied upon by another document that is *itself* properly incorporated. However, the
     Court need not address that issue, as the news article does not mention or rely on the email.

"referenced extensively in the Complaint" and "integral to [plaintiff's] claims," *id.*, unlike the email proffered in the instant matter. Similarly, in *Walters v. Walden University, LLC*, a suit by a former Walden student for alleged disability discrimination, the court incorporated by reference an email sent by the school's Disability Services Office to the plaintiff. No. C15-5651, 2015 WL 6550754, at *2 (W.D. Wash. Oct. 28, 2015). But there, the email was referenced in the complaint and the plaintiff did not dispute its authenticity. *Id.* Here, the email is not referenced anywhere, and Plaintiff alleges to the contrary that she "does not recall ever having received or seen a specific, conspicuous notice" regarding a Whole Foods delivery service fee. Dkt. No. 73 ¶ 32.

### 2. Screenshots of the Online Ordering Process

The Court also finds that the screenshots are not properly incorporated by reference or judicially noticed. As Plaintiff points out, "[Defendant] does not establish at what point of the online ordering process these webpages appear" nor whether "these webpages existed during the time when Plaintiff and other putative class members placed their online [delivery] orders." Dkt. No. 80 at 6. Further, at oral argument, Plaintiff contested the authenticity of the webpages by reiterating that Defendant did not prove that the entire sequence of webpages was operative at the time of Plaintiff's orders, or on what types of electronic devices the webpages were viewed. In response, counsel for Defendant stated that the screenshots were operative at the relevant time. While the Court does not doubt counsel's representations as an officer of the court, Defendant should have provided verifying information at the time of filing the notice request.

Therefore, the Court will consider the news article (Dkt. No. 78-2), but it will not consider the email (Dkt. Nos. 78-1) or the screenshots (Dkt. Nos. 78-3, 78-4).

//

//

//

1    **B.    WCPA**

2        **1.    Pleading Standard**

3        Plaintiff disputes whether the heightened pleading standard of Rule 9(b) applies to her

4    WCPA claim. *See* Dkt. No. 79 at 5–6. Defendant argues that the Rule 9(b) standard applies. *See*

5    Dkt. No. 86 at 6. Curiously, Plaintiff did not raise this challenge in response to Defendant's first

6    motion to dismiss, and the Court analyzed Plaintiff's claims accordingly. *See generally* Dkt.

7    No. 60; *see also* Dkt. No. 72 at 11.

8        Regardless, the Court finds that the Rule 9(b) standard applies to Plaintiff's WCPA

9    claim. Rule 9(b) applies to WCPA claims when they allege a specific intent to deceive or a

10   "'unified fraudulent course of conduct.'" *REX – Real Est. Exch. Inc. v. Zillow Inc.*, No. C21-312,

11   2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021) (quoting *Vess*, 317 F.3d at 1105). On the

12   other hand, if "the core of plaintiff's complaint is that defendant's conduct has a 'tendency' or

13   the 'capacity to deceive' consumers," then Rule 9(b) does not apply. *Id.*

14       Even though fraud is not a necessary element of the claim, the Court finds that Plaintiff

15   alleges "a unified course of fraudulent conduct," and her WCPA claim thus "sound[s] in fraud."

16   *Id.* at 1103. Plaintiff, who is the master of her complaint, leads off her WCPA claim with the

17   allegation that Defendant "*knowingly and intentionally* failed to disclose and actively concealed

18   material facts and made false and misleading statements regarding its service fee." *Id.* ¶ 60

19   (emphasis added). Plaintiff included this allegation in her amended complaint knowing that

20   Defendant had made the Rule 9 argument regarding her prior complaint. The gravamen of the

21   claim goes well beyond just a "tendency" or "capacity to deceive" consumers.

22       This matter is thus distinguishable from cases cited by Plaintiff where courts in this

23   District found that the Rule 9(b) standard did not apply to a WCPA claim. In *Vernon v. Qwest*

24   *Communications International, Inc., et al.*, a defendant imposed an early termination fee "to

discourage customers from canceling [defendant's] service and increase revenues," not to intentionally deceive its customers. 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009). And in *Mainz Brady Group, Inc. v. Shown*, the defendant left plaintiff's employment and allegedly used confidential information in a competing enterprise. No. C17-670, 2017 WL 4538968, at *2 (W.D. Wash. Oct. 11, 2017).

### 2. Theories

Plaintiff appears to allege various theories of her WCPA claim: (1) false and misleading advertisements of "free" Whole Foods delivery; (2) bait-and-switch advertising and drip pricing during the Whole Foods online checkout process; and (3) inducement to sign up for Prime subscriptions with the promise of free Whole Foods delivery while later refusing to refund or permit cancellation when free delivery was terminated. *See* Dkt. No. 73 ¶¶ 60–63; Dkt. No. 79 at 2–3. Defendant argues that none of Plaintiff's theories are sufficient under the WCPA. *See* Dkt. No. 76 at 17–23. Defendant also argues that Plaintiff does not sufficiently plead causation under the statute. *See id.* at 23. Plaintiff opposes. *See* Dkt. No. 79 at 9–22.

The WCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

Either an unfair or deceptive act can be a basis for a WCPA claim. *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). "In order to establish a 'deceptive' act or practice, the plaintiff must show that the defendant's act or practice 'had the capacity to deceive

a substantial portion of the public.'" *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023) (quoting *Panag*, 166 Wn.2d at 47); *see also Panag*, 166 Wn.2d at 50 ("Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986))).

Finally, "[i]t is possible that an act or practice is 'unfair without being deceptive.'" *Gray*, 653 F. Supp. 3d at 858 (quoting *Klem*, 176 Wn.2d at 786). "To prevail on such a theory, the plaintiff must establish that the act or practice 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers or to competition].'" *Id.* (alteration in original) (quoting *Alpert v. Nationstar Mortg. LLC*, No. C15-1164, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019)). "Whether an act is unfair or deceptive under the CPA is a question of law." *State v. LA Invest., LLC*, 2 Wn. App. 2d 524, 538, 410 P.3d 1183 (2018) (citing *State v. Mandatory Poster Agency, Inc.*, 199 Wn. App. 506, 520–22, 398 P.3d 1271 (2017)).

This Court previously dismissed Plaintiff's WCPA claim (among other claims) for failure to meet the Rule 9(b) heightened pleading standard. *See* Dkt. No. 72 at 11–12. Without addressing the substance of Plaintiff's theories, the Court observed that Plaintiff did not identify "which *actual* advertisements she 'read and relied on' or all of what they said" (*id.* at 11 (emphasis in original)), did not allege "where she saw the at-issue advertisements" (*id.* at 12), did not allege that "she met the threshold amount to trigger free delivery services nor that she did not receive her groceries during the promised delivery period" (*id.*), and did not identify "*when* she viewed the unidentified advertisements" (*id.* (emphasis in original)). Plaintiff now alleges that the advertisements she saw were "substantively identical or similar" to those included in the FAC, and that the ads included the language "FREE Delivery" and "FREE 2-Hour Grocery

Delivery." Dkt. No. 73 ¶ 24. She alleges that she saw the ads "when visiting [Defendant's] platform." *Id.* She alleges that she placed a series of orders in 2021 above $40.00 that qualified for free delivery before making an order around the same price that now included a service fee. *Id.* ¶¶ 28–31. And she alleges that she saw the ads "[a]t various times in early and mid-2021." *Id.* at 24. Plaintiff further alleges that while Amazon began imposing a delivery service fee around October 25, 2021, it did so without adequate notice (*id.* ¶ 33) while "continu[ing] to advertise 'Fast, free delivery' and '2-hour [grocery] delivery on a wide selection of fresh ingredients' well after that date. *Id.* ¶ 35. Plaintiff alleges that she saw these ads. *Id.*

The Court finds that Plaintiff has pleaded her claims with sufficient particularity, as instructed in the Court's prior Order. However, for the reasons that follow, the Court also finds that Plaintiff still does not state a claim under the WCPA.

### a.   *Misrepresentations in Advertisements*

Plaintiff alleges that Defendant "engages in unfair and deceptive practices under the WCPA by representing that Prime members will receive 'FREE Delivery' and 'FREE 2-Hour Grocery Delivery,' including deliveries from Whole Foods." Dkt. No. 79 at 2; *see* Dkt. No. 73 ¶¶ 9–13, 35, 61. Defendant argues that "Plaintiff identifies no statement by [Defendant] that was false or deceptive when made." Dkt. No. 76 at 17. Defendant also argues that Plaintiff does not allege that Defendant advertised free delivery "in connection with [Whole Foods] deliveries" after a service fee was disclosed. *Id.* at 18. In response, Plaintiff argues that she does not allege that the advertisements ever stopped and that the advertisements omitted material information— namely, Defendant's assertion of the right to terminate the service at any time. Dkt. No. 79 at 9. Plaintiff also points out that "even technically accurate information can be deceptive if the overall representation is likely to mislead a reasonable consumer." *Id.* at 10 (citing *Mandatory Poster Agency*, 199 Wn. App. at 523).

The Court finds the theory that the ads mislead consumers to believe that grocery delivery was free (when it was not) fails. In the Court's prior Order, Plaintiff was instructed to provide additional details about her experience, including "which *actual* advertisements" she read and relied on and what they said. *See* Dkt. No. 72 at 11–13. However, in the FAC, Plaintiff rests her claim solely on "her viewing of advertisements promising free delivery and the absence of service fees on her prior purchases from Whole Foods."[4] Dkt. No. 73 ¶ 31. Plaintiff also alleges that she viewed the ads in the FAC "at various times in early to mid-2021" and decided to subscribe to Prime in June 2021—all *prior to* the imposition of the service fee in October 2021. *See* Dkt. No. 73 ¶¶ 24, 33. Another problem is that the ads Plaintiff viewed that described free grocery delivery (*i.e.*, Dkt. No. 73 ¶¶ 9, 11) specifically referenced Whole Foods and no other grocery store or provider. Therefore, any ad statements that Whole Foods grocery delivery was "free" were *true* at the time they were made. The fact that Plaintiff was not charged a delivery fee at a time when Defendant was not charging delivery fees simply does not further her claim in any way. Even after the Court's Order that she provide details about the actual advertisements she read and relied on, Plaintiff does not allege that she saw an ad from Defendant *after* October 25, 2021, that offered free Whole Foods delivery.

Plaintiff also alleges that "Amazon [ ] continued to advertise 'Fast, free delivery' and '2-hour [grocery] delivery on a wide selection of fresh ingredients' well after October 25, 2021." Dkt. No. 73 ¶ 35. Plaintiff alleges that she viewed one such ad in October 2022. *Id.* But as to her own claim, Plaintiff could not have relied on this ad, as she alleges that she discovered the service fee in January 2022, did not place any delivery orders after that, and, by June 2022,

---

[4] Plaintiff conspicuously alleges "advertisements promising free delivery" without referring to Whole Foods delivery, but her claim rests not on free delivery *generally* but free delivery *specifically from* Whole Foods.

resolved to cancel her Prime subscription (which she could have done before June 2022 but forgot to do so before it was automatically renewed that month). *Id.* ¶¶ 31–32, 36.

Finally, Plaintiff raises in her opposition brief the theory that the ads support the claims of the class by misleading consumers to believe that free delivery was guaranteed during the entirety of Prime membership. *See* Dkt. No. 79 at 9–10. Plaintiff did not allege this theory in her complaint, which is focused on how the ads mislead consumers as to the existence of a service fee, not as to the duration of Prime benefits. *See* Dkt. No. 73 ¶¶ 58–66; *see also Voss-Curry v. Crown Equip. Corp.*, No. C22-1062, 2022 WL 4368047, at *2 (W.D. Wash. Sept. 21, 2022) ("Plaintiff may not defeat a motion to dismiss by supplementing the complaint through [her] opposition brief."). However, Plaintiff will be given an opportunity to amend her complaint, as the Court cannot definitively say that amendment would be futile without the benefit of an amended complaint and full briefing on this particular theory of the WCPA claim. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("[A] district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").

### b.    *Omissions in Pricing*

Plaintiff alleges that Defendant "engages in bait-and-switch advertising and drip pricing in violation of the WCPA by not disclosing the $9.95 service fee along with the advertised price of the Whole Foods grocery items and by obscuring the service fee during the check-out process." Dkt. No. 79 at 3; *see* Dkt. No. 73 ¶¶ 15–19. Defendant argues that this theory fails because it "*repeatedly* discloses the $9.95 service fee *before* a customer places a [Whole Foods] delivery order." Dkt. No. 76 at 21 (emphases in original); *see also* Dkt. No. 73 ¶¶ 17–18. Defendant also argues that display of the service fee on the item and final order webpages is sufficient. *See id.* at 21–22. In response, Plaintiff argues that her allegations are sufficient

1  because the "initial webpage does not disclose the existence of the service fee, which lures

2  customers into purchasing grocery items at a perceived low price," while Defendant "switches

3  the price by tacking on the service fee only later in the ordering process." Dkt. No. 79 at 15; *see*

4  *also id.* at 14–18.

5      The Court finds that this theory fails. Most significant, Plaintiff alleges that "[i]f a

6  customer instead chooses to pick up the items in-store, then that customer will not be charged the

7  service fee." Dkt. No. 73 ¶ 14. In other words, the service fee is *not mandatory* for all online

8  Whole Foods orders; it only applies to those customers who opt for delivery over pick-up. Thus,

9  this matter is distinguishable from *Hall v. Marriott International, Inc.*, which Plaintiff asserts is

10  "on all fours" with the instant matter. No. C19-1715, 2020 WL 4727069 (S.D. Cal. Aug. 14,

11  2020). In *Hall*, plaintiff alleged that defendant's online pricing of hotel rooms was misleading

12  because, among other ways, defendant "omits the resort fee from its initial advertised price,

13  luring customers in with an artificially low advertised rate." *Id.* at *8. But there, the resort fee

14  was "mandatory" and thus part of a hotel room's true price. *Id.* at *1; *see also Veera v. Banana*

15  *Republic, LLC*, 211 Cal. Rptr. 3d 769, 779–781 (Cal. Ct. App. 2016) (denying summary

16  judgment on consumer protection claim where store advertising obscured true price of products

17  and disclosure came at the final stage of the checkout process). Here, it cannot be said that

18  Defendant engages in a bait-and-switch or in drip pricing where products are listed at their true

19  price and the final cost of an order is solely dependent on a customer's decision to choose an

20  *optional* delivery service for those products.

21      This is particularly true where, as here, the fee for the optional service is disclosed on at

22  least two separate webpages in the checkout process, including the final order page where the fee

23  is again disclosed. *See* Dkt. No. 73 ¶ 17. Plaintiff alleges that the disclosed fee is presented in

24  "opaque text" that is "small" and "unlikely to be noticed by a reasonable consumer" (*see* Dkt.

No. 73 ¶¶ 17–18), but the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). As depicted in the FAC, on the first page after a customer selects an item to view, the fee is disclosed immediately above the drop-down menu where a customer must select a quantity of the item, the font regarding the fee is larger than the font regarding quantity, and the fee is the only information other than quantity in the "Add to Cart" box. Dkt. No. 73 ¶ 17. And on the final order page, the fee is disclosed in the "Order Summary" in the same size and font as the cost of the products and associated taxes but is blue and bolded, which makes it stand out from the other costs. Dkt. No. 73 ¶ 18. Indeed, it would be difficult not to notice the fee based on Plaintiff's chosen example, where the sole purchased item costs $4.29 but the final order total is $19.24—nearly five times the cost of the item. *Id.* Thus, it cannot be said that a reasonable consumer would fail to notice this fee if they select delivery.

"At its root, Plaintiff['s] argument is that [Defendant] did not disclose the information to [her] in [her] preferred method, which does not itself constitute a deceptive act under the CPA." *Cole v. Keystone RV Co.*, No. C18-5182, 2021 WL 3111452, at *5 (W.D. Wash. July 22, 2021). Therefore, the Court DISMISSES this theory of the claim without leave to amend.

### c.   *Inducement to Subscribe and Denial of Refund*

Finally, Plaintiff alleges that Defendant "acted unfairly under the WCPA . . . by terminating the free [Whole Foods] delivery program and instituting a hidden delivery fee, without providing a refund to Prime members or opportunity to cancel their annual memberships." Dkt. No. 79 at 3; Dkt. No. 73 ¶¶ 23, 61, 63. Defendant argues that this theory fails because it "fully and unequivocally disclosed the challenged conduct," which was "permitted by the Prime Terms." Dkt. No. 76 at 19, 20. In response, Plaintiff argues that

Defendant "acted unfairly by inducing customers to sign up for annual Prime subscriptions with the promise of free Whole Foods delivery, then refusing to refund or permit members to cancel those subscriptions when it unilaterally terminated the service with little or no warning." Dkt. No. 79 at 19; *see also id.* at 18–20.

The Court finds that this theory fails. As the Court previously held, Defendant is not liable for breach of contract because the Prime Terms and Conditions ("T&C") expressly authorize the addition or removal of Prime benefits. *See* Dkt. No. 72 at 13–15; Dkt. No. 73-1 at 3. The T&C also expressly detail Defendant's refund policy for membership cancellations. *See* Dkt. No. 73-1 at 2. In other words, the termination of free Whole Foods delivery and the lack of a refund were disclosed to Plaintiff and to all Prime subscribers prior to their enrollment.[5] Thus, any surprise or harm from the modification of benefits was "reasonably avoidable" by Plaintiff, *Gray*, 653 F. Supp. 3d at 858, as she could have read the T&C and chosen not to subscribe if they were unfavorable to her. *See also Storey v. Amazon.com Servs. LLC*, No. C23-1529, 2024 WL 2882270, at *7 (W.D. Wash. June 7, 2024) ("Parties to a valid contract are bound by its terms even if they choose not to read the terms, and conduct conforming with a valid contract is generally not unfair or deceptive."); *Haywood v. Amazon.com, Inc.*, No. C22-1094, 2023 WL 4585362, at *7 (W.D. Wash. July 18, 2023) ("[E]xercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice."); *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1272 (11th Cir. 2023) ("[Defendant's] discretionary authority to suspend Rapid Delivery was made exceedingly clear from the outset. The provisions that outline this discretion were easy to understand."); *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008) ("[A]ny reasonable consumer reading the Agreement would

---

[5] Plaintiff does not argue that the T&C were somehow not disclosed to her or otherwise hidden from her prior to her enrollment. *See* Dkt. No. 79 at 18–20.

realize that Verizon reserved the right to assess surcharges . . . ."). While the WCPA is intended
to be flexible, *see Panag*, 166 Wn.2d at 49, it does not bend so far here.

Therefore, this theory of Plaintiff's WCPA claim is DISMISSED without leave to amend,
and the Court need not reach Defendant's alternative arguments regarding causation.

## C.    Breach of Implied Duty

The Court previously dismissed Plaintiff's claim for breach of the implied duty of good
fair dealing because "Defendant's conduct was authorized by the [Prime T&C]" and thus
"Defendant had no duty that was required to be performed in good faith." Dkt. No. 72 at 16. The
Court explained that "there is no ambiguity: the T&C authorize Defendant to modify Prime
benefits." *Id.* Finally, the Court held that the end of free Whole Foods delivery did not render the
Prime contract illusory. *Id.* at 17. However, the Court granted Plaintiff leave to amend her
complaint to clarify an apparently new theory of the claim she raised in her briefing. *Id.*

Now, Plaintiff again alleges that Defendant breached the implied duty "by failing to
perform under the contract by continuing to provide Plaintiff with free Whole Foods Market
delivery with a minimum $35 purchase during the duration of Plaintiff's annual contact."
*Compare* Dkt. No. 73 ¶ 69, *with* Dkt. No. 47 ¶ 128. Plaintiff also newly alleges that Defendant
breached the implied duty in two new ways: (1) "abusing its discretion under the Amazon Prime
contract to terminate the free delivery service without refund or recourse to consumers" (*id.*
¶ 70); and (2) "engaging in surreptitious collection of an additional delivery fee" (*id.*). Defendant
argues that Plaintiff's prior theory should again be dismissed, and that Plaintiff's new theories
should also be dismissed. *See* Dkt. No. 76 at 24–25. Plaintiff opposes. *See* Dkt. No. 79 at 22–24.

While "'[t]here is in every contract an implied duty of good faith and fair dealing,'" that
duty "is not free-floating, but 'arises only in connection with terms agreed to be the parties.'"
*Est. of Carter v. Carden*, 11 Wn. App. 2d 573, 583–84, 455 P.3d 197 (2019) (quoting *Badgett v.*

*Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). "If there is no contractual duty, there is nothing that must be performed in good faith." *U.S. Bank Nat'l Ass'n v. Tait*, No. C16-767, 2016 WL 5141990, at *7 (W.D. Wash. Sept. 21, 2016). "Importantly, a violation of the duty of good faith and fair dealing does not require a breach of the underlying contract." *Smartwings, a.s. v. Boeing Co.*, No. C21-918, 2022 WL 579342, at *6 (W.D. Wash. Feb. 25, 2022); *see also Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (holding that duty of good faith and fair dealing can arise even when there is no breach of an express contract term). "It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Smartwings*, 2022 WL 579342, at *6 (quoting *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013)).

### 1. Failure to Perform Under the Contract

The Court agrees with Defendant that Plaintiff's prior theory must again be dismissed, as Defendant's removal of free Whole Foods delivery was plainly authorized by the contract (*see* Dkt. No. 72 at 13–15); indeed, in its opposition, Plaintiff does not defend this theory (*see generally* Dkt. No. 79). The Court now considers each of Plaintiff's new theories in turn.

### 2. Abuse of Discretion in Removing Benefit Without Refund

The Court finds that this theory fails. As discussed above, *see supra* § III.C.3, the T&C expressly authorize Defendant's removal of the free-delivery benefit, and they expressly disclose Defendant's refund policy. *See* Dkt. No. 73-1 at 2–3. Just as this practice cannot be understood as "unfair" under the WCPA, it is not an abuse of discretion to "exercis[e] a right that a contract permits and is fully disclosed to the parties in advance." *Haywood*, 2023 WL 4585362, at *7. Moreover, while it is true that "the duty of good faith and fair dealing arises 'when the contract

gives one party discretionary authority to determine a contract term,'" *Rekhter*, 180 Wn.2d at 113 (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)), Plaintiff does not identify a relevant contract term for which Defendant has discretion to determine its meaning. *See, e.g.*, *id.* at 113–14 (holding that contract gave defendant "the discretion to set a future contract term: the quantity of hours and the types of services for which providers will be compensated"). On the contrary, this Court has already held that the T&C unambiguously authorize the modification of Prime benefits. *See* Dkt. No. 72 at 13–15. While Defendant may choose when or how to exercise this right to modify, the contractual terms granting that right and establishing a refund policy are clear and determined; neither Party has discretion to interpret them. Instead, a restriction on Defendant's right to modify Prime benefits, or an obligation to provide a refund when Prime benefits are modified, would contradict the express terms of the T&C and effectively renegotiate the original bargain. *See SAK & Assocs., Inc. v. Ferguson Constr., Inc.* 189 Wn. App. 405, 414, 357 P.3d 671 (2015) ("[C]ovenants of good faith and fair dealing do not trump express terms or unambiguous rights in a contract." (quoting *Myers v. State*, 152 Wn. App. 823, 828, 218 P.3d 241 (2009))).

### 3.       Surreptitious Collection of Service Fee

The Court finds that this theory also fails. The argument is essentially a repackaging of Plaintiff's WCPA theories, a contention that Defendant's acts "evaded the spirit of the bargain between [Defendant] and its customers" or "constituted a willful rendering of imperfect performance on the part of [Defendant]." Dkt. No. 79 at 24. But as discussed above, Plaintiff has not adequately alleged an unfair or deceptive act under the WCPA. *See supra* § III.C.3. Moreover, Defendant's removal of free Whole Foods delivery is a valid exercise of its express contractual right to modify Prime benefits. *See id*. Defendant's subsequent imposition of a service fee for that same delivery neither "evades the spirit of the bargain" nor "constitutes

1    willful render of imperfect performance" where Defendant had the right to remove the benefit in

2    the first place.

3        Therefore, Plaintiff's claim for breach of the duty of good faith and fair dealing is

4    DISMISSED without leave to amend. Moreover, because all claims have been dismissed, the Court

5    need not reach Defendant's motion to strike class allegations.

6                          IV.    CONCLUSION

7        Accordingly, Defendant's motion (Dkt. No. 76) is GRANTED with leave to amend the

8    WCPA claim consistent with this Order. Should Plaintiff choose to amend, Plaintiff is DIRECTED

9    to file the amended complaint **within thirty (30) days** of this Order.

10       Dated this 18th day of July 2024.

12                                    _____
                                      Tana Lin
13                                    United States District Judge

## UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** Western District of Washington

### Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

U.S. District Court case number: 2:22-cv-00743-TL

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 05/31/2022

Date of judgment or order you are appealing: 12/07/2023 and 07/18/2024

Docket entry number of judgment or order you are appealing: 72 and 94

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Dena Griffith

Is this a cross-appeal?    ○ Yes    ⦿ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?    ○ Yes    ⦿ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City:          State:          Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** s/Adam J. Berger          **Date** 08/15/24

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Form 1                                                          *Rev. 06/09/2022*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

Dena Griffith

Name(s) of counsel (if any):

Adam Berger; Lindsay Halm; Carson Phillips-Spotts

Address: SGB, 401 Union St., Ste 3400, Seattle, WA 98101

Telephone number(s): 206-622-8000

Email(s): berger@sgb-law.com; halm@sgb-law.com; spotts@sgb-law.com

Is counsel registered for Electronic Filing in the 9th Circuit?    ⦿ Yes    ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

Amazon.com Inc

Name(s) of counsel (if any):

Brian D. Buckley; Yukiu Monica Chan; Jedediah Wakefield

Address: Fenwick & West, 401 Union St., 5th Fl, Seattle, WA 98101

Telephone number(s): 206-389-4510; 206-913-4319; 415-875-2300

Email(s): bbuckley@fenwick.com; mchan@fenwick.com; jwakefield@fenwick.co

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Cont. for D.Griffith: Manish Borde; Ronald Marron; Kas Gallucci; Alexis Wood

Address: see attached

Telephone number(s): see attached

Email(s): see attached

Is counsel registered for Electronic Filing in the 9th Circuit?    ● Yes    ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                          2                          *New 12/01/2018*

## Attachment to Form 6

Continued list of Counsel for Appellant Dena Griffith:

Manish Borde, WSBA #39503
BORDE LAW PLLC
1700 7th Ave., Ste. 2100
Seattle, WA 98101
Telephone: (206) 531-2722
mborde@bordelaw.com


Ronald A. Marron (pro hac vice)
Alexis Wood (pro hac vice)
Kas Galluci (pro hac vice)
LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
ron@consumersadvocates.com
alexis@consumersadvocates.com
kas@consumersadvocates.com